Brett Foster (#6089)
Mark A. Miller (#9563)
Tamara Kapaloski (#13471)
**DORSEY & WHITNEY LLP**
111 S. Main Street, Suite 2100
Salt Lake City, UT 84111
Telephone: (801) 933-7360
Facsimile: (801) 933-7373
foster.brett@dorsey.com
miller.mark@dorsey.com
kapaloski.tammy@dorsey.com

*Attorneys for Plaintiff Blendtec Inc.*

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| **BLENDTEC INC.**, a Utah corporation,<br><br>Plaintiff,<br><br>vs.<br><br>**BLENDJET INC.**, a Delaware corporation, **MAVORCO HOLDINGS, LLC**, a Delaware limited liability company, **MAVORCO IP, LLC**, a Delaware limited liability company, and **MAVORCO OPERATIONS, LLC**, a Delaware limited liability company,<br><br>Defendant. | **BLENDTEC'S MOTION TO STRIKE MAVORCO'S THIRTEENTH AFFIRMATIVE DEFENSE**<br><br>Civil No. 2:25-cv-00096-RJS-DBP<br>Judge Robert J. Shelby<br>Magistrate Judge Dustin B. Pead |

i

## **TABLE OF CONTENTS**

I. BACKGROUND ...................................................................................................................1

    A. Blendtec and the Blendtec Marks ...........................................................................1

    B. Blendjet's Use of Infringing Trademarks and Blendtec's 2021 Action ...................1

    C. MavorCo Purchases Blendjet's Assets ....................................................................3

    D. Blendtec Initiates This Lawsuit ...............................................................................4

II. LEGAL STANDARD..........................................................................................................5

III. ARGUMENT.......................................................................................................................6

    A. MavorCo Does Not Allege Any Anticompetitive Conduct.....................................6

    B. MavorCo's Thirteenth Affirmative Defense Should be Stricken Because it Prejudices Blendtec.................................................................................................10

IV. CONCLUSION..................................................................................................................10

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*1-800CONTACTS, Inc. v. Mem'l Eye, P.A.*,
   2010 U.S. Dist. LEXIS 23972 (D. Utah Mar. 15, 2010) ...........................................................8

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ..................................................................................................................6

*Bell Atlantic Corp. v. Twombly*,
   500 U.S. 544 (2007) ..................................................................................................................6

*Blendtec Inc., v. BlendJet Inc*,
   No. 2:21-cv-00668, ECF No. 1 (D. Utah, Nov. 12, 2021) ............................................1, 2, 5, 9

*Cooper v. City of Alva, Oklahoma*,
   2019 WL 5653217 (W.D. Okla. Oct. 31, 2019) .......................................................................6

*Critter Control, Inc. v. Young*,
   2014 U.S. Dist. LEXIS 126960 (M.D. Tenn. Sept. 8, 2014) .....................................................7

*Deere & Co. v. MTD Holdings*,
   2004 U.S. Dist. LEXIS 15776 (S.D.N.Y. Aug. 10, 2004) .........................................................8

*Joe Hand Promotions, Inc. v. Clark*,
   2016 U.S. Dist. LEXIS 172354 (D. Kan. Dec. 13, 2016) .........................................................6

*McCrary v. Elations Co., LLC*,
   2013 WL 6403073 (C.D. Cal. July 12, 2013) .........................................................................10

*Phi Delta Theta Fraternity v. J. A. Buchroeder & Co.*,
   251 F. Supp. 968 (W.D. Mo. 1966) ..........................................................................................7

*Prof'l Real Estate Investors, Inc. v. Columbia Pictures*,
   508 U.S. 49 (1993) ....................................................................................................................8

*Quick v. Grand Junction Lodging LLC*,
   2014 U.S. Dist. LEXIS 174815 (D. Colo. Dec. 18, 2014) ........................................................6

*S.E.C. v. Toomey*,
   866 F. Supp. 719 (S.D.N.Y. 1992) .........................................................................................10

4909-6188-9595\6

*Stiftung v. Zeiss*,
    298 F. Supp. 1309 (S.D.N.Y. 1969)......................................................................................6

*Transhorn, Ltd. v. United Techs. Corp. (In re Elevator Antitrust Litig.)*,
    502 F.3d 47 (2d Cir. 2007)................................................................................................10

*Utah Lighthouse Ministry v. Foundation for Apologetic Info. & Res.*,
    527 F.3d 1045 (10th Cir. 2008) .........................................................................................8

*Virgin Enters. Ltd. v. Virginic LLC*,
    2020 U.S. Dist. LEXIS 63580, 2020 WL 1845232 (D. Wyo. Apr. 10, 2020).................6, 7

**Other Authorities**

Fed. R. Civ. P. 8(b)(1)(A)...............................................................................................................6

Fed. R. Civ. P. 11(b)(2)...................................................................................................................6

Fed. R. Civ. P. 12(f).............................................................................................................1, 5, 10

Fed. R. Evid. 408 ..................................................................................................................5, 9, 10

Pursuant to Rule 12(f) of the Federal Rules of Civil Procedure, Blendtec Inc. ("Blendtec"), respectfully moves the Court to strike MavorCo Holdings, LLC, MavorCo IP, LLC, and MavorCo Operations, LLC's (collectively, "MavorCo") thirteenth affirmative defense for purported antitrust violations. Importantly, the defense is improper and insufficient as a matter of law. MavorCo failed to allege any facts showing that Blendtec used its trademarks for the purpose of violating antitrust laws. Rather, it appears that Blendjet only included such a defense to harass Blendtec and expand the scope of discovery in order to prejudice Blendtec. Accordingly, this affirmative defense should be stricken.

I.  **BACKGROUND**

   A.  **Blendtec and the Blendtec Marks**

Since 1975, Blendtec has manufactured and sold a variety of consumer and professional grade blenders throughout the United States and globally. *See* Dkt. 1, ¶ 11; Dkt. 25 at 3-4. Blendtec has invested millions of dollars to achieve success and brand recognition, including advertising and selling its high-quality blenders and related accessories under its federally registered BLENDTEC® mark and Blendtec's swirl design mark (collectively, the "Blendtec Marks"):

◎ blendtec.

*See* https://www.blendtec.com/. Since 1999, Blendtec has used the Blendtec Marks to advertise and market its blenders, including on its website, social media, and YouTube. Dkt. 1, ¶¶ 13-28.

   B.  **Blendjet's Use of Infringing Trademarks and Blendtec's 2021 Action**

When Blendjet Inc. ("Blendjet") began business in 2018 and adopted the BLENDJET mark and a swirl design mark in connection with selling portable blenders, Blendjet was aware of

Blendtec and its trademarks. *Id*., ¶ 29, 34. While Blendjet first began selling its blenders directly to consumers on its website, it eventually started selling blenders through retail stores nationwide. *Id*., ¶ 35. In the fall of 2020, Blendjet started selling its "Blendjet 2" blender, which it marketed as directly competing with kitchen countertop blenders, like Blendtec's. Dkt. 25 at 4. As a result, Blendtec began receiving numerous inquiries and calls from confused customers who believed that the Blendjet blender was put out by Blendtec or was Blendtec's portable blender. *Id*.

In turn, in November 2021, Blendtec sued Blendjet for trademark infringement, unfair competition and false designation of origin under the Lanham Act and other common law claims related to Blendjet's use of "BLENDJET" and a Swirl design mark on blenders.[1] The parties' respective marks, which are used on every single advertisement, are set forth below:

**blendtec.**     **blendjet**

Before Blendjet even answered the Complaint in the 2021 Action, Blendjet reached out to Blendtec asking for a top-to-top meeting between the CEOs "without counsel." *See* 2021 Action Dkt. 20 (1/28/2022 Answer); **Exh. 1** (1/20/2022 email from Blendjet's counsel). Over the next several months, Blendjet repeatedly pushed for Blendtec to consider acquiring Blendjet, and even involved its investment banker into the discussions without counsel. **Exh. 2** (email exchange between parties' CEOs and Blendjet's banker, Lloyd Grief). These discussions were unproductive.

In July of 2022, Blendjet expanded its product line by introducing new products, which

---

[1] *See Blendtec Inc., v. BlendJet Inc*, No. 2:21-cv-00668, ECF No. 1 (D. Utah, Nov. 12, 2021) (the "2021 Action"). Blendtec has sought to consolidate this action into the 2021 Action. *See* Dkt. 200.

caused more confused customers to call Blendtec about problems with their Blendjet products, including overheating and melting blenders that the customers mistakenly believed were made and sold by Blendtec. *See* Dkt. 25 at 5. Not surprisingly given the scope Blendjet's product failures (much of which was wrongly attributed to Blendtec), in December of 2023, Blendjet issued a recall of nearly 5,000,000 Blendjet blenders after the Consumer Product Safety Commission found that the "recalled blenders can overheat or catch fire and the blender blades can break off, posing fire and laceration hazards to consumers." *Id*. at 5; Dkt. 1, ¶ 38. Afterwards, Blendtec received scores of inquiries regarding the recall from consumers who continued to mistakenly believe that the recalled blenders were Blendtec blenders. Dkt. 1, ¶ 39.

Around that same time, Blendjet approached Blendtec to propose engaging in a mediation, and Blendtec agreed. **Exh. 3** (November 28-29, 2023 email exchange between parties' counsel). The mediation took place in early 2024 and was the subject of a mediation agreement prohibiting either party from using anything discussed in the mediation for any purpose other than settlement. **Exh. 4** (Mediation Agreement at ¶ 1). The mediation was unsuccessful. Thereafter, the parties continued to discuss settlement options. Due to the devastating impact of Blendjet's massive recall of almost 5 million dangerously faulty blenders, Blendjet's settlement strategy included threats that Blendjet was approaching insolvency such that Blendtec had no chance of any recovery, essentially pushing Blendtec to take what it could and walk away. *See* Dkt. 25 at 5.

   **C.**  **MavorCo Purchases Blendjet's Assets**

In January 2025, rather than going insolvent as threatened, Blendjet transferred its assets, including the Blendjet Marks, to a private equity firm called Sandton Capital Partners ("Sandton"). Dkt. 25 at 6. On January 12, Sandton received a letter from Blendtec providing notice of Blendtec's

3

trademark infringement claims related to the Blendjet Marks, advising Sandton of the massive consumer confusion caused by Blendjet's infringement of Blendtec's trademarks, objecting to any continued use of those marks by Sandton or any new entity, and inviting a discussion between Sandton and the Blendtec executive team. *Id.*; Dkt. 1, ¶¶ 44-45. The next day, on January 13, Sandton assigned the newly-acquired Blendjet assets, including the Blendjet Marks, to MavorCo Operations, LLC. *Id*. However, Sandton did not disclose the existence of MavorCo to Blendtec or provide Blendtec any information relevant to the transfer of Blendjet's assets. Blendtec only learned of MavorCo's identity on February 7, 2025, via an assignment of the Blendjet Marks that MavorCo recorded with the United States Patent and Trademark Office.

Although Blendtec tried to persuade Sandton, Blendjet, and MavorCo to stop the blatant trademark infringement, MavorCo made its intentions of willfully continuing the Blendjet infringement crystal clear on February 10, 2025 by plastering the Blendjet Marks all over Times Square and publishing pictures of it on social media, proclaiming that "this is just the beginning!" Dkt. 25 at 7, citing Buchanan Decl. at ¶33.

    **D.**    **Blendtec Initiates This Lawsuit**

While Blendtec preferred to resolve the parties' dispute without resorting to litigation, it was left with no choice given the extensive consumer confusion and, more recently, the tarnishment of Blendtec's reputation due to Blendjet's massive product recall. Shortly after discovering the identity of MavorCo through its own research, on February 11, 2025, Blendtec filed this action (the "2025 Action") against MavorCo and Blendjet related to the continuing and expanding infringement of Blendtec's trademarks by an entity newly formed for this sole purpose. *See* Dkt. 1. The 2021 Action and the 2025 Action are the only lawsuits that Blendtec has ever

asserted against any entity to enforce the Blendtec Marks and prevent unfair competition in the form of trademark infringement, as litigation enforcement has not generally been necessary.

On April 9, 2025, MavorCo filed its Answer, Counterclaim, and nineteen affirmative defenses. *See* Dkt. 44.[2] In its thirteenth affirmative defense, MavorCo states:

> Blendtec's claims are barred and/or limited because Blendtec is using its marks to violate the antitrust laws of the United States. *See* 15 U.S.C. § 1115(b)(7). In 2021, Blendtec brought an almost identical lawsuit against BlendJet, *Blendtec Inc., v. BlendJet Inc.*, Cause No. 2:21-cv-00668, in the United States District Court for the District of Utah, in an attempt to extort an acquisition of BlendJet at a significantly undervalued price. This current case is a second attempt by Blendtec to use bad faith pressure tactics by filing what is fundamentally an anticompetitive lawsuit to force the acquisition of MavorCo's assets at a reduced rate, in violation of the antitrust laws of the United States.

*Id.* at 15. MavorCo offers no additional allegations to support this defense.[3] That is simply because MavorCo cannot provide any. Moreover, MavorCo's attempt to expressly use settlement discussions as a basis for an antitrust defense in its pleading is improper, violates Rule 408 and the terms of the parties' Mediation Agreement, and cannot qualify as well-pleaded facts that can support the plausibility of MavorCo's defense.

## II.  LEGAL STANDARD

This Court has authority, on motion or its own initiative, to strike from any pleading a defense that is insufficient. Fed. R. Civ. P. 12(f). Striking an affirmative defense is appropriate where (1) "no circumstances exist under which it can succeed as a matter of law"; (2) it fails "to

---

[2] Blendjet failed to answer or otherwise respond the Complaint, and the Clerk entered a default certificate against Blendjet on April 29, 2025. *See* Dkt. 50. Blendtec will seek a default judgment.

[3] MavorCo filed a declaration from David Meckler, MavorCo's "Principal" in opposition to Blendjet's motion for preliminary injunction. *See* Dkt. 49-3. Mr. Meckler's declaration likewise provides no factual support for MavorCo's conclusory thirteenth affirmative defense.

provide the plaintiff with fair notice"; *or* (3) it "has no possible relation to the controversy and may prejudice the opposing party." *See Joe Hand Promotions, Inc. v. Clark*, 2016 U.S. Dist. LEXIS 172354, at *3, (D. Kan. Dec. 13, 2016). "The purpose of this rule is to narrow issues for discovery and trial by minimizing delay, prejudice, and confusion." *Virgin Enters. Ltd. v. Virginic LLC*, 2020 U.S. Dist. LEXIS 63580, 2020 WL 1845232, at *3 (D. Wyo. Apr. 10, 2020) (citations omitted); *see Quick v. Grand Junction Lodging LLC*, 2014 U.S. Dist. LEXIS 174815 (D. Colo. Dec. 18, 2014) (striking defenses lacking factual support as they place an undue burden on the plaintiff).

Although district courts in this Circuit are split on whether *Bell Atlantic Corp. v. Twombly*, 500 U.S. 544 (2007) and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) govern the pleading of affirmative defenses under Fed. R. Civ. P. 8(b)(1)(A), a "bare, laundry-list recitation of inapplicable defenses … is clearly improper." *Cooper v. City of Alva, Oklahoma*, 2019 WL 5653217, at *1 (W.D. Okla. Oct. 31, 2019); *see also* Fed. R. Civ. P. 11(b)(2) (cautioning that defenses should be "warranted").

III.   **ARGUMENT**

  A.   **MavorCo Does Not Allege Any Anticompetitive Conduct**

To sustain an affirmative antitrust defense, a defendant must meet the high burden of establishing "direct use of the marks at issue to competitively and directly harm" competition. *Virgin Enters. Ltd.*, 2020 U.S. Dist. LEXIS 63580, at *17 (citing 15 U.S.C. § 1115(b)(7)). In other words, an "essential element of the antitrust misuse defense in a trademark case is proof that **the mark itself** has been the basic and fundamental vehicle required and used to accomplish the violation." *Stiftung v. Zeiss,* 298 F. Supp. 1309, 1315 (S.D.N.Y. 1969) (emphasis added); *see* 6 McCarthy on Trademarks and Unfair Competition § 31:91, n.6.

For example, trademarks were found to be causal instrumentalities to violate antitrust laws

where, after failing to stamp out competition in making and selling fraternity jewelry through other means, fraternities began to register their insignia as trademarks for the **purpose** of eliminating independent competition. *Phi Delta Theta Fraternity v. J. A. Buchroeder & Co.*, 251 F. Supp. 968 (W.D. Mo. 1966). In contrast, in *Virgin Enters. Ltd.,* the District Court for the District of Wyoming granted plaintiff's motion to strike defendant's affirmative defense of trademark misuse and antitrust violations because defendant alleged no facts to suggest that plaintiff had used its trademark in an anticompetitive matter. 2020 U.S. Dist. LEXIS 63580, at *17. Similarly, in *Critter Control, Inc. v. Young*, the court declined to give credence to "the specter of an antitrust defense" in its summary judgement ruling:

> The Defendant has not set out a viable antitrust defense, let alone supported such a defense with evidence that the Plaintiff has used its protected mark for improper antitrust purposes. In essence, all the Defendant has asserted is that the Plaintiff has vigorously sought to protect its rights in its protected mark. However, **the good faith enforcement by the plaintiff of its trademark rights does not constitute an antitrust violation or a trademark misuse**.

*Critter Control, Inc. v. Young*, 2014 U.S. Dist. LEXIS 126960 (M.D. Tenn. Sept. 8, 2014) (emphasis added).

Here, MavorCo's antitrust defense is similarly inadequate. MavorCo does not plead facts or legal theories to hint at any anticompetitive conduct. Rather, it nakedly concludes that Blendtec has attempted to "extort an acquisition of Blendjet at a significantly undervalued price" and purportedly used "bad faith pressure tactics by filing what is fundamentally an anticompetitive lawsuit to force the acquisition of MavorCo's assets at a reduced rate". These assertions are insufficient for three reasons.

*First*, Blendtec's lawsuits to enforce its trademarks are not sufficient to underlie an antitrust defense, because it is evident that Blendtec's infringement claims are meritorious and

not "objectively baseless". *Deere & Co. v. MTD Holdings*, 2004 U.S. Dist. LEXIS 15776 at *12- 14 & n.4 (S.D.N.Y. Aug. 10, 2004) (striking affirmative defense which asserted that bringing trademark infringement suit constituted antitrust violation); *see also Prof'l Real Estate Investors, Inc. v. Columbia Pictures*, 508 U.S. 49, 56 (1993); *1-800CONTACTS, Inc. v. Mem'l Eye, P.A.*, 2010 U.S. Dist. LEXIS 23972, at *2 (D. Utah Mar. 15, 2010) (striking antitrust-based affirmative defense because the infringement claim was not objectively baseless).

As further elaborated in Blendtec's motion for preliminary injunction [Dkt. 25], Blendtec is highly likely to succeed on its claims for trademark infringement. To succeed on its claim for trademark infringement, Blendtec must demonstrate that it is (1) the owner of a valid, protectable mark, and (2) that the alleged infringer is using a confusingly similar mark. *Utah Lighthouse Ministry v. Foundation for Apologetic Info. & Res.*, 527 F.3d 1045, 1049 (10th Cir. 2008). "Of these factors, the central inquiry is the likelihood of consumer confusion." *Id*.

There is no question that Blendtec is the owner of the Blendtec Mark and the Swirl Design Mark, which are registered to Blendtec, are incontestable marks, and are used in connection with Blendtec's goods and services. Dkt. 25 at 7-8. More importantly, Blendjet's use of the Blendjet Marks has caused damaging and widespread confusion among consumers and will continue to do so if such blatant infringement is not enjoined. The Blendtec and Blendjet marks are substantially similar as they are visually similar (as seen in the pictures above) and they convey similar meaning (*i.e.*, image of blending in consumer minds) [*id*. at 8-10]. Due to the dramatic similarity, there is already significant evidence that a mountain of confusion has occurred, including customers contacting Blendtec mistakenly complaining about their poor quality Blendjet blenders and demanding refunds and replacement **from Blendtec**. *See id*. at 13-

8

14. Additionally, it is beyond dispute that both parties sell blenders and many consumers have expressed the belief that Blendtec has put out a small portable blender under the Blendjet name. *See id*. at 16 (citing Buchanan Decl. at ¶18). For these reasons alone, MavorCo's conclusory assertion that this 2025 Action (or even the 2021 Action that Blendtec has sought to consolidate) somehow constitutes "bad faith pressure tactics" is without merit.

    ***Second***, MavorCo's attempt to use prior settlement discussions to assert that Blendtec is attempting to "extort an acquisition of Blendjet at a significantly undervalued price" is not only conclusory, but also false. Blendtec vigorously denies, and there is no evidence or even alleged facts to suggest, that any of its previous settlement discussions with Blendjet were an attempt to extort an acquisition of Blendjet or its assets for an undervalued price. To the contrary, there is ample evidence to show that Blendjet envisioned selling itself to Blendtec and repeatedly reached out to Blendtec seeking an acquisition after the commencement of the 2021 Action. Further, when Blendjet reached out to mediate the 2021 Action in late 2023 and the parties mediated in early 2024, Blendjet was experiencing serious financial difficulties and made unreasonable demands on Blendtec. After Blendjet's financial condition languished due to the massive recall, Blendjet continued to make unreasonable demands, essentially threatening insolvency, intimating that Blendtec would walk away emptyhanded if it rejected Blendjet's minimal settlement proposals. MavorCo has not and cannot cite any facts or evidence that can support its conclusory allegation that Blendtec filed the lawsuits hoping to "extort" Blendjet.

    ***Third,*** Blendtec's settlement overtures in the 2021 Action and more recently with MavorCo, are protected by Fed. R. Evid. 408 and the parties' mediation agreement that prohibits reliance on either party's mediation conduct "in any litigation or arbitration" between the parties.

9

4909-6188-9595\6

*See* **Ex. 4.** Courts have "used Rule 12(f) to strike allegations from complaints that detail settlement negotiations within the ambit of Rule 408." *McCrary v. Elations Co., LLC*, 2013 WL 6403073, at *5-*6 (C.D. Cal. July 12, 2013) (striking portions of complaint containing settlement contents and discussions). MavorCo's ostensible use of these protected discussions to accuse Blendtec of anticompetitive conduct is inappropriate and contrary to public policy. *McCrary*, 2013 WL 6403073, at *6. Given that MavorCo's only support for its antitrust defense comes from the settlement and mediation discussions, the defense fails and should be stricken.

### B. MavorCo's Thirteenth Affirmative Defense Should be Stricken Because it Prejudices Blendtec

By allowing MavorCo's baseless thirteenth affirmative defense for purported antitrust violations, MavorCo will take the position that it is entitled to discovery related to that defense. Discovery regarding a baseless antitrust violation will expose Blendtec to significant and unnecessary burdensome discovery, prejudicing Blendtec. *See, e.g., Transhorn, Ltd. v. United Techs. Corp. (In re Elevator Antitrust Litig.),* 502 F.3d 47, 50 n.4 (2d Cir. 2007) ("[P]roceeding to antitrust discovery can be expensive."). In such situations, particularly, as here, where there is no support for MavorCo's purported defense, courts have frequently stricken conclusory defenses to avoid wasteful and unnecessary discovery detours. *See S.E.C. v. Toomey,* 866 F. Supp. 719, 725 (S.D.N.Y. 1992) (striking affirmative defense that would "only increase the duration and expense of trial" because it would prejudice the plaintiff).

### IV. CONCLUSION

For the foregoing reasons, Blendtec respectfully requests that the Court strike MavorCo's Thirteenth Affirmative Defense and to grant any such other relief it deems just and proper.

4909-6188-9595\6

DATED this 30th day of April, 2025.

                                             DORSEY & WHITNEY LLP

                                             /s/ *Mark A. Miller*
                                             Brett Foster (#6089)
                                             Mark A. Miller (#9563)
                                             Tamara L. Kapaloski (#13471)
                                             *Attorneys for Plaintiff Blendtec Inc.*

4909-6188-9595\6

## CERTIFICATE OF SERVICE

I hereby certify that on the 30th day of April, 2025, a true and correct copy of the foregoing was served on counsel of record via the Court's CM/ECF system which will send electronic notification to all counsel of record.

*/s/ Vanessa Thompson*

4909-6188-9595\6