Brett Foster (#6089)
Mark Miller (#9563)
Tamara Kapaloski (#13471)
**DORSEY & WHITNEY LLP**
111 S. Main Street, Suite 2100
Salt Lake City, UT 84111
Telephone: (801) 933-7360
Facsimile: (801) 933-7373
foster.brett@dorsey.com
miller.mark@dorsey.com
kapaloski.tammy@dorsey.com

*Attorneys for Plaintiff Blendtec Inc.*

---

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| **BLENDTEC INC.**, a Utah corporation,<br><br>    Plaintiff,<br><br>vs.<br><br>**BLENDJET INC.**, a Delaware corporation, **MAVORCO HOLDINGS, LLC**, a Delaware corporation, **MAVORCO IP, LLC**, a Delaware corporation, and **MAVORCO OPERATIONS, LLC**, a Delaware corporation,<br><br>    Defendants. | **BLENDTEC'S OPPOSITION TO MAVORCO'S MOTION TO DISMISS CLAIMS FOR SUCCESSOR LIABILITY**<br><br>Civil No. 2:25-cv-00096-RJS-DBP<br>Judge Robert J. Shelby<br>Magistrate Judge Dustin B. Pead |

Plaintiff Blendtec Inc. ("Blendtec") hereby submits its opposition to the Motion to Dismiss

filed by Defendants Mavorco Holdings, LLC, Mavorco IP, LLC, and Mavorco Operations, LLC

(collectively, "Mavorco"). Mavorco's motion will be referred to herein as the "Motion."

## TABLE OF CONTENTS

**Page**

I.    Introduction ...................................................................................................................1

II.   Relevant Facts ...............................................................................................................1

III.  Argument .......................................................................................................................5

    A.    Legal Standard .....................................................................................................5

    B.    Blendtec Sufficiently Alleges Successor Liability Against Mavorco.....................6

        1.    Blendtec has Sufficiently Alleged a Mere Continuation Theory of
              Successor Liability.......................................................................................7

        2.    Blendtec Sufficiently Alleges Successor Liability Based on a *De
              Facto* Merger. .........................................................................................14

    C.    Blendtec Sufficiently Alleges Mavorco is Liable Under the Federal
          Common Law of Successor Liability. ...................................................................22

IV.   Conclusion ...................................................................................................................22

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Aci Constr., LLC v. United States of Am*.,
727 F. Supp. 3d 1236 (D. Utah 2024) ............................................................ *passim*

*Aityahia v. Westwind Sch. Of Aero*.,
2022 WL 14813731 (D. Ariz. Oct. 26, 2022) ..................................................6

*AJZN, Inc. v. Yu*,
2015 WL 331937 (D. Del. Jan. 26, 2015) .................................................7, 16

*Anotek, LLC v. Venture Exch*.,
2021 WL 2577604 (Superior Ct. Del. Jun. 22, 2021) ....................................7

*Azko Nobel Coatings Inc. v. Pearl Ave. USA, Ltd*.,
2010 WL 11564918 (E.D. Va. Feb. 23, 2010) ...............................................9

*BAC Local Union 15 Welfare v. Williams Resoration Co., Inc.*,
2017 WL 3026117 (D. Kan. July 17, 2017) ..................................................22

*Chang v. Cashman*,
2024 WL 2941516 (N.D. Cal. Jun. 11, 2024) ............................................6, 8

*Cleveland v. Johnson*,
209 Cal. App. 4th 1315 (2012) ...............................................................8, 13

*Cleveland-Cliffs Burns Harbor LLC v. Boomerang Tube, LLC*,
2023 WL 5688392 (Del. Ch. Sept. 5, 2023) ....................................11, 12, 13

*Clinton v. Sec. Ben. Life Ins. Co*.,
63 F.4th 1264 (10th Cir. 2023) ..........................................................5, 10, 12

*Dansie v. Eaton Corp*.,
No. 2:12-cv-214-RJS, 2013 WL 1136695 (D. Utah Mar. 18, 2013) ...........20

*Decius v. Action Collection Serv*.,
2004 UT App 484 (UT App 2004) ...............................................14, 15, 19

*Eran Fin. Servs., LLC v. Eran Indus. LTD*,
2023 WL 3791641 (S.D. Fla. May 26, 2023) ..........................................6, 12

*Fansteel Metals, Inc. v. Muskogee City-County Port Auth*.,
2022 WL 2872754 (E.D. Okla. Jul. 21, 2022) ..............................................11

*Fiber-Lite Corp. v. Molded Acoustical Prods.*,
    186 B.R. 603 (E.D. Pa. 1994) ...............................................14

*Fuit v. Extreme Prods. Grp. LLC*,
    No. 1:16-cv-00035-RJS, 2018 WL 1801914 (D. Utah Apr. 13, 2018)...................7, 15, 16, 20

*Fujifilm N. Am. Corp. v. M&R Printing Equip., Inc.*,
    565 F. Supp. 3d 222 (D.N.H. 2021)...................................................8

*Glynwed, Inc. v. Plastimatic, Inc.*,
    869 F. Supp. 265 (D.N.J. 1994) .........................................14

*Herrod v. Metal Powder Prods.*,
    2008 U.S. Dist. Lexis 99948 (D. Utah Dec. 10, 2008) .........................14

*Icon Health & Fitness, Inc. v. Fisher-Price, Inc.*,
    No. 1:08-cv-10-TS, 2011 WL 703866 (D. Utah Feb. 11, 2011)...............................13, 18, 19

*King v. JCM Expedite*,
    2024 WL 3848569 (N.D. Ill. Aug. 16, 2024) ...........................10

*Macarthur v. San Juan County*,
    309 F.3d 1216 (10th Cir. 2002) ....................................5

*Marcure v. Lynn*,
    992 F.3d 625 (7th Cir. 2021) ...................................12

*Nat'l Fire & Marine Ins. Co. v. Advanced Lighting Techs.*,
    2024 WL 3377869 (D. Md. Jul. 11, 2024)...................................19

*Pipeline Prods. v. Madison Cos., LLC*,
    2019 WL 4060835 (D. Kan. Aug. 29, 2019) .............................6

*Robison v. 7PN, LLC*,
    569 F. Supp. 3d 1175 (D. Utah 2021).........................5, 7, 9, 10

*Rumbeck v. Premier Valley, Inc.*,
    2017 WL 2929348 (Cal. App. 2017) ...........................15

*Simple Glob., Inc. v. Brathwait Watches, Inc.*,
    2022 WL 100363 (Del. Super. Jan. 10, 2022) ........................11

*Sunnyside Dev. Co., LLC v. Opsys Ltd.*,
    2007 U.S. Dist. LEXIS 63867 (N.D. Cal. Aug. 29, 2007)...................13

*United States v. ISP Env't Servs.*,
    2024 WL 2013949 (D.N.J. May 7, 2024) ...................................................................6

*Vivint, Inc. v. Northstar Alarm Servs., LLC*,
    2017 WL 3484905 (D. Utah Aug. 14, 2017) .............................................14, 15, 21

*Wilson v. Metals USA, Inc.*,
    2013 WL 4586919 (E.D. Cal. 2013) ..........................................................................6

**OTHER AUTHORITIES**

FRCP 25(c) ...................................................................................................................13, 18

*2 Moore's Federal Practice - Civil* § 12.34 (2025) .......................................................12

Restatement of Torts § 12 ...............................................................................................7, 20

Restatement of Torts § 13 ...................................................................................................20

Rule 12(b)(6) .......................................................................................................... *passim*

## I.    INTRODUCTION

In its complaint, Blendtec sets forth three separate and independent claims for successor liability. As its Fifth Claim for Relief, Blendtec asserts a claim for successor liability under Federal Common Law. *See* Dkt. No. 2 ("Compl.") at ¶¶105-116. As its Sixth Claim for Relief, Blendtec asserts a claim for successor liability under state law under both the *de facto* consolidation or merger and the mere continuation exceptions. *Id*. at ¶¶117-127. Each of Blendtec's successor liability claims sets out ample facts, which if assumed true, as they must be on a Rule 12(b)(6) motion to dismiss, state cognizable claims.

Mavorco's Motion addresses only Blendtec's state law successor liability claims and should be denied on this ground alone. Mavorco's Motion with respect to the state law claims presents haphazard and sloppy legal arguments based on inapplicable standards and ambiguous references to documents and facts that are outside Blendtec's Complaint. Mavorco's Motion presents a factual dispute that is not resolvable at the motion to dismiss stage, particularly in light of the intensely factual nature of successor liability claims. Mavorco fails to point to any pleading deficiency that goes to an essential element of Blendtec's proposed successor liability claims. For these reasons, Mavorco's Motion fails and the Court should not dismiss the successor liability claims at the pleading stage.

## II.    RELEVANT FACTS

For decades, Blendtec has sold blenders under its "BLENDTEC" trademark in combination with its swirl design trademark, both of which are federally registered and incontestable. *See* Compl. at ¶¶11, 16, 19-20. In 2018, Blendjet, Inc. ("Blendjet") began using the "BLENDJET" trademark in combination with a swirl design trademark to promote and sell blenders. *Id*. at ¶29.

At the time that Blendjet began using its marks, it was aware of Blendtec and its marks. *Id*. at ¶34. Blendjet sold its blenders direct to consumer on its website at www.blendjet.com (*i.e.*, its store), as well as through retail stores such as Walmart, Target, and Home Depot. *Id*. at ¶35. Blendtec has received hundreds, if not thousands, of calls from confused consumers who believed that the Blendjet blender that they purchased was the smaller blender put out by Blendtec. *Id*. at ¶36. Most of the confused consumer calls were regarding faulty or defective Blendjet blenders that the consumers wanted Blendtec to fix or replace. *Id*. at ¶37.

In November of 2021, Blendtec filed a lawsuit against Blendjet for trademark infringement and related claims in connection with Blendjet's use of confusingly similar trademarks on blenders. *See* Case No. 2:21-cv-00668-TC-DBP (the "2021 Action") at Dkt. No. 2. The last day to serve written discovery in the 2021 Action expired on January 23, 2023. *See* Dkt. No. 35 in the 2021 Action.[1]

In December of 2023, Blendjet issued a massive recall of nearly 5,000,000 Blendjet blenders after the Consumer Product Safety Commission found that the "recalled blenders can overheat or catch fire and the blender blades can break off, posing fire and laceration hazards to consumers." Compl. ¶38. Since the recall, Blendtec has received numerous calls from confused Blendjet customers who mistakenly believed that the recalled Blendjet blenders were Blendtec blenders. *Id*. at ¶39.

Unbeknownst to Blendtec, on or about December 10, 2024, a brand-new entity, Mavorco

---

[1] Because this case involves the exact same trademarks and trademark infringement analysis as the 2021 Action, Blendtec has filed a motion to consolidate this action into the 2021 Action. *See id*. at Dkt. No. 200. That motion is pending. On May 1, 2025, Mavorco filed in this case a "Non-Opposition to Plaintiff's Motion to Consolidate." Dkt. No. 53.

2

was formed in Delaware. *Id*. at ¶41. Mavorco was formed for the sole purpose of acquiring all Blendjet assets and continuing Blendjet's operations. *Id*. at ¶42. Blendjet's intent was to transfer its assets to Mavorco which would continue to operate Blendjet without interruption, including under the same name, trademarks, domain, website, social media accounts, and with an identity of owners and employees. *Id*. at ¶43.

Also unbeknownst to Blendtec, on or about January 13, 2025, Mavorco acquired all Blendjet assets, including the www.blendjet.com domain, Blendjet's website (*i.e*., its store), the Blendjet trademark, the swirl design trademark, and Blendjet's social media accounts. *Id*. at ¶45. Mavorco is continuing the operations of Blendjet without interruption, including by using the Blendjet name to sell blenders. *Id*. at ¶46. Mavorco intends to continue the operations of Blendjet without interruption into the future. *Id*. at ¶47.

Mavorco uses the Blendjet mark and swirl mark to sell blenders on the www.blendjet.com website (*i.e*., the store) that Mavorco now owns, in the identical way that Blendjet formerly sold blenders on the www.blendjet.com website. *Id*. at ¶¶51 52. Mavorco has also continued Blendjet's advertising and promotion of blenders under the Blendjet and swirl mark without interruption. *Id*. at ¶¶54-55. In this way, Mavorco is holding itself out to the public as Blendjet. *Id*. at ¶124. Thus, Mavorco has continued the same business as Blendjet, without interruption, using the same name and marks, assets, domain name, websites, social media accounts, and some or many of the same owners, employees and officers. *Id*. Mavorco assumed only the obligations of Blendjet that were necessary for a continuation of the Blendjet business. *Id*. at ¶125.

The transfer of Blendjet's assets was for inadequate consideration such that little or no value was received by Blendjet to satisfy the claims of its unsecured creditors, including Blendtec.

*Id*. at ¶¶118, 123. Blendjet intends to dissolve and cease to exist as an ongoing entity. *Id*. at ¶¶48, 126. Blendjet has defaulted in this action, and the Clerk has entered a certificate of default. *See* Dkt. No. 50. Blendtec will move for a default judgment against Blendjet in this action as soon as practicable. Blendjet's counsel in the 2021 Action withdrew likely because they were not being paid by Blendjet. *See* 2021 Action at Dkt. No. 204 ("The reasons for withdrawal are as follows: There has been a breakdown in the attorney-client relationship and Blendjet is currently unable to fulfill its obligations to counsel."). In Mavorco's May 1, 2025, submission to the Court, Mavorco stated that "Blendjet has not retained new legal counsel, and Mavorco is unaware of any information indicating that Blendjet will be able to do so." Dkt. No. 53 at ¶9.

Detailed information related to the structure of the transaction between Mavorco and Blendjet is exclusively within the possession of Mavorco. Blendtec **has not had any discovery whatsoever** regarding the transaction. That would not have been possible. The transaction did not occur until January 13, 2025, and Blendtec did not discover the identity of the successor to Blendjet until February 7, 2025. Blendtec filed this lawsuit on February 11, 2025, which was as soon as it reasonably could after learning the identity of Mavorco (which Blendjet declined to disclose despite Blendtec's request). Mavorco claims in its Motion that Blendtec "had full access to relevant documents [in the 2021 Action] concerning Blendjet's corporate structure, the terms of the asset sale, and the relationship–if-any–between Blendjet and Mavorco." Motion at 3. *See also id*. at 4 (Blendtec "has had the benefit of full discovery in" the 2021 Action). As Mavorco knows, that is not true. The last day to serve written discovery in the 2023 Action was January 23, 2023. *See* 2021 Action at Dkt. No. 35. That deadline expired nearly two years <u>before</u> Blendjet transferred its

assets to Mavorco.[2] Blendjet currently is not represented by counsel in either this lawsuit, in which it has defaulted, or in the 2021 Action.

## III.    ARGUMENT

### A.    Legal Standard

"Granting a motion to dismiss is a harsh remedy which must be cautiously studied, not only to effectuate the spirit of the liberal rules of pleading but also to protect the interests of justice." *Clinton v. Sec. Ben. Life Ins. Co.*, 63 F.4th 1264, 1276 (10th Cir. 2023) ("[t]here is a low bar for surviving a motion to dismiss"). To survive a Rule 12(b)(6) motion to dismiss, "a complaint must allege facts that, if true, state a claim to relief that is plausible on its face." *Id*. at 1274. Facial plausibility requires the pleading of "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. at 1275. "The court must accept all well-pleaded allegations in the complaint as true and construe them in the light most favorable to plaintiff." *Robison v. 7PN, LLC*, 569 F. Supp. 3d 1175, 1179 (D. Utah 2021). The Court need, however, "accept threadbare recitals of the elements of a cause of action that are supported by mere conclusory statements." *Clinton*, 63 F.4th at 1275. "An allegation is conclusory where it states an inference without stating underlying facts or is devoid of any factual enhancement." *Id*. "When deciding a Rule 12(b)(6) motion, courts generally should not look beyond the confines of the complaint itself." *Macarthur v. San Juan County*, 309 F.3d 1216, 1221 (10th Cir. 2002). "The court's function is not to weigh potential evidence that the parties might

---

[2] Despite Mavorco's misleading and self-serving contention in its Motion that Blendtec "had full access to relevant documents [in the 2021 Action] concerning . . . the terms of the asset sale, and the relationship–if-any–between Blendjet and Mavorco," Mavorco concedes in its May 1, 2025, submission to the Court that "the deadline for serving written fact discovery in the 2021 Action . . . passed" in January 2023.

present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted." *Id.* ("it may appear on the face of the pleadings that a recovery is very remote and unlikely but that is not the test").

Successor liability claims "involve[] a fact specific inquiry." *Pipeline Prods. v. Madison Cos., LLC*, 2019 WL 4060835, at *8 (D. Kan. Aug. 29, 2019). *See also Aityahia v. Westwind Sch. Of Aero.*, 2022 WL 14813731, at *3 (D. Ariz. Oct. 26, 2022) ("successor liability is a flexible, fact intensive inquiry"). Thus, "[e]ach successor liability case must be determined on its own facts including looking at the totality of the unusual circumstances." *Wilson v. Metals USA, Inc.*, 2013 WL 4586919, at *9 (E.D. Cal. 2013). Because the "successor liability inquiry is highly fact-specific, . . . courts tend to avoid ruling on the substantive merits of plaintiffs' case for successor liability at the pleadings stage." *Chang v. Cashman*, 2024 WL 2941516, at *2 (N.D. Cal. Jun. 11, 2024). *See also Eran Fin. Servs., LLC v. Eran Indus. LTD*, 2023 WL 3791641, at *2 (S.D. Fla. May 26, 2023) (successor liability involves "fact-intensive inquiries that are premature on a motion to dismiss"). Moreover, "courts deny motions to dismiss if the complaint alleges sufficient successor liability allegations because the information needed to substantiate a plaintiff's claim of successor liability is likely in the possession of the defendant." *United States v. ISP Env't Servs.*, 2024 WL 2013949 at *4 (D.N.J. May 7, 2024).[3]

## B.    Blendtec Sufficiently Alleges Successor Liability Against Mavorco.

The doctrine of successor liability is an equitable set of exceptions to the general rule that

---

[3] Mavorco claims that "[c]ourts frequently hold plaintiffs to a higher pleading standard where, as here, the parties have had the benefit of full discovery in a related case." Motion at 4. This is completely disingenuous. As Mavorco knows, Blendtec has had <u>no discovery whatsoever</u> on the Mavorco/Blendjet transaction or the successor liability issues.

a company acquiring the assets of another corporation does not become liable for the debts of the transferring company. *See, e.g., Aci Constr., LLC v. United States of Am.*, 727 F. Supp. 3d 1236, 1255 (D. Utah 2024) ("Successor liability is an equitable doctrine, looking beyond organizational documents and at the substance of what occurred."). Under state law, there are four recognized exceptions to successor non-liability: "(1) the buyer's assumption of liability; (2) *de facto* merger or consolidation; (3) mere continuation of the predecessor under a different name; or (4) fraud." *AJZN, Inc. v. Yu*, 2015 WL 331937, at *15-16 (D. Del. Jan. 26, 2015).[4] Blendtec sufficiently alleges that Mavorco's conduct puts it squarely in at least two of these exceptions.[5]

### 1.    Blendtec has Sufficiently Alleged a Mere Continuation Theory of Successor Liability.

The mere continuation exception ensures that a purchasing company will not escape

---

[4] Mavorco contends that Utah law applies to the successor liability analyses. *See* Motion at 5 ("Utah courts consider the following factors"). Although Blendtec does not have sufficient information to conduct a meaningful choice of law analyses because that information is in the exclusive possession of Mavorco, Blendtec believes that California law may well apply as the place with the most significant relationship to the successor liability issue. *See Fuit v. Extreme Prods. Grp. LLC*, No. 1:16-cv-00035-RJS, 2018 WL 1801914, at *4 (D. Utah Apr. 13, 2018) (applying California law). Delaware law (the place of incorporation of Blendjet and Mavorco) or Utah law may also apply. *See Robison*, 569 F. Supp. 3d at 1179-80 (a court with federal question jurisdiction is "not obligated to apply substantive state law or to employ a choice of law analyses to resolve the issue of what law governs successor liability," and the court "chooses to apply Utah law here [because] state law is well equipped to handle the issue of successor liability"). Both Utah and Delaware analyze successor liability similarly following the Restatement (Third) of Torts § 12. *See Fuit*, 2018 U.S. Dist. LEXIS 63154, at *3. The standard in California differs and California "also recognizes a product line exception." *Id*. As a result, Blendtec will analyze the issue under Delaware/Utah law, which are substantially similar, and California law.

[5] "[T]he test for successor liability is disjunctive: only one of the theories needs to apply to hold [acquiror] liable." *Aci Constr.*, 727 F. Supp. 3d at 1255. *See also Anotek, LLC v. Venture Exch.*, 2021 WL 2577604, at *2 (Superior Ct. Del. Jun. 22, 2021) ("Any one of those bases justifies imposing the liabilities of a predecessor company on a successor company" such that "the Court must deny" the "motion to dismiss if the amended complaint contains well-pleaded factual allegations as to any of these bases of successor liability.").

liability where it maintains the same or similar management and ownership but wears a new hat. *Aci Constr.*, 727 F. Supp. 3d at 1261 ("The question becomes: Is the new company merely the predecessor in disguise?"). "Under the mere continuation theory, the substance of what occurred matters more than what has been formalized on paper." *Id. See also Cleveland v. Johnson*, 209 Cal. App. 4th 1315, 1327 (2012) ("where the purchasing corporation is a mere continuation of the seller—it has long been held that corporations cannot escape liability by a mere change of name or a shift of assets when and where it is shown that the new corporation, is, in reality, but a continuation of the old"). Under California law, a mere continuation requires "<u>one or both</u> of the following factual elements: (1) no adequate consideration was given for the predecessor corporation's assets and made available for meeting the claims of its unsecured creditors; <u>or</u> (2) one or more persons were officers, directors, or stockholders of both corporations." *Chang*, 2024 WL 2941516, at *1 (emphasis added). Utah and Delaware law require a continuation of ownership and only one corporation after the transfer. *See Robison*, 569 F. Supp. 3d at 1180 ("continuation demands a common identity of stock, directors, and stockholders and the existence of only one corporation at the completion of the transfer"); *Fujifilm N. Am. Corp. v. M&R Printing Equip., Inc.*, 565 F. Supp. 3d 222, 232 (D.N.H. 2021) ("mere continuation theory" requires "common identity of the officers, directors, or stockholders of the predecessor and successor corporations, and the existence of only one corporation at the completion of the transfer") (applying Delaware law).

Blendtec sufficiently alleges that Mavorco is a mere continuation of Blendjet under both the California and Utah/Delaware standards:

- "Upon information and belief, the Mavorco entities were incorporated for the sole purpose of acquiring Blendjet's assets and continuing the business operations of

Blendjet." Compl. at ¶¶6, 42, 122.[6]

- Mavorco is "continu[ing] to operate Blendjet without interruption, . . . <u>with an identity of owners and employees</u>." *Id*. at ¶43 (emphasis added).

- "Upon information and belief, on or about January 13, 2025, Mavorco acquired all assets of Blendjet, including the <u>www.blendjet.com</u> domain, Blendjet's website, the Infringing Marks, and Blendjet's social media accounts." *Id*. at ¶45.

- "Upon information and belief, Mavorco is currently continuing the operations of Blendjet without interruption, including by using the Blendjet name and selling portable blenders under the Infringing Marks." *Id*. at ¶46.

- "Upon information and belief, there is substantial continuity in the operation of Blendjet's business before and after the asset transfer." *Id*. at ¶108.

- "Upon information and belief, Mavorco owns the Infringing Marks and continues to sell blenders under the Infringing Marks." *Id*. at ¶109.

- "Mavorco [now] owns and continues to operate the <u>www.blendjet.com</u> domain and Blendjet's website, where Mavorco continues to promote and advertise Blendjet blenders without interruption." *Id*. at ¶110.

- "Upon information and belief, Blendjet has no assets and is currently operating solely on behalf of Mavorco, under a lease, with Blendjet to make a full accounting to Mavorco." *Id*. at ¶113.

- Blendjet transferred its assets "for inadequate consideration such that little or no value was received by Blendjet to satisfy the claims of its unsecured creditors, including Plaintiff." *Id*. at ¶118.

- "Mavorco has continued the same business as Blendjet, without interruption, using the same name and marks, assets, domain name, websites, social media accounts, and <u>some or all of the same owners, employees, and officers</u>." *Id*. at ¶124 (emphasis

---

[6] "*Twombly* and *Iqbal's* heightened standards do not prevent a plaintiff from pleading" upon information and belief "where the facts are peculiarly within the possession and control of the defendant." *Robison*, 569 F. Supp. 3d at 1181 ("The knowledge about the way Mr. Green ran his business before and after he registered 7PN as an LLC is squarely within Mr. Green's possession.") (denying motion to dismiss successor liability claim). *See also Azko Nobel Coatings Inc. v. Pearl Ave. USA, Ltd*., 2010 WL 11564918, at *2 (E.D. Va. Feb. 23, 2010) (denying motion to dismiss successor liability claim based on allegations pled on information and belief because "pleading upon information and belief is appropriate when the factual basis supporting a pleading is in the opposing party's possession").

added).

- "Mavorco has further held itself out to the public as a continuation of the business operations of Blendjet." *Id.*

- For example, "the screenshots below show Blendjet blenders being promoted and offered for sale on Mavorco's website at www.blendjet.com." *Id.* at ¶51 (screenshots omitted).

- "Upon information and belief, Blendjet Inc. intends to dissolve and cease to exist as an ongoing entity within the next 90 days." *Id.* at ¶48.

- "Upon information and belief, since the asset transfer, the intent has all times been for Blendjet to dissolve and it will dissolve and cease to exist as an ongoing entity without the next 90 days."). *Id.* at ¶126.

- "Mavorco is a mere continuation of the business of Blendjet." *Id.* at ¶127.[7]

These factual allegations, which must be accepted as true and construed in the light most favorable to Blendtec, allege a common identity in owners between Mavorco and Blendjet, that inadequate consideration was provided, and that only one ongoing entity remains or will remain at the completion of the transaction. As such, Blendtec sufficiently pled that Mavorco is merely a continuation of Blendjet under applicable law.

Courts have found similar allegations sufficient to survive a motion to dismiss. In *Robison*, 569 F. Supp. 3d at 1181, for example, plaintiff's complaint contained the following allegations: "Mr. Green is 7PN's sole owner, he was the sole owner when he ran the business as 7 Point

---

[7] If Paragraph 127 were the only allegation, it would likely be insufficient, as "threadbare recitals" allege only that "each successor liability factor is satisfied." *King v. JCM Expedite*, 2024 WL 3848569, at *6 (N.D. Ill. Aug. 16, 2024). However, "allegations of common management" and "allegations of a transfer of trucks between the two companies," which allows the court to draw an "inference of a transfer of ownership," sufficiently allege successor liability under the mere continuation exception. *Id.* at *7. Taken as a whole, Blendtec's allegations are sufficient to withstand a motion to dismiss. *See Clinton*, 63 F.4th at 1275 ("Our task [in deciding a Rule 12(b)(6) motion] is to consider the complaint's allegations taken as a whole.").

Nutrition or in his individual capacity and that nothing has changed after 7PN was created." In denying a motion to dismiss, the Court held that these allegations "plausibly pleaded successor liability." *Id*.

In *Fansteel Metals, Inc. v. Muskogee City-County Port Auth*., 2022 WL 2872754, at *6 (E.D. Okla. Jul. 21, 2022), Fansteel alleged that Metallurg was "merely a continuation" of Old Metallurg and Shieldalloy. The court found that "Fansteel expressly pled that Metallurg is merely a continuation of Old Metallurg and Shieldalloy" and that "Mettalurg retained Old Megallurg's and Shieldalloy's business relationships, key employees, officers, directors, and/or shareholders." *Id*. In denying a Rule 12(b)(6) motion to dismiss, the court found that "[s]uch allegations are sufficient" and Fansteel "has adequately pled successor liability." *Id*.

In *Cleveland-Cliffs Burns Harbor LLC v. Boomerang Tube*, *LLC*, 2023 WL 5688392 (Del. Ch. Sept. 5, 2023), the court denied a motion to dismiss a successor liability claim where the complaint alleged that the successor corporation "remains under the ownership and control of Black Diamond and its affiliates", the predecessor "effectively ceased to exist after the Article 9 sale and was replaced by PTC Liberty – which operates the same business, employs the same facilities, employees, and equipment, has a similar website, and sells to the same customers as Bomerang", and the same "officers and employees" that once worked for the predecessor corporation now worked for the successor corporation. *Id*. at *16. "Taken together, these facts make it reasonably conceivable that PTC Liberty is a continuation of Boomerang." *Id*.[8]

---

[8] *See also Simple Glob., Inc. v. Brathwait Watches, Inc*., 2022 WL 100363, at *3 (Del. Super. Jan. 10, 2022) (denying summary judgment motion where successor "fill[ed] the same role" in selling products "once filled by" the prior company, the two used the same website, and it seemed that "a relationship of some degree exists, or existed.").

Mavorco's arguments against successor liability would improperly require the court to construe the allegations in favor of Mavorco, to draw inferences against Blendtec, and to assume that the factual allegations in the Complaint are false.[9] As the party moving for dismissal, Mavorco "has the burden of showing that no claim has been stated." *2 Moore's Federal Practice - Civil* § 12.34 (2025). *See also Marcure v. Lynn*, 992 F.3d 625, 631 (7th Cir. 2021) ("every circuit court to address this issue . . . has interpreted Rule 12(b)(6) as requiring the movant to show entitlement to dismissal"). Mavorco cannot meet its burden by asking the Court to turn the Rule 12(b)(6) standard on its head.

Mavorco first argues that "Blendtec has not plausibly alleged any continuation of ownership or control." Motion at 8. A claim has "facial plausibility" when the plaintiff pleads "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Clinton*, 63 F.4th at 1275 (10th Cir. 2023). When assumed to be true and construed in the light most favorable to Blendtec, and when drawing all inferences in Blendtec's favor, the Complaint's allegations taken as a whole support the reasonable inference that Mavorco is the mere continuation of Blendjet. *See supra* at p. 9-11. Mavorco also wrongly contends that "there is no dispute there is no identity of ownership and control." Motion at 8. Not so. Blendtec disputes that contention and has alleged an "identity of owners and employees"

---

[9] *See, e.g., Cleveland-Cliffs Burns Harbor*, 2023 WL 5688392, at *16 (declining to "draw inferences" against plaintiff when denying a motion to dismiss successor liability claim); *Eran Fin'l Servs.*, 2023 WL 3791641, at *3 ("EI Belize urges the Court to selectively construe certain excerpts of the allegedly forged contract in a manner that is favorable to it and to assume the existence of certain facts . . . . [h]owever, these arguments would fail on a motion to dismiss, where I must view the facts in the light most favorable to EFS.") (granting motion to amend complaint to assert successor liability claim).

(Compl. at ¶43), among other allegations, and that allegation must be assumed true and construed in favor of Blendtec.

Mavorco next claims that "Blendjet still exists" and "[t]his alone defeats Blendtec's claim for successor liability." Motion at 8.[10] Blendtec alleges, however, that "Blendjet Inc. intends to dissolve and cease to exist as an ongoing entity within the next 90 days." Compl. at ¶48. *See also id.* at ¶¶114, 126. Blendtec also alleges that Blendjet exists now only as an assetless shell with its sole purpose being to serve Mavorco. *Id.* at ¶113 ("Blendjet has no assets and is currently operating solely on behalf of Mavorco . . . with Blendjet to make a full accounting to Mavorco."); *id.* at ¶6 (Mavorco was "incorporated for the sole purpose of acquiring Blendjet's assets and continuing the business operations of Blendjet"; "on or about January 13, 2025, . . . Mavorco . . . purchased all assets of Blendjet."). This is sufficient to withstand a motion to dismiss. *See Cleveland*, 209 Cal. App. 4th at 1330 (expressly rejecting "the proposition that a corporation . . . cannot be subjected to successor liability where the seller . . . retained its separate corporate identity and continued to operate after the asset transfer") (applying California law); *Cleveland-Cliffs*, 2023 WL 5688392, at *16 (rejecting defendant's argument that Boomerang "existed after the Article 9 sale" because "it is reasonable to infer from the Complaint that Boomerang no longer exists as a going concern,

---

[10] Mavorco cites *Icon Health & Fitness, Inc. v. Fisher-Price, Inc.*, No. 1:08-cv-10-TS, 2011 WL 703866 (D. Utah Feb. 11, 2011), as "declining to impose successor liability where the seller though financially defunct, still exists." *Id.* But *Icon Health* did not involve a motion to dismiss. In determining whether to substitute a party pursuant to FRCP 25(c), the *Icon Health* court weighed the evidence, including voluminous exhibits and declarations. *See* No. 1:08-cv-10 at Dkt. Nos. 45-1 through 45-11, 54-1 through 54-18, and 55-1 (exhibits and multiple declarations submitted with motion to substitute). "[W]here a Rule 25(c) decision effectively imposes liability, the court should conduct an evidentiary hearing unless the standards for summary judgment have been met." *Sunnyside Dev. Co., LLC v. Opsys Ltd.*, 2007 U.S. Dist. LEXIS 63867, at *18 (N.D. Cal. Aug. 29, 2007). Clearly, this is not the standard on a Rule 12(b)(6) motion to dismiss.

has effectively been dissolved, and was replaced by PTC Liberty") (applying Delaware law). Blendjet's contention to the contrary elevates form over substance, which is contrary to the equitable principles of successor liability. *See, e.g., ACI Const.*, 727 F. Supp. 3d at 1261 ("the substance of what occurred matters more than what has been formalized on paper")[11].

### 2. Blendtec Sufficiently Alleges Successor Liability Based on a *De Facto* Merger.

"Courts applying the *de facto* merger exception look beyond the form of an asset sale to determine whether there has been, in substance, a merger or consolidation." *Vivint, Inc. v. Northstar Alarm Servs., LLC*, No. 2:16-cv-00106-JNP-EFJ, 2017 WL 3484905, at *2 (D. Utah Aug. 14, 2017) ("looking beyond the [Asset Purchase Agreement] to determine whether the practical effect of the transaction was a *de facto* merger"). Courts have recognized *de facto* mergers when "(1) there is a continuation of the enterprise of the seller in terms of continuity of management, personnel, physical location, assets, and operations; (2) there is a continuity of shareholders; (3) the seller ceases operations, liquidates, and dissolves as soon as legally and practically possible; and (4) the purchasing corporation assumes the obligations of the seller necessary for uninterrupted continuation of business operations." *Id.*[12] "No one of these factors is

---

[11] *See also Glynwed, Inc. v. Plastimatic, Inc.*, 869 F. Supp. 265, 275 (D.N.J. 1994) ("in successor liability cases the courts should not elevate form over substance"); *Fiber-Lite Corp. v. Molded Acoustical Prods.*, 186 B.R. 603, 610 (E.D. Pa. 1994) ("when analyzing the issue of successor liability, we must be careful not to elevate form over substance") (rejecting contention that buyer could not be responsible for seller's debts since buyer acquired seller's assets in a foreclosure sale).

[12] Mavorco claims, wrongly and carelessly, that *Herrod v. Metal Powder Prods.*, 2008 U.S. Dist. Lexis 99948, at *12-13 (D. Utah Dec. 10, 2008), and *Decius v. Action Collection Serv.*, 2004 UT App 484, ¶8 (UT App 2004), set forth the factors that "Utah courts consider" in evaluating "whether the 'de facto merger' exception applies." Motion at 5. *Herrod* and *Decius* analyzed the mere continuation exception, not the *de facto* merger exception, however, and neither case set forth the factors identified by Mavorco. *See Herrod*, 2008 U.S. Dist. LEXIS 99948, at *13 ("Plaintiffs claim that Stemco is liable as the successor to MPP because, Plaintiffs allege, the Asset Purchase

either necessary or sufficient to establish a *de facto* merger, but all are indicators that tend to show a *de facto* merger." *Fuit v. Extreme Prods. Group, LLC*, No. 1:16-cv-0035-RJS, 2018 WL 1801914, at *5 (D. Utah Apr. 13, 2018). Under California law, a consolidation or merger "has been invoked where one corporation takes all of another corporation's assets without providing any consideration that could be made available to meet claims of the other's creditors." *Rumbeck v. Premier Valley,* Inc., 2017 WL 2929348, *12 (Cal. App. 2017) (Unpublished). The "*de facto* merger doctrine is rooted in equity, and has the purpose of avoiding patent injustice which might befall a party simply because a merger has been called something else." *Vivint*, 2017 WL 3484905, at *2. "[W]hen determining whether a *de facto* merger has occurred, courts take a broad view and disregard mere questions of form and ask whether, in substance, it was the intent of the successor to absorb and continue the operation of the predecessor." *ACI Constr*., 727 F. Supp. 3d at 1260. Taken as a whole, Blendtec's allegations are sufficient to allege a *de facto* merger.

The California requirement is met:

- Mavorco obtained Blendjet's assets without providing adequate consideration that could be made available to meet the claims of creditors. *See* Compl. ¶¶118, 120, 123.

The Utah/Delaware requirement is also met:

- Mavorco is a continuation of Blendjet in terms of management, personnel, physical location, assets, and operations. *Id*. ¶¶6, 122 (Mavorco was incorporated for the sole purpose of continuing the business operations of Blendjet); ¶42 (Mavorco was formed for the sole purpose of acquiring Blendjet's assets and continuing Blendjet's operations); ¶¶43, 124 (Mavorco is continuing to operate Blendjet without interruption, including using the same name, trademarks, domain, website (*i.e.*, store), social media accounts, and with an identity of owners and employees); ¶46 (Mavorco is currently continuing the operations of Blendjet without interruption,

---

Agreement resulted in Stemco being a continuation of MPP."); *Decius*, 2004 UT App 484, ¶9 ("Plaintiffs assert that the mere continuation exception applies in this case.").

including by using the Blendjet name and selling portable blenders under the Infringing Marks); ¶51 (Mavorco is promoting and selling Blendjet blenders on the www.blendjet.com website, the same location from which Blendjet formerly sold the Blendjet blenders).

- There is a continuity of shareholders. *Id*. at ¶43 (Mavorco is continuing to operate Blendjet with an identity of owners).

- Blendjet will cease operation, liquidate, and dissolve as soon as legally and practically possible. *Id*. ¶¶48, 126.

- Mavorco assumed the obligations of Blendjet that were necessary for uninterrupted continuation of business operations. *Id*. ¶125.

Courts have denied motions to dismiss successor liability claims based on similar allegations. In *AJZN, Inc. v. Yu*, 2015 WL 331937, at \*15-16 (D. Del. Jan. 26, 2015), for example, the court denied a motion to dismiss a successor liability claim based on the *de facto* merger exception where the plaintiff alleged "that following the transfer of the assets from Aerielle to AAC, AAC continued to conduct the same business as Aerielle, using the same assets, domain name and websites, and retaining most employees." *Id*. at \*15. Further, "AJZN notes AAC held itself out to the public as a continuation of the business conducted by Aerielle." *Id*. "AJZN further contends AAC's transfer of the same assets to AIPH constituted a sham foreclosure, in which AIPH continued to conduct the same business using the same domain name, websites, and employees as Aerielle and AAC." *Id*. "AJZN maintains AAC and AIPH are mere continuations or successors of Aerielle through de facto mergers and are liable for Aerielle's debts owed to AJZN." *Id*. Finding that "[a]t this stage of the pleadings, AJZN only needs to demonstrate a showing of a certain set of facts, that a theory exists upon which AJZN may be able to hold defendants liable," the court denied the motion to dismiss. *Id*. at \*16.

This Court's decision in *Fuit*, 2018 WL 1801914, at \*5, also supplies guidance as to the

relevant *de facto* merger analysis. In *Fuit*, the court denied a summary judgment motion because a genuine dispute of fact existed over whether a *de facto* merger occurred where "Solo Sports transferred at least some of its assets to Extreme Products and then ceased business operations . . ., there was at least some continuation of Solo Sports's enterprise, . . . Extreme Products continued to sell the same products . . . ., [and] Extreme Products also assumed Solo Sports's obligations with regard to delivering the inversion tables, which allowed for the uninterrupted continuation of Solo Sports's normal business operations."

For its argument that Blendtec has failed to adequately plead the *de facto* merger exception, Mavorco misstates the allegations of the Complaint and, once again, makes arguments that would require the Court to assume extrinsic facts inserted into the Motion to be true and to construe them in favor of Mavorco.

Mavorco first claims that "Blendtec admits that . . . no stock ownership transferred hands." Motion at 5 (citing Comp. ¶¶40 and 44). Allegations 40 and 44 admit no such thing.[13] Although detailed information related to the precise structure of the transaction is exclusively within the possession of Mavorco, Blendtec alleges that "Mavorco has continued the same business as Blendjet without interruption," using "the same owners, employees, and officers." Compl. at ¶124. *See also id*. at ¶43 (Mavorco continues to operate Blendjet "with an identity of owners and employees").[14] In any event, a transfer of stock ownership is not required to allege a mere

---

[13] *See* Compl. at ¶40 (alleging that Sandton Capital Partners "purchased a loan from Wells Fargo secured by all of Blendjet's assets, including the Infringing Marks"); *id*. at ¶44 (alleging that "Sandton foreclosed on the Blendjet assets and sold them to Mavorco").

[14] Mavorco claims that "Blendtec's Complaint lacks any factual allegation establishing a continuity of shareholders, via a stock transfer or otherwise." Motion at 5 (emphasis added). At the pleading stage, Blendtec is not required to establish a continuity of shareholders, however.

continuation. *See, e.g.*, *ACI Const.*, 727 F. Supp. 3d at 1260 ("continuity of shareholder can exist even where the predecessor does not receive shares when looking beyond the superficial formalities of a transaction in order to examine the transactional realities and their consequences").

Mavorco next argues that a Corporate Disclosure Statement filed by Blendjet over two years ago in the 2021 Action means that there has been no change in Blendjet's ownership. Motion at 6. According to Mavorco, "Blendjet was and continues to be privately held by its founders, who have not received any ownership interest in Mavorco." *Id*. Mavorco asks the Court to construe these arguments, which are extrinsic to the Complaint, in Mavorco's favor and to draw an inference adverse to Blendtec. This is legally improper.

Mavorco criticizes Blendtec's allegation in ¶112 of the Complaint that "some or all of Blendjet officers, employees, and/or shareholders became or will become officers, employees, and/or shareholders of Mavorco" as "speculative and conclusory" and "insufficient to survive a motion to dismiss." Motion at 6.[15] Mavorco cites three cases that it contends support its position that this allegation is insufficient to survive a motion to dismiss. But none do.

First, Mavorco cites to *Icon Health*, but that case did not involve the *de facto* merger exception. *Icon Health* evaluated only the mere continuity exception. *See* 2011 WL 703866, at *1 ("In this case, Icon argues that IFH is a 'mere continuation' of Espresso"). In any event, the *Icon Health* court weighed substantial evidence in deciding a Rule 25(c) motion to substitute a

---

[15] ¶112 is in Blendtec's Fifth Claim for Relief for Federal Common Law Successor Liability, where a different standard applies. *See infra* at Section III(C). For purposes of its state law successor liability claim, Blendtec alleged that "Mavorco has continued the same business as Blendjet, without interruption, using . . . some or many of the same owners, employees, and officers." Compl. ¶124.

purported successor into the action in place of the defendant. *See id.* ("after considering the parties' submissions") (*see also supra* fn. 9). After weighing a plethora of exhibits and multiple declarations, *Icon Health* determined that a "common identity" did not exist for purposes of the mere continuation theory. *Id.* at *6. Clearly, this is not the standard for deciding a Rule 12(b)(6) motion. *Icon Health* does not support dismissal.

Mavorco next cites to *Decius v. Action Collection Serv.*, 2004 UT App 484, and claims that *Decius* found "no successor liability where the successor employed the predecessor's former president in a different role". Motion at 6. Again, *Decius* evaluated the mere continuation exception, rather than the *de facto* merger exception. *Id.* at ¶9 ("Plaintiffs assert that the mere continuation exception applies"). More importantly, as with *Icon Health*, *Decius* applied a very different standard (an appeal from a grant of summary judgment) that is clearly not proper for a 12(b)(6) motion to dismiss. *See, e.g., id.* at ¶13 (finding "Action is not liable under the traditional mere continuation doctrine"). The Court's role on this Motion is not to weigh evidence or decide liability.

The final case cited by Mavorco, *Nat'l Fire & Marine Ins. Co. v. Advanced Lighting Techs.*, 2024 WL 3377869 (D. Md. Jul. 11, 2024), is inapposite. In *Nat'l Fire*, which again evaluated the mere continuation exception (not the *de facto* merger exception) under Maryland law,[16] a motion to dismiss was granted because "plaintiff offers no facts in the [Third Amended Complaint], concerning whether [the predecessor] continued to exist after the sale of assets to GrowGeneration, the extent to which the two entities were owned and managed by the same persons following the

---

[16] *Id.* at *5 ("only the mere continuation exception shall be addressed").

sale, the adequacy of consideration, or the purpose of the sale." *Id*. at *6. By contrast, Blendtec alleges each of these facts. *See* Compl. at ¶¶48, 126 (Blendjet intends to dissolve and cease to exist as an ongoing entity within the next 90 days); ¶¶43, 124 (Mavorco has continued the same business as Blendjet, without interruption, using the same owners, employees, and officers); ¶¶118, 123 (inadequacy of consideration); ¶¶ 42, 46, 47, 122 (the sole purpose of the transaction was for Mavorco to continue the business operations of Blendjet).

With respect to the assumption of obligations factor of a *de facto* merger, Mavorco claims that under *Dansie v. Eaton Corp*., No. 2:12-cv-214-RJS, 2013 WL 1136695 (D. Utah Mar. 18, 2013), "an agreement must confer the specific type of liability that would make a defendant liable for a plaintiff's alleged harm." Motion at 6, fn. 1. According to Mavorco, the "Foreclosure Agreement" (which is extrinsic to the Complaint) "does not assign any liabilities to Mavorco," and, under *Dansie*, this is "fatal to Blendtec's *de facto* merger claim." *Id*. at 6-7. Mavorco is wrong. *Dansie* involved a motion to amend a complaint to add a successor liability claim against a manufacturer under the very specific post-sale duty to warn standard of Section 13 of the Restatement of Torts. 2013 WL 1136695, at *3. As Mavorco recognizes, however, the applicable standard here is Section 12 of the Restatement of Torts. Motion at 5. Section 13's post-sale duty to warn standard requires that the new company "agreed to provide service for maintenance or repair of Dana's products". 2013 WL 1136695, at *8. That has no applicability here. A *de facto* merger requires only that "the purchasing corporation assumes those obligations of the seller ordinarily necessary for the uninterrupted continuation of normal business operations." *Fuit*, 2018 WL 1801914, at *5 (where "Extreme Products assumed Solo Sports's obligations with regard to delivering the inversion tables, which allowed for the uninterrupted continuation of Solo Sports's

normal business operations" a genuine issue of disputed fact exists with respect to de facto merger).[17]

Finally, Mavroco argues that Blendtec's allegation that Blendjet intends to dissolve is insufficient because Blendtec "is well aware that Blendjet still exists post-transaction." Motion at 7. But the requirement is only that "the seller ceases operations, liquidates, and dissolves <u>as soon as legally and practically possible</u>." *Vivent*, 2017 WL 3484905, at *2 (emphasis added). In evaluating the *de facto* merger exception in *Vivent*, for example, it was "undisputed that Vision had not ceased its operations, liquidated, or dissolved." 2017 WL 3484905, at *5 (Vivent "continues to exist only to service the remaining accounts"). Citing cases holding that "the dissolution factor is satisfied if the seller corporation ceases its ordinary business operations," the court declined to grant summary judgment on the ground that the *de facto* merger doctrine did not apply because there was a genuine dispute over whether Vision had ceased its "ordinary business operations." *Id*. Here, Blendtec has alleged that "all of Blendjet's assets" were transferred to Mavorco (Compl. ¶123), Mavorco was "formed for the sole purpose of continuing the business operations of Blendjet" (*id*. ¶122), "Mavorco has continued the same business as Blendjet without interruption, using the same name and marks, assets, domain name, websites, social media accounts," (*id*. ¶124), "Mavorco has . . . held itself out to the public as a continuation of the business operations of Blendjet," (*id*.), and Blendjet "will dissolve and cease to exist as an ongoing entity within the next 90 days" (*id*. ¶126). Assuming these allegations are true and drawing all

---

[17] Indeed, under the proper standard, courts should "look[] beyond the [Asset Purchase Agreement] itself to determine whether the practical effect of the transaction was a *de facto* merger." *Vivent*, 2017 WL 3484905, at *3.

reasonable inferences in favor of Blendtec, as the Court must, this sufficiently alleges that Blendjet has ceased its ordinary business operations.

### C. Blendtec Sufficiently Alleges Mavorco is Liable Under the Federal Common Law of Successor Liability.

Mavorco states in the preamble to its Motion that it is moving to dismiss "the successor liability claims in Counts V and VI" of Blendtec's Complaint. Motion at 1. However, Mavorco fails to address Blendtec's Fifth Claim for Relief, which is for "Federal Common Law Successor Liability." Compl. at p. 25. Because Mavorco fails to address the federal common law claim in any fashion whatsoever, its Motion should be dismissed on this ground alone.

"Federal common law supports successor liability when the court finds both: (1) there is a substantial continuity of identity between the predecessor and successor business entity; and (2) the successor entity has notice of the obligation." *BAC Local Union 15 Welfare v. Williams Resoration Co., Inc.*, 2017 WL 3026117, at *2 (D. Kan. July 17, 2017). Blendtec alleges, among other things, that (1) "there is a substantial continuity in the operation of Blendjet's business before and after the asset transfer" (Compl. ¶108), Mavorco "owns and continues to operate the www.blendjet.com domain and Blendjet's website," where Mavorco continues to promote and advertise Blendjet blenders without interruption (*id*. at ¶110), and (2) "Mavorco had knowledge of the Blendtec marks and Blendtec's infringement allegations against Blendjet and took Blendjet's assets and marks subject to that knowledge" (*id*. at ¶107). Blendtec has sufficiently alleged a Federal Common Law successor liability claim.

## IV. CONCLUSION

For these reasons, Blendtec respectfully requests that the Court deny Mavorco's Motion to Dismiss.

DATED this 2nd day of May, 2025.

DORSEY & WHITNEY LLP

/s/ *Tamara L. Kapaloski*
Brett Foster (#6089)
Mark Miller (#9563)
Tamara L. Kapaloski (#13471)
*Attorneys for Plaintiff Blendtec Inc.*

## **CERTIFICATE OF SERVICE**

I hereby certify that on the 2nd day of May 2025, I electronically filed the foregoing with the Clerk of Court using the Court's CM/ECF system, which will send electronic notification to counsel of record.

*/s/ Tamara L. Kapaloski*