Brett Foster (#6089)
Mark Miller (#9563)
Tamara Kapaloski (#13471)
**DORSEY & WHITNEY LLP**
111 S. Main Street, Suite 2100
Salt Lake City, UT 84111
Telephone: (801) 933-7360
Facsimile: (801) 933-7373
foster.brett@dorsey.com
miller.mark@dorsey.com
kapaloski.tammy@dorsey.com

*Attorneys for Plaintiff Blendtec Inc.*

---

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| **BLENDTEC INC.**, a Utah corporation,<br><br>Plaintiff,<br><br>vs.<br><br>**BLENDJET INC.**, a Delaware corporation, **MAVORCO HOLDINGS, LLC**, a Delaware corporation, **MAVORCO IP, LLC**, a Delaware corporation, and **MAVORCO OPERATIONS, LLC**, a Delaware corporation,<br><br>Defendants. | **BLENDTEC'S REPLY IN SUPPORT OF ITS MOTION FOR PRELIMINARY INJUNCTION**<br><br>Civil No. 2:25-cv-00096-RJS-DBP<br>Judge Robert J. Shelby<br>Magistrate Judge Dustin B. Pead |

Plaintiff Blendtec hereby submits its Reply in Support of its Motion for Preliminary Injunction (the "PI Motion"). Blendjet's Opposition to the PI Motion will be referred to herein as the "Opp." References to "Exh. __" are to the exhibits attached to this reply. References to the "2d Buchanan Decl." are to the Second Declaration of Brian Buchanan, submitted herewith, and references to the "Franklyn Supp." are to the Supplemental Expert Report of David Franklyn.

# TABLE OF CONTENTS

I.     Legal Standard ...................................................................................................1

II.    The Blendtec Marks are Not Generic or Functional ........................................2

III.   Mavorco Failed to Rebut the Likelihood of Confusion Factors .......................4

       A.     Mavorco Failed to Rebut the Evidence of Consumer Confusion ...........4

       B.     Mavorco Failed to Rebut the Evidence Showing Similarity of the Marks.............6

       C.     Mavorco Failed to Rebut the Evidence Showing the Blenders are Related ...........6

       D.     Mavorco Failed to Show Its Consumers Exercise a High Degree of Care.............7

       E.     Mavorco Failed to Rebut the Showing of Intent.......................................7

       F.     USPTO Registrations Do Not Show Blendtec's Marks are Weak .........8

IV.    Absent Injunctive Relief, Blendtec Will be Irreparably Harmed ....................10

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Beer Nuts v. Clover Club Foods Co.*,
711 F.2d 934 (10th Cir. 1983) .....................................................................2, 3

*Braun Inc. v. Dynamics Corp. of Am.*,
975 F.2d 815 (Fed. Cir. 1992).........................................................................3

*Charles Schwab & Co. v. Hibernia Bank*,
665 F. Supp. 800 (N.D. Cal. 1987) .................................................................9

*Dodart v. Young Again Prods.*,
2006 U.S. Dist. LEXIS 72122, at *46 (D. Utah 2006) .....................................8

*EMSL Analytical, Inc. v. Testamerica Analytical Testing Corp.*,
2006 WL 892718, at *12 (D.N.J. 2006) ..........................................................5

*Filipino Yellow Pages, Inc. v. Asian Journal Publs., Inc.*,
198 F.3d 1143 (9th Cir. 1999) .....................................................................2, 3

*Focus Prods. v. Kartri Sales*,
647 F. Supp. 3d 145 (S.D.N.Y. Dec. 22, 2022) ..........................................5, 10

*Golo, LLC v. Goli Nutrition, Inc.*,
2020 WL 5203601, at *9, n.12 (D. Del. 2020) ...............................................5

*Hansen Bev. v. Cytosport*,
2009 WL 5104260 (C.D. Cal. 2009)................................................................9

*Heartland Animal v. Heartland SPCA*,
861 F. Supp. 2d 1293 (D. Kan. 2012) .............................................................5

*Hermès Int'l v. Rothschild*,
678 F. Supp. 3d 475 (S.D.N.Y. 2023)..............................................................7

*Hydrojug v. Five Below*,
625 F. Supp. 3d 684 (N.D. Ohio 2022)......................................................5, 6, 9

*Instructure v. Canvas Techs.*,
2022 WL 43829 (D. Utah 2022) ..................................................................6, 7

*KB Permanent v. Lasting Impression*,
    408 F.3d 596 (9th Cir. 2005) ...................................................................8

*KM Mentor v. Knowledge Mgmt. Prof'l*,
    712 F. Supp. 2d 1222 (D. Kan. 2010) .....................................................2

*Kodiak Cakes v. JRM Nutrasciences*,
    2022 WL 17340660 (D. Utah Nov. 30, 2022) ........................................6

*Lucky's Detroit v. Double L*,
    Fed. Appx. 553, 557 (6th Cir. 2013) .......................................................9

*Mr. Elec. Corp. v. Khalil*,
    2007 WL 628190 (D. Kan. 2007) ...........................................................1

*Nichino Am., v. Valent*,
    44 F.4th 180 (3d Cir. 2022) ....................................................................4

*Nordstrom, Inc. v. 7525419 Canada*,
    2012 WL 12507605 (W.D. Wash. 2012) .................................................9

*Overstock.com, Inc. v. Nomorerack.com, Inc.*,
    2014 WL 2946646, at *5 (D. Utah 2014) ................................................6

*Powerfood, Inc. v. Sports Science Inst.*,
    1993 WL 13681782 (N.D. Cal. 1993) .....................................................9

*Purple Innov. v. Foshan Dirani Design Furniture*,
    2024 WL 1347356 (D. Utah 2024) ......................................................2, 3

*Sonic Indus. v. Olympia Cascade*,
    2022 WL 3654748 (W.D. Okla. 2022) ....................................................4

*Theorem, Inc. v. Citrusbyte*,
    2021 WL 5750238 (C.D. Cal. Nov. 16, 2021) .........................................2

*Ty, Inc. v. Jones Group, Inc.*,
    98 F. Supp. 2d 988 (N.D. Ill. 2000) ........................................................2

*Vital Pharms. v. PHD Mktg.*,
    2020 WL 6545995 (C.D. Cal. 2020) .......................................................9

*Water Pik, Inc. v. Med-Systems, Inc.*,
    726 F.3d 1136 (10th Cir. 2013) ...............................................................5

*Yellow Cab Co. v. Yellow Cab of Elk Grove, Inc.*,
    419 F.3d 925 (9th Cir. 2005) ..................................................................................2

**Other Authorities**

*McCarthy on Trademarks*, § 18:15 ............................................................................8

*McCarthy on Trademarks* § 11:10 .............................................................................3

Mavorco's Opposition boils down to two things: (1) nine pages of "factual" background designed to distract from the actual issues before the Court and wrongly portray Blendtec, the victim in this trademark infringement suit, as the bad actor; and (2) an attack on the strength of Blendtec's decades' old incontestable trademarks via printouts of third-party USPTO registrations. Blendtec submitted concrete evidence showing actual consumer confusion, similarity of the marks, a relation of the parties' goods in the minds of consumers, that consumers do not exercise a high degree of care, and that Blendjet, and now Mavorco, adopted the infringing marks with the intent to benefit from the goodwill of the Blendtec Marks. Mavorco provided only legal argument, and no rebuttal evidence on these likelihood of confusion factors. Thus, these factors stand unrebutted. The only evidence Mavorco presented purportedly relating to the strength of the mark factor (*i.e.* third-party USPTO registrations) is insufficient to show Blendtec's mark is commercially weak. Mavorco failed to rebut the presumption of irreparable harm, and the PI Motion should be granted.

## I.      **Legal Standard**

A "preliminary injunction is prohibitory, not mandatory" where "it prohibits defendants from violating trademark and unfair competition law." *Mr. Elec. Corp. v. Khalil*, 2007 WL 628190, at *2 (D. Kan. 2007). Further, a preliminary injunction will not grant all the relief sought as Blendtec seeks damages and other remedies. Dkt 2 (Compl.) at ¶¶3-6. Where "[d]amages are still at issue," the relief sought is not a disfavored injunction. *Mr. Elec.*, 2007 WL 628190, at *2.

Here, Mavorco produced no rebuttal evidence, and only asserted argument, with respect to the following factors: (1) similarity of marks, (2) intent of the infringer, (3) evidence of actual confusion, (4) similarity of products and marketing, and (5) degree of care. Mavorco submitted evidence only with respect to the final factor, the strength of the mark, and it consisted solely of

third-party USPTO registrations. Such evidence is insufficient as a matter of law. Thus, Mavorco has not rebutted the presumption of irreparable harm. *See Theorem, Inc. v. Citrusbyte*, 2021 WL 5750238, at *8 (C.D. Cal. Nov. 16, 2021) ("infringer's burden of production to rebut the presumption is a heavy one [because] monetary compensation for trademark infringement is . . . inherently inadequate and injury is fundamentally irreparable.").

## II.    The Blendtec Marks are Not Generic or Functional

Blendtec's registrations enjoy a presumption of validity and Mavorco bears the burden of proving the marks are generic or functional. *See, e.g., Yellow Cab Co. v. Yellow Cab of Elk Grove, Inc.*, 419 F.3d 925, 926 (9th Cir. 2005) ("When a plaintiff pursues a trademark action involving a properly registered mark, that mark is presumed valid, and the burden of proving that the mark is generic rests upon the defendant."); *Purple Innov. v. Foshan Dirani Design Furniture*, 2024 WL 1347356, at *6 (D. Utah 2024) (defendant bears burden to show registered mark is "functional").

"To rebut the presumption that a mark is not generic," Mavorco "must offer sufficient proof that the primary significance of the mark is its indication of the nature or class of the product or service, rather than an indication of source," and "the evidence must demonstrate the generic understanding of the mark from the viewpoint of the relevant public." *KM Mentor v. Knowledge Mgmt. Prof'l*, 712 F. Supp. 2d 1222, 1243 (D. Kan. 2010).[1] Mavorco argues only that because "Blendtec" is a compound of "blend" and "tec," which have dictionary definitions, the trademark is generic. *Id.*[2] That is not the law. "The validity of a mark must be determined by looking at the

---

[1] "[A] generic mark refers to a general class of goods." *Beer Nuts v. Clover Club Foods Co.*, 711 F.2d 934, 939 (10th Cir. 1983). Here, consumers refer to the general class of goods as "blenders."
[2] "Dictionary definitions cannot be conclusive of genericness." *Ty, Inc. v. Jones Group, Inc*., 98 F. Supp. 2d 988, 994 (N.D. Ill. 2000). *See also Filipino Yellow Pages, Inc. v. Asian Journal Publs., Inc.*, 198 F.3d 1143, 1148 (9th Cir. 1999) (dictionary definitions "are not determinative").

mark as a whole. A composite mark should not be fragmented into its various pieces." *McCarthy on Trademarks* § 11:10. *See also Filipino,* 198 F.3d at 1149 (cases take an "integrative approach to evaluating composite terms, rejecting the breaking down of such terms into their individual (and often generic) parts"). If a compound mark comprised of two dictionary words is generic then Best Buy, Home Depot, PetSmart, KeyBank, and Boot Barn are not protectable. Clearly, that is not so.

Even if improperly dissected, the definition of "blend" does not include "blender" (**Exh. 1**). In any event, "[a] generic word, such as 'cola' may be part of a valid trademark, *e.g.*, Coca-Cola." *Beer Nuts,* 711 F.2d at 939. "Although the holder of such a valid trademark may not prevent another from incorporating the *generic* term into a trademark, *e.g.*, Pepsi-Cola, he can prevent its use in a trademark which is so similar to his own that the whole name is likely to be confused with his trademark, *e.g.*, Koka-Cola." *Id*. at (finding "Beer Nuts" not generic).

Mavorco misleadingly cites to *Braun Inc. v. Dynamics Corp. of Am.*, 975 F.2d 815 (Fed. Cir. 1992), to argue that a compound mark with "blend" is generic for blenders. Opp. at 14. But *Braun* found the opposite. *Braun* found that pictures of fruits and vegetables (*i.e.*, "food props") on a blender package is generic because it illustrates "the functional qualities of the blenders." *Id*. at 827 n.25 By contrast, the court held that the use of the mark "Blendor" on the package dispelled any confusion caused by the generic use of food props. *Id*. at 827-828. Thus, *Braun* stands for the proposition that "blend" used in combination with another term on blenders is <u>not</u> generic.

Mavorco also fails to show Blendtec's swirl design is functional. The swirl is not "essential to the use or purpose" of the blender, nor does "it affect[] [its] cost or quality." *Purple*, 2024 WL 1347356, at *6. Mavorco presents no evidence that exclusive use of the swirl would "put competitors at a significant non-reputation-related disadvantage." *Id*. Mavorco uses its Swirl, as a

trademark, adjacent to the Blendjet mark on its product, packaging, product displays, website, social media advertisements, and Google search advertisements. And that use is strikingly identical to Blendtec's commercial use of its marks. Mavorco's functionality argument is unpersuasive.

## III.    Mavorco Failed to Rebut the Likelihood of Confusion Factors

The Trademark Modernization Act's rebuttable presumption "requires courts considering a trademark injunction to assess the plaintiff's evidence only as it relates to a likelihood of success on the merits" (*i.e.*, likelihood of confusion). *Nichino Am., v. Valent,* 44 F.4th 180, 185 (3d Cir. 2022). "If the plaintiff's evidence does establish likely trademark infringement, . . . the burden of production shifts to the defendant to introduce evidence sufficient for a reasonable factfinder to conclude that the consumer confusion is unlikely to cause irreparable harm." *Id*. at 186. "The focus trains on the defendant's evidence, and whether it is sufficient to rebut the TMA's presumption." *Id*. The court must conduct a "meaningful consideration of the facts . . . aimed at determining whether the defendant's offering allows a reasonable conclusion that the consumer confusion shown by the plaintiff will not cause irreparable harm." Thus, once plaintiff shows a likelihood of confusion, the court "turn[s] its attention to [defendant's] rebuttal evidence." *Id*. Here, Mavorco failed to submit <u>any</u> rebuttal evidence sufficient to rebut Blendtec's showing of likelihood of confusion. Thus, "the TMA requires [a finding] of irreparable harm." *Sonic Indus. v. Olympia Cascade*, 2022 WL 3654748, at *5 (W.D. Okla. 2022).

### A.    Mavorco Failed to Rebut the Evidence of Consumer Confusion

Mavorco presents no evidence to rebut Blendtec's confusion evidence. Mavorco presents only legal argument, *i.e.*, that the evidence is "de minimus." Opp. at 21. "However, given the proper factual setting, even just a few instances of actual confusion can provide very persuasive of

how and why confusion can occur." *Heartland Animal v. Heartland SPCA*, 861 F. Supp. 2d 1293, 1305 (D. Kan. 2012), *aff'd*, 503 Fed. App. 616 (10th Cir. 2012). The unrebutted evidence here proves Blendtec received hundreds (even thousands) of complaints about defective and melting Blendjet blenders from consumers who mistakenly attributed the faulty blenders to Blendtec. The calls are so frequent that Blendtec's customer service team implemented a specific process just to handle them. 2d Buchanan Decl. at ¶8; Dkts 26-13 through 26-72. This evidence revealed angry and scared customers calling Blendtec to complain about Blendjet's defective and recalled blenders. The law views such evidence as a powerful indication of confusion to support finding trademark infringement, which cannot be cavalierly dismissed as *de minimus*. *See Heartland*, 861 F. Supp. 2d at 1306 ("Immediately upon the defendants' adoption of the 'heartland' mark, the plaintiff has been deluged with callers who have confused the plaintiff for the defendants. … Frequently, callers are angry, upset with the plaintiff for the quality of services actually supplied by the defendants.") (granting preliminary injunction); *Focus Prods. v. Kartri Sales*, 647 F. Supp. 3d 145, 223 (S.D.N.Y. Dec. 22, 2022) (evidence showing consumers "realize their confusion only *after* they had purchased and used the Ezy Hang product and called Focus powerfully establishes" confusion); *Hydrojug v. Five Below*, 625 F. Supp. 3d 684, 706 (N.D. Ohio 2022) ("Especially troubling" is confusion evidence where "consumers complain to [plaintiff] about the quality and reliability of their brand/or product.").[3]

---

[3] None of the cases Mavorco cites involved purchasing decision confusion. *See Golo,* 2020 WL 5203601, at *9, n.12 (D. Del. 2020) (the examples of confusion "do not involve any evidence of consumers buying gummies thinking they were Golo's product); *EMSL Analytical*, 2006 WL 892718, at *12 (D.N.J. 2006) ("EMSL admitted that no mistaken purchasing decisions were ever made as a result of any alleged confusion between the marks."); *Water Pik*, 726 F.3d at 1151 ("four instances" of confusion with "minimal probative value" on whether consumers are "actually

Blendtec's *unrebutted* evidence is more than sufficient to show actual confusion. *Id.* at 707 ("more than a dozen examples" sufficient where they show "at least some consumers (wrongly) concluded that Defendants' lower-quality, cheaper Aquajugs were attributable to Hydrojug.").[4]

Mavorco's superficial critique of the Franklyn survey is also insufficient: the survey of the parties' online and in-store products reasonably replicated the real-world market; it utilized a widely accepted format with product line-ups; the universe was proper--purchasers of blenders are potential Blendjet customers; Blendtec sells a variety of blender styles and sizes, and the survey appropriately tested whether consumers would mistakenly believe the Blendjet product was Blendtec's smaller blender, regardless of price. *See* Franklyn Supp. at p. 4-7. Further, the control properly sought to remove the infringing elements, including the word "blend."[5] *Id*. at p. 8.

### B.    Mavorco Failed to Rebut the Evidence Showing Similarity of the Marks

Blendtec submitted evidence showing consumers view the marks as similar. *See, e.g.,* PI Motion at 11. Mavorco presents only argument and no evidence to rebut this. Opp. at 18-19.

### C.    Mavorco Failed to Rebut the Evidence Showing the Blenders are Related

"The issue is not whether the goods and services can be distinguished from each other in some aspect, but instead whether consumers would believe that one entity produced both." *Instructure v. Canvas Techs*., 2022 WL 43829, at *12 (D. Utah 2022). The evidence shows

---

confused"); *Overstock.com,* 2014 WL 2946646, at *5 (D. Utah 2014) ("consumers clearly recognized the distinction"). Further, the cases Mavorco cites all involved dissimilar marks.

[4] Mavorco claims the confusion evidence shows "consumers recognize Blendjet and Blendtec as distinct." Opp. at 22. But the only examples Mavorco cites are <u>not</u> among Blendtec's confusion evidence. Those two instances show the similarity of the marks. PI Motion at 11 (Blendjet "logo looks similar to yours"), *id*. ("looks like [Blendjet] is ripping off on your name and trademark").

[5] *See, e.g., Kodiak Cakes v. JRM Nutrasciences*, 2022 WL 17340660 (D. Utah Nov. 30, 2022) (Franklyn "applied reliable surveying methods" and denying the motion to exclude).

consumers believe the Blendjet blender is a small blender put out by Blendtec. Dkt. No. 26-9 ("I was excited to see you guys have a new small portable product"); 26-36 ("I saw an ad for your . . . new smaller little blender"); 26-46 ("you had a recall on your handheld blender"); 26-53 ("I have one of your little blenders"); 26-54 ("I always thought [Blendjet] was part of Blendtec"); 26-58 (calling about "the little Blendtec"); 26-63 (calling about the "portable Blendtec"); 26-68 (calling about the "recall on my Blendtec"); 26-70 ("you guys had a recall on the little, small Blendtec blenders, the little mini ones").

Mavorco argues only that the parties' blenders are not related because they differ in pricing. Opp. at 19. "But whether it is reasonable for consumers to confuse an association between [the products] given the price differences between the two products is beside the point." *Hermès Int'l v. Rothschild*, 678 F. Supp. 3d 475, 489 (S.D.N.Y. 2023). "[W]hat matters is that consumers *did* mistake an association—a position that [Blendtec] supports with concrete evidence in the record." *Id*.

### D.    Mavorco Failed to Show Its Consumers Exercise a High Degree of Care

Mavorco argues that there is a price difference such that "no reasonable consumer would confuse a battery-powered portable $50 blender for a high-end $400+ professional grade fixed appliance." Opp. at 20. This skirts the issue. *See Instructure*, 2022 WL 43829, at *12 (*supra*). Regardless of price, consumers have been misled to believe that Blendjet was Blendtec's smaller blender. Dkt. 26-13 through 26-72. Mavorco cannot prevail by ignoring the evidence.

### E.    Mavorco Failed to Rebut the Showing of Intent

Mavorco claims there is "no evidence that Blendjet-or Mavorco-adopted the name to trade off Blendtec's goodwill and confuse consumers." Opp. at 20. However, Blendjet undisputedly

knew about Blendtec's very well-known marks before it chose to adopt a confusingly similar swirl and mark. Given the overwhelming actual confusion, intent to trade off Blendtec's goodwill is reasonably inferred.

Mavorco likewise made a conscious choice to acquire the Blendjet Marks and use them in commerce subject to and with full knowledge of Blendtec's marks and its infringement claims against Blendjet. As the assignee of the Blendjet Marks, Mavorco "steps into the shoes" of Blendjet with respect to the marks. *Dodart v. Young Again Prods*., 2006 U.S. Dist. LEXIS 72122, at *46 (D. Utah 2006). *See also, 3 McCarthy on Trademarks*, § 18:15 (trademark "assignee, by following in the footsteps of the assignor, acquires not only all the favorable rights and priorities of the assignor, but also any burdens and limitations on use").

### F.    USPTO Registrations Do Not Show Blendtec's Marks are Weak

Mavorco argues 'Blendtec' is conceptually weak because it is "[a]t most . . . descriptive." Opp. at 16. But an incontestable mark may not be challenged as descriptive. *See KB Permanent v. Lasting Impression*, 408 F.3d 596, 606 (9th Cir. 2005) ("a defendant in a trademark infringement action cannot assert that an incontestable mark is invalid because it is descriptive").

With respect to commercial strength, Mavorco wrongly claims that "Blendtec has failed to put forward any evidence that consumers recognize its branding." Opp. at 18. Blendtec submitted compelling evidence of commercial strength. *See* Dkt 26 (Buchanan Decl.) at ¶¶5-11. *See also* 2d Buchanan Decl., ¶17.

Mavorco ignores Blendtec's huge commercial success and footprint, and instead argues that Blendtec's marks are commercially weak because of "extensive third-party <u>use</u> of the word 'blend' in connection with blending products." Opp. at 17 (emphasis added). But Mavorco has not

shown any <u>use</u> by third parties. Instead, Blendjet has submitted USPTO registrations for trademarks that include the word 'blend' and separate registrations for what Mavorco describes as swirl design marks. But Mavorco "bears the burden of producing evidence of <u>actual</u> widespread <u>usage</u> . . . in the relevant market that is more substantial than a mere printout of trademark registrations and applications." *Powerfood, Inc. v. Sports Science Inst*., 1993 WL 13681782, at *15 (N.D. Cal. 1993) (emphasis added). "[T]he mere existence of third-party registrations does not establish a crowded field without evidence that the marks were actually used in commerce and viewed by consumers" *Vital Pharms. v. PHD Mktg*., 2020 WL 6545995, at *4 (C.D. Cal. 2020).[6] "Without more detail about each and every one of these alleged third-party uses, it is impossible for the Court to determine whether their use truly undermines the commercial strength" of the mark. *Hydrojug,* 625 F. Supp. 3d at 702. There is simply no blender field crowded with "blend" marks used in connection with a swirl design. *See* 2d Buchanan Decl. at ¶¶4-16.

Even assuming a "crowded field" (which has not been shown), this does not deprive the Blendtec Marks of protection or give others a blank check to mimic them. *See, e.g*., *Nordstrom, Inc. v. 7525419 Canada,* 2012 WL 12507605, at *7 (W.D. Wash. 2012) ("conclusion that the field of 'RACK' marks is crowded does not, of course, deprive such marks of protection or grant competitors carte blanche to utilize names that mimic preexisting marks"). In any event, a crowded field "may be overcome by a showing of commercial strength." *Vital Pharms*., 2020 WL 6545995, at *4. *Hansen Bev. v. Cytosport,* 2009 WL 5104260, at *9 (C.D. Cal. 2009) (Although "field is

---

[6] *See also Lucky's Detroit v. Double L,* Fed. Appx. 553, 557 (6th Cir. 2013) ("merely showing the existence of marks in the records of the [USPTO] will not materially affect the distinctiveness of another's mark. . . ., a defendant must show what actually happens in the marketplace"); *Charles Schwab & Co. v. Hibernia Bank*, 665 F. Supp. 800, 806 & n.7 (N.D. Cal. 1987) ("citing the registrations and telephone listings of third party users . . . is not proof of . . . a crowded field").

crowded with other marks including the term 'monster' . . . , Plaintiff's high commercial success of its energy drink and large stake in the market . . . warrant[] significant protection.").

## IV.    Absent Injunctive Relief, Blendtec Will be Irreparably Harmed

A significant change of circumstances exists here. On February 7, 2025, Blendtec learned the identity of Mavorco, a new and well-funded entity formed for the sole purpose of acquiring the Blendjet Marks and continuing the operations of Blendjet. Blendjet, now just an assetless shell, claims it has no power to stop or remedy the infringement. Mavorco took over the infringement without skipping a beat. *See* **Exh. 2**. Just 48 days after learning Mavorco would continue operating Blendjet in disguise, Blendtec filed its PI Motion.[7] Blendjet has defaulted. Mavorco is a new actor that has just begun infringing Blendtec's trademarks. Given this change in circumstances, the short delay between the time Blendtec discovered Mavorco's identity and the time it filed its PI Motion does not defeat irreparable harm. Confusion evidence of the type here "powerfully establishes that this confusion inflicted commercial injury," and "bespeaks likely harm to goodwill and reputation." *Focus*, 647 F. Supp. 3d at 223.

DATED this 9th day of May, 2025.

DORSEY & WHITNEY LLP

/s/ *Tamara L. Kapaloski*
Brett Foster (#6089)
Mark Miller (#9563)
Tamara L. Kapaloski (#13471)
*Attorneys for Plaintiff Blendtec Inc.*

---

[7] In exchange for an extension of time to answer while the parties pursued settlement negotiations, Mavorco agreed that it "will not raise the 30-day extension as a basis for denying the injunction motion." **Exh. 3**. Despite this, Mavorco now argues that "after initiating the second lawsuit, Blendtec waited an additional six weeks to move for a preliminary injunction." Opp. at 7.

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on the 9th day of May, 2025, I electronically filed the foregoing with the Clerk of Court using the Court's CM/ECF system, which will send electronic notification to counsel of record.

*/s/ Tamara L. Kapaloski*