**EXHIBIT 1**

# DAVID FRANKLYN SUPPLEMENTAL EXPERT REPORT IN THE MATTER OF *BLENDTEC, INC. V. BLENDJET INC., ET AL.*

PREPARED BY:
David Franklyn
5602 E Via Buena Vista
Paradise Valley, AZ 85253

May 9, 2025

# I.  TABLE OF CONTENTS

I. TABLE OF CONTENTS....................................................................................................................2
I. ASSIGNMENT AND BACKGROUND..........................................................................................3
II. STUDY AUTHORSHIP AND QUALIFICATIONS......................................................................3
II. SUMMARY OF MAVORCO'S CRITICISMS OF THE FRANKLYN SURVEY........................4
III. SUMMARY OF FRANKLYN RESPONSE TO MOVORCO'S CRITICISMS..........................5
IV. RESPONSE TO MARVORCO'S CRITICISMS............................................................................6
   1. The Franklyn Survey stimuli reflect the products as they appear in the marketplace............6
      a. The Franklyn Survey stimuli images of the unpackaged products isolated against a white background reflect the products as they appear in the marketplace............................6
      b. The one-room Squirt-style lineup appropriately reflected marketplace conditions and MavorCo's citation to WaterPik is inapposite............................................................................7
   2. The Franklyn Survey universe comprised relevant consumers of blenders............................9
   3. The Franklyn Survey control mark was properly selected.........................................................10
V. CONCLUSION....................................................................................................................................11

2

## I. ASSIGNMENT AND BACKGROUND

I have been retained by counsel for Plaintiff Blendtec Inc. ("Blendtec") to design and conduct a survey to assess the level of confusion, if any, that exists between the Blendtec and Blendjet brands in the context of blender products. I conducted a survey regarding the likelihood of confusion (the "Franklyn Survey") and submitted my opinions in an expert report and declaration dated March 24, 2025. I understand my expert report was filed in connection with Blendtec's Motion for Preliminary Injunction. I have further been requested to provide this supplemental report to address the criticisms of my survey presented in Defendant MavorCo's Brief in Opposition to Plaintiff's Motion for Preliminary Injunction , which I have provided below.

## II. STUDY AUTHORSHIP AND QUALIFICATIONS

I am currently a law professor at Arizona State University, with an appointment in the Sandra Day O'Connor College of Law. I also serve as the Executive Director of the McCarthy Institute at ASU Law, which is focused on scholarship and research in intellectual property law, with particular emphasis in the areas of trademark law, branding and consumer perceptions related to brands. I have published extensively on issues relating to intellectual property law and am editor-in-chief and co-author of McCarthy's Desk Encyclopedia of Intellectual Property Law.

Formerly, between 2018 and 2021, I held a joint appointment in both the law school and Ageno School of Business at Golden Gate University in San Francisco. Between 2000 and 2018, I was a law professor and Executive Director of the McCarthy

3

Institute for Intellectual Property and Technology Law at the University of San Francisco and Director of the Center for the Empirical Study of Trademark Law (CEST).

I have consulted and/or qualified as an expert witness on behalf of clients in numerous cases involving consumer perception and behavior issues, including in matters in the United States (federal and state courts), Asia, the European Union, the Middle East, and South America. I have personally designed and executed numerous consumer perception surveys that have been accepted into evidence by state and federal courts.

In addition to my survey research experience, I hold a J.D. from University of Michigan Law School. Additional biographical material, including lists of testimony and publications, is provided in Appendix A.

For my engagement in this matter, I am being compensated at my standard rate. My compensation is not dependent upon the outcome of this proceeding.

## II. SUMMARY OF MAVORCO'S CRITICISMS OF THE FRANKLYN SURVEY

1. MavorCo claims that presenting images of the blenders isolated against white backgrounds is not how consumers encounter them in the marketplace.[1] MavorCo also asserts that the images did not present the marks at issue as they appear on the product packaging.[2]

---

[1] *See* MavorCo's Brief in Opposition to Plaintiff's Motion for a Preliminary Injunction ('MavorCo Brief"), filed April 25, 2025, at p. 23.
[2] *See Id*.

4

2. MavorCo claims that the Franklyn Survey's Squirt-style presentation of the products side-by-side "is not the proper method of determining likelihood of confusion."[3]

3. MavorCo argues that, because Blendjet and Blendtec are sold at different price points, the Franklyn Survey improperly did not screen for consumers based on the price point of the blender they would consider purchasing.[4]

4. MavorCo claims that the Franklyn Survey's selection of a control mark "POMO" was improper for not incorporating the word "blend."[5]

## III.   SUMMARY OF FRANKLYN RESPONSE TO MOVORCO'S CRITICISMS

1. The Franklyn Survey stimuli images of the products isolated against a white background reflect the products as they appear in the marketplace.

2. The one-room *Squirt*-style lineup appropriately reflected marketplace conditions and MavorCo's citation to *WaterPik* is inapposite.

3. The Franklyn universe comprised relevant consumers of blenders. Blendtec and Blendjet both sell within the market for blenders. Blendtec contends that consumers bought or may buy the Blendjet blender on the mistaken belief that it was Blendtec's smaller blender.

4. The Franklyn survey control was properly selected. "Blend" was excluded from the control as it was a potentially infringing element of the mark.

---

[3] *See Id*. at 23-24.
[4] *See* MavorCo Brief at 24-25.
[5] *See* MavorCo Brief at 25.

5

## IV.     RESPONSE TO MARVORCO'S CRITICISMS

In the MavorCo Brief, MavorCo argues several points as to why the Franklyn Survey does not reflect consumer confusion. None of these points are persuasive.

**1. The Franklyn Survey stimuli reflect the products as they appear in the marketplace.**

MavorCo presents three points to support its claim that the Franklyn Survey did not reflect products as shown in the marketplace. First, MavorCo claims that presenting images of the blenders isolated against white backgrounds is not how consumers encounter them in the marketplace.[6] Second, MavorCo asserts that the images did not present the marks at issue as they appear on the product packaging.[7] Third, MavorCo claims that the Franklyn Survey's Squirt-style presentation of the products side-by-side "is not the proper method of determining likelihood of confusion."[8] None of these arguments are based on an accurate understanding of accepted survey methodologies, nor are they pertinent to the Franklyn Survey.

*a. The Franklyn Survey stimuli images of the unpackaged products isolated against a white background reflect the products as they appear in the marketplace.*

The parties' blender products often appear in retail stores on display—out of the packaging—as they are shown in the Franklyn Survey. Thus, the images isolating the products against a white background do reflect how consumers can encounter the products–unpackaged–in the marketplace. Additionally, online searches for blenders yield images of the products isolated against white backgrounds to clearly depict how the product looks outside of the packaging. Consumers searching to purchase blenders

---

[6] *See* MavorCo's Brief at p. 23.
[7] *See Id.*
[8] *See Id.* at 23-24.

6

online are also likely to encounter images of the products as they are depicted in the Franklyn Survey.

Furthermore, the Franklyn Survey does not present the marks differently from the way they appear on the packaging. The parties' marks at issue – the swirl logos adjacent to the word marks – are the same as those on the packaging. These marks are duplicated on the packaging, and in fact appear prominently in *two* locations on the packaging. Thus, the packaging emphasizes the trademark effectively twice as much as the product images in the Franklyn Survey. MavorCo cannot claim with certainty that showing respondents the packaging would have reduced their confusion, nor has it put forth any opposing survey evidence to demonstrate such an assertion.[9]

Furthermore, in *Kodiak Cakes*, I submitted survey evidence gathered from respondents who viewed both online website stimuli and "in-store" images of the unpackaged products isolated against white backgrounds as here.[10] The Court approved of this methodology.[11]

   b. *The one-room Squirt-style lineup appropriately reflected marketplace conditions and MavorCo's citation to WaterPik is inapposite.*

MavorCo puts forth *WaterPik, Inc. v. Med-Sys, Inc.*, as basis for claiming that the Franklyn Survey's *Squirt*-style display of products did not reflect marketplace conditions.[12] However, MaverCo misapplies *WaterPik* to the Franklyn Survey.

---

[9] MavorCo does claim that where respondents in the Franklyn Survey saw pricing information in the website image stimuli, the net confusion rate was 14%, which they argue is substantially less than the 26.9% found with the "isolation" stimuli. MavorCo cannot attribute this difference in confusion solely to packaging, or pricing, as there were other differences between the two sets of stimuli. Additionally, 14% net confusion can still demonstrate actionable likelihood of confusion.
[10] *Kodiak Cakes v. JRM Nutrasciences*, 2022 WL 17340660 at * 3 (D. Utah Nov. 30, 2022).
[11] *Id*. at *15-16.
[12] *See* MavorCo Brief at 23-24.

7

In *WaterPik*, the court criticized a confusion survey using side-by-side comparison on different bases.[13] First, the court criticized the survey for removing the *WaterPik* mark from one of the products being measured, thus exaggerating the similarities between the two marks ("Sinusense" and "SinuCleanse").[14] Second, the court criticized the survey for presenting the products side-by-side without evidence that the two products at issue were sold side-by-side in stores; rather, the evidence showed that they were scattered among other sinus remedies.[15] Third, the court viewed the survey questions as improperly leading by posing its confusion questions to side-by-side lineups of only three products, thus suggesting respondents find confusion rather than eliciting responses as they might occur spontaneously in the marketplace.[16] MavorCo misapplies *WaterPik* to the Franklyn Survey.

Here, none of *WaterPik*'s criticisms apply to the Franklyn Survey, because the surveys do not resemble each other on these critical points. The court's first criticism does not apply because no other contextual brand information was artificially removed from the stimuli, other than the allegedly infringing elements which were necessarily removed from the control stimuli.[17] The court's second criticism does not apply because there is evidence of marketplace proximity[18] justifying a Squirt-style survey,[19] which presented six stimuli products in randomly ordered arrays instead of juxtaposing Plaintiff's and Defendant's products "side-by-side."  Finally, the court's third criticism does not apply because the Franklyn Survey did not suggest a relationship between Blendtec and Blendjet products by limiting the option to select other products; each lineup presented included four "buffer" stimuli for a total of six products.

---

[13] *See* Water Pik, Inc. v. Med-Sys., Inc., 726 F.3d 1136, 1147-1148 (10th Cir. 2013).
[14] *See Id*. at 1147.
[15] *See Id*.
[16] *See Id*. at 1148.
[17] Shari Seidman Diamond, *Control Foundations: Rationales and Approaches*, in Trademark and Deceptive Advertising Surveys, 248-250 (Shari S. Diamond & Jerre B. Swann eds. 2nd ed. 2022).
[18] *See* Appendix F to Expert Report of David Franklyn.
[19] Jerre B. Swann, *Likelihood-of-Confusion Surveys*, in Trademark and Deceptive Advertising Surveys, 71 (Shari S. Diamond & Jerre B. Swann eds. 2nd ed. 2022).

8

Thus, the Franklyn Survey reflected the reality of the marketplace–both generally, and as relevant here where *WaterPik* did not. MavorCo's criticisms based on *WaterPik* are simply inapposite. Additionally, it is my understanding based on prior court determination that a Squirt-style format survey including product line-ups is among survey formats widely accepted by the District of Utah.[20]

### 2. The Franklyn Survey universe comprised relevant consumers of blenders.

MavorCo argues that, because Blendjet and Blendtec are sold at different price points, the Franklyn Survey improperly did not screen for consumers based on the price point of the blender they would consider purchasing.[21]

The proper universe to survey is the potential buyers of the junior user's goods and services.[22] The Franklyn Survey screened for consumers that had purchased a blender within the past 12 months and/or intend to purchase a blender in the next 12 months. Furthermore, to eliminate the theoretical possibility that no portable blender consumers would take the survey, I ensured that roughly 70% of participants purchased or were likely to purchase portable blenders, constituting a supermajority of respondents most likely to have considered a Blendjet blender. Screening for price was unnecessary to target relevant consumers; thus the Franklyn Survey universe was proper.

Blendtec and Blendjet both sell within the market for blenders. Both parties sell blenders, and their blender products are sold in the same retail stores, both in-store and on-line. I am aware of Defendants' claim that there is a portable blender market niche, however I disagree with MavorCo's (and Blendjet's) characterization. However, the blender market is very broad, and consumers may review the entire market before

---

[20] *See Kodiak Cakes* at *15-16.
[21] *See* MavorCo Brief at 24-25.
[22] William G. Barber and Giulio E. Yaquinto, *The Universe*, in Trademark and Deceptive Advertising Surveys, 32-33 (Shari S. Diamond & Jerre B. Swann eds. 2nd ed. 2022).

9

making purchasing decisions. Some consumers may even consider owning multiple blenders designed for different occasions, especially when presented with the option in a proximate market context.

As to pricing, my understanding is that the Lanham Act addresses all forms of consumer confusion. Blendtec's theory of the case, as I understand it, is not that Blendjet's customers mistakenly bought a $50 blender instead of a $400 dollar blender. Rather, Blendtec contends that consumers bought or may buy the Blendjet blender on the mistaken belief that it was Blendtec's smaller blender. Blendtec sells different sizes and styles of blenders, and there is evidence of proximity in the marketplace of Blendtec and Blendjet.[23] This not only supports a conclusion that these products exist in the same market, but that there is a reasonable possibility that Blendjet could be mistaken as a smaller blender offered within the Blendtec brand. As previously noted, a 14% confusion rate was found among respondents who viewed the website stimuli with the price disclosed.[24]

### 3. The Franklyn Survey control mark was properly selected.

Finally, MavorCo claims that the Franklyn Survey's selection of a control mark "POMO" was improper for not incorporating the word "blend."[25] As I understand from counsel, Blendtec doesn't claim any right to a "blend" element of its mark alone, however neither does Blendtec disclaim the element. A proper control should seek to remove only the infringing elements at issue,[26] and including the word "blend" in the control might have been potentially infringing on the mark. Thus a control mark that did not incorporate "blend" was selected.

---

[23] *See* Appendix F to Expert Report of David Franklyn.
[24] *See supra* note 9, at 7.
[25] *See* MavorCo Brief at 25.
[26] Shari Seidman Diamond, *Control Foundations: Rationales and Approaches*, in Trademark and Deceptive Advertising Surveys, 248-250 (Shari S. Diamond & Jerre B. Swann eds. 2nd ed. 2022).

10

## V.  CONCLUSION

In summary, MavorCo's criticisms of the Franklyn Survey are baseless, mischaracterizing, and do not diminish the conclusions described in my report.

If called in this case to testify as an expert at the preliminary injunction hearing or trial, I expect to prepare exhibits to aid my testimony. I also reserve the right to supplement and/or amend my opinions if additional information or evidence is provided to me.

Respectfully submitted this 9th day of May, 2025

*[signature: David J. Franklyn]*

David J. Franklyn