Brett Foster (#6089)
Mark Miller (#9563)
Tamara Kapaloski (#13471)
**DORSEY & WHITNEY LLP**
111 S. Main Street, Suite 2100
Salt Lake City, UT 84111
Telephone: (801) 933-7360
Facsimile: (801) 933-7373
foster.brett@dorsey.com
miller.mark@dorsey.com
kapaloski.tammy@dorsey.com

*Attorneys for Plaintiff Blendtec Inc.*

### UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| **BLENDTEC INC.**, a Utah corporation,<br><br>Plaintiff,<br><br>vs.<br><br>**BLENDJET INC.**, a Delaware corporation, **MAVORCO HOLDINGS, LLC**, a Delaware corporation, **MAVORCO IP, LLC**, a Delaware corporation, and **MAVORCO OPERATIONS, LLC**, a Delaware corporation,<br><br>Defendants. | **BLENDTEC'S REPLY IN SUPPORT OF ITS MOTION TO STRIKE MAVORCO'S THIRTEENTH AFFIRMATAIVE DEFENSE**<br><br>Civil No. 2:25-cv-00096-RJS-DBP<br>Judge Robert J. Shelby<br>Magistrate Judge Dustin B. Pead |

Plaintiff Blendtec hereby submits its Reply in Support of its Motion to Strike Mavorco's Thirteenth Affirmative Defense, filed as Dkt. 51 (the "Motion"). Mavorco's Opposition to the Motion to Strike will be referred to herein as the "Opp." Mavorco's Opp. is Dkt. 60.

**TABLE OF CONTENTS**

INTRODUCTION ....................................................................................................................... 1

I.   An Affirmative Defense is Insufficient if it Cannot Succeed as a Matter of Law ............... 1

II.  The *Noerr-Pennington* Doctrine Bars Mavorco's Antitrust Affirmative Defense ............. 2

    A.   The Pattern Litigation Exception Does Not Apply Here ......................................... 4

    B.   The Sham Litigation Exception Does Not Apply Here ........................................... 5

        1)   Blendtec's Lawsuit Is Objectively Strong, Not Objectively Baseless ............ 5

        2)   Blendtec's Subjective Intent Does Not Show a Sham Litigation ................ 8

CONCLUSION ........................................................................................................................... 10

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*1-800Contacts v. Mem'l Eye, P.A.*,
   2010 WL 988524 (D. Utah Mar. 15, 2010) ...................................................................2, 3, 5

*California Motor Transport v. Trucking Unlimited*,
   404 U.S. 508 (1972) ................................................................................................................4

*Consumerinfo.com, Inc. v. Chang*,
   2009 WL 10673581 (C.D. Cal. 2009) ....................................................................................2

*Crocs, Inc. v. Effervescent, Inc.*,
   248 F. Supp. 3d 1040 (D. Colo. 2017) ..................................................................................5

*CSMN Invs. v. Cordillera Metro. Dist.*,
   956 F.3d 1276 (10th Cir. 2020) .............................................................................................4

*Deere & Co. v. MTD Holdings*,
   2004 WL 1794507 (S.D.N.Y. 2004) ..............................................................................2, 3, 6

*Dell, Inc. v. 3K Computers*, LLC,
   2008 WL 6600766 (S.D. Fla. Oct. 6, 2008) ......................................................................6, 7

*ERBE Elektromedizin GMBH v. Canady Tech.*,
   629 F.3d 1278 (Fed. Cir. 2010) .............................................................................................4

*In re Flonase Antitrust Litig.*,
   795 F. Supp. 2d 300 (E.D. Pa. 2011) ...................................................................................4

*Hanover 3201 Realty, v. Vill. Supermarkets*,
   806 F.3d 162 (3d Cir. 2015) ..................................................................................................4

*Mitek Surgical Prods. v. Arthrex, Inc.*,
   21 F. Supp. 2d 1309 (D. Utah 1998) ....................................................................................5

*Nordstrom, Inc. v. 7525419 Canada*,
   2012 WL 12507605 (W.D. Wash. 2012) .............................................................................8

*PODS Enters. v. ABF Freight Sys.*,
   2011 WL 4948397 (M.D. Fla. 2011) .................................................................................2, 8

*Polaris Indus. v. Arctic Cat*,
  2017 WL 1180426 (D. Minn. 2017) ...........................................................................................4

*Professional Real Estate Investors v. Columbia Pictures Indus., Inc.*,
  508 U.S. 49 (1993) ....................................................................................................................5

*Rolex Watch U.S.A. v. Zeotec Diamonds*,
  2002 WL 35656950 (C.D. Cal. 2002) .......................................................................................3

*Shenzhen Smoore Tech. v. Next Level Ventures*,
  2024 WL 5317246 (C.D. Cal. 2024) .........................................................................................4

*Tiscareno v. Frasier*,
  2012 WL 1377886 (D. Utah Apr. 19, 2012) .............................................................................2

*U.S. v. Patriot Ordnance Factory*,
  378 F. Supp. 3d 1099 (D. Utah 2019) .......................................................................................2

*Virgin Enter. Ltd v. Virginic, LLC*,
  2020 WL 1845232 (D. Wy. Apr. 10, 2020) .....................................................................1, 2, 5, 7

**Statutes**

15 U.S.C. § 1115(b)(7) ................................................................................................................2, 3, 6

**Other Authorities**

Rule 8 ..............................................................................................................................................1

Rule 12(f) .....................................................................................................................................1, 2

## INTRODUCTION

Mavorco attempts to save its affirmative defense by obfuscating the issue. Mavorco goes to great length to portray the issue as whether the Rule 8 notice standard or the *Iqbal/Twombly* plausibility standard applies to pleading affirmative defenses. This is a red herring. Under either pleading standard, an affirmative defense is subject to a motion to strike as insufficient if it cannot succeed as a matter of law. That is the case here, and Mavorco's attempt to cloud the issue through an academic debate regarding whether the Tenth Circuit has adopted *Iqbal/Twombly* for affirmative defenses is irrelevant. The remainder of Mavorco's Opposition pinpoints the reason the antitrust defense cannot survive a motion to strike. In an acknowledgement that its antitrust defense is based solely on Blendtec's litigation conduct, Mavorco devotes the rest of its Opposition to argue that this case fits within a sham exception to *Noerr-Pennington*. But Blendtec brought good faith–indeed, objectively strong–claims to protect its long-established trademark rights, and no exception takes this case outside the strong protection of *Noerr-Pennington*. Mavorco's defense is barred by *Noerr-Pennington* and should be stricken as insufficient.

## I. An Affirmative Defense is Insufficient if it Cannot Succeed as a Matter of Law

Mavorco argues that it has met the "pleading standard for affirmative defenses." Opp. at 1-6.[1] This dodges the issue. Blendtec moved "[p]ursuant to Rule 12(f) . . . to strike [Mavorco's]

---

[1] Mavorco argues that Blendtec "misrepresents" and "disregard[s]" the relevant legal standard by claiming that a "higher standard" applies than notice pleading. Opp. at 1-2. But Blendtec did not argue *Twombly/Iqbal* applied. Motion at 6. Mavorco's defense should be stricken under either pleading standard. In any event, contrary to what Mavorco claims, this Court has not spoken to the precise question here. Mavorco relies on *Tiscerano*, a child abuse case that did not involve an antitrust defense. But as a case squarely on point stated, "[c]ourts within the Tenth Circuit that decline to extend *Twombly* to affirmative defenses do not appear to address that question with respect to an antitrust defense." *Virgin Enter. Ltd v. Virginic, LLC*, 2020 WL 1845232, at *7 (D. Wy. Apr. 10, 2020). "In light of (a) the narrowness of the antitrust defense to trademark

1

thirteenth affirmative defense . . . [as] insufficient as a matter of law." Motion at 1 (emphasis added). Regardless of whether the fair notice or plausibility standard applies to pleading affirmative defenses, "[u]nder Rule 12(f), a defense may be stricken as insufficient if it cannot succeed, as a matter of law". *U.S. v. Patriot Ordnance Factory*, 378 F. Supp. 3d 1099, 1102 (D. Utah 2019) (striking defense as insufficient). *See also Tiscareno v. Frasier*, 2012 WL 1377886, at *16 (D. Utah Apr. 19, 2012) ("defense is considered insufficient if it cannot succeed, as a matter of law") (striking defenses as insufficient). "Federal courts have discretion in deciding whether to grant motions to strike." *Deere & Co. v. MTD Holdings*, 2004 WL 1794507, at *2 (S.D.N.Y. 2004). "[W]hen a defense is insufficient . . . it should be stricken to eliminate the delay and unnecessary expense from litigating the invalid claim." *Id*. (striking antitrust trademark misuse defense). The pleading standard is not relevant to the legal sufficiency of the defense.

**II.     The *Noerr-Pennington* Doctrine Bars Mavorco's Antitrust Affirmative Defense**

"Under the *Noerr-Pennington* doctrine, resort to legal protections is immune from antitrust liability unless it is a sham, *i.e*., objectively baseless." *Virgin*, 2020 WL 1845232, at *4. "The *Noerr-Pennington* doctrine applies to affirmative defenses." *PODS Enters. v. ABF Freight Sys*., 2011 WL 4948397, at 6 (M.D. Fla. 2011). "*Noerr-Pennington* protects the filing of a lawsuit from attack unless the suit was brought as a mere sham." *1-800Contacts v. Mem'l Eye, P.A.*, 2010 WL

---

infringement, (b) its high potential to embroil the parties in greatly broadened discovery, and (c) there being no logical reason to allow a party to avoid all plausibility requirements simply by denominating this as a defense instead of a counterclaim—the Court concludes the antitrust defense to trademark infringement must be plausible before it can proceed to discovery." *Id*. at *8. Although Blendtec did not move to strike for failure to meet the pleading standard, Mavorco is also wrong that because it "cites the statute under which it brings this affirmative defense, specifically 15 U.S.C. § 1115(b)(7)," it provides "clear and sufficient notice." Opp. at 4. "A reference to statutory provisions is insufficient notice." *Consumerinfo.com, Inc. v. Chang*, 2009 WL 10673581, *4 (C.D. Cal. 2009) (citing 15 U.S.C. § 1115(b)(7) insufficient).

988524, at *1 (D. Utah Mar. 15, 2010). Thus, "[i]f [Blendtec] is protected by the *Noerr-Pennington* Doctrine, the Court may dismiss all . . . defenses related to antitrust." *Id*. at *6 (striking antitrust affirmative defense because it is "protected by *Noerr-Pennington* immunity").[2] "The only way to overcome *Noerr-Pennington* is to show . . . the [litigation] activity . . . is a mere sham." *Rolex Watch U.S.A. v. Zeotec Diamonds*, 2002 WL 35656950, at *10 (C.D. Cal. 2002).

*Noerr-Pennington* applies here because Mavorco's antitrust defense is unequivocally based on Blendtec's litigation activity:

> **THIRTEENTH DEFENSE**
> Blendtec's claims are barred and/or limited because Blendtec is using its marks to violate the antitrust laws of the United States. See 15 U.S.C. § 1115(b)(7). In 2021, <u>Blendtec brought an almost identical lawsuit against Blendjet, *Blendtec Inc. v. Blendjet Inc.*, Case No. 2:21-cv-00668, in the United States District Court for the District of Utah</u>, in an attempt to extort an acquisition of Blendjet at a significantly undervalued price. <u>This current case</u> is a second attempt by Blendtec to use bad faith pressure tactics by <u>filing what is fundamentally an anticompetitive lawsuit</u> to force the acquisition of Mavorco's assets at a reduced rate, in violation of the antitrust laws of the United States.

ECF 44 (Answer) at 15 (emphasis added). In its Opp., Mavorco further clarifies that its defense is based on Blendtec's litigation conduct: "in full, Mavorco's affirmative defense shows that Blendtec has filed not one, but two nearly identical lawsuits, not to enforce its trademark rights in good faith, but instead to use the legal system as an anti-competitive tool". Opp. at 5. Mavorco

---

[2] Mavorco claims "[t]his Court has not yet specifically addressed the issue of a motion to strike an antitrust defense under the Lanham Act." Opp. at 3. But *1-800Contacts* squarely addressed this issue. Mavorco attempts to distinguish *1-800Contacts* and other squarely-on-point cases by arguing those cases involved trademark misuse defenses and Mavorco has asserted an antitrust defense. *See* Opp. at fn. 1-2. But Antitrust defenses fall into the broad category of trademark misuse defenses. *See, e.g., Intellectual Property Misuse (ABA) VI.B* (trademark misuse "defense takes one of two forms (1) an equitable unclean hands defense, or (2) alleged antitrust violations"). In any event, the cited cases involved antitrust defenses. *See 1-800Contacts*, 2010 WL 988524, at *2 (striking "affirmative defense . . . based on antitrust violations"); *Deere*, 2004 WL 1794507, at *3 (striking trademark misuse defense based on "antitrust violations").

3

does not deny *Noerr-Pennington* is squarely implicated. It argues, however, that Blendtec's lawsuit falls within exceptions to *Noerr*. *See id.*, 6-9. As a matter of law, however, it clearly does not.

### A. The Pattern Litigation Exception Does Not Apply Here

Mavorco claims a "pattern of filing bad faith lawsuits" brings this case under the *Noerr-Pennington* exception set forth in *California Motor Transport v. Trucking Unlimited*, 404 U.S. 508 (1972). Opp. at 6-7. *California Motor* applies, however, only where a party "is accused of bringing a whole series of legal proceedings" without regard to the merits. *Hanover 3201 Realty, v. Vill. Supermarkets*, 806 F.3d 162, 198 (3d Cir. 2015) (four legal challenges insufficient). Thus, "[i]n order to qualify as a 'pattern or practice' of successive filings, . . . the number of petitions must be voluminous." *In re Flonase Antitrust Litig.*, 795 F. Supp. 2d 300, 309-10, n.10 (E.D. Pa. 2011) (five petitions not a pattern). Blendtec's filing of two lawsuits is not a "pattern". *See Shenzhen Smoore Tech. v. Next Level Ventures,* 2024 WL 5317246, *9 (C.D. Cal. 2024) ("two lawsuits do not constitute a series or pattern"). *See also ERBE Elektromedizin GMBH v. Canady Tech.*, 629 F.3d 1278, 1291 (Fed. Cir. 2010) ("three lawsuits . . . do not implicate a test for a whole series of legal proceedings"); *Polaris Indus. v. Arctic Cat*, 2017 WL 1180426, at *7 (D. Minn. 2017) (same).

In any event, as Mavorco concedes, Blendtec filed virtually identical lawsuits against Blendjet and its successor-in-interest, Mavorco. Opp. at 5. Blendtec filed the 2025 Action only after Blendjet transferred its assets to Mavorco and ceased operating on its own behalf. As the Court in the 2021 Action recognized, "[t]he 2025 and 2021 Actions involve essentially the same claims against Blendjet." 2021 Action, Dkt. 213, at p. 3. Where petitioning activity is part of the "same case" it does not constitute "a series of lawsuits that were intended to abuse judicial processes." *CSMN Invs. v. Cordillera Metro. Dist.,* 956 F.3d 1276, 1288 (10th Cir. 2020)

4

(distinguishing *California Motor*). *See also Crocs, Inc. v. Effervescent, Inc.*, 248 F. Supp. 3d 1040, 1056 (D. Colo. 2017) (pattern does not defeat *Noerr-Pennington* where "series of lawsuits . . . all relate to the enforcement of the same patents"). Thus, even accepting Mavorco's cursory allegations in its defense as true, the pattern of litigation exception to *Noerr-Pennington* cannot apply and does not save Mavorco's defense.

**B.     The Sham Litigation Exception Does Not Apply Here**

Mavorco also argues that Blendtec brought an objectively baseless suit in bad faith. Opp. at 7-8. Although "sham litigation" constitutes an exception to *Noerr-Pennington*, a lawsuit is only a "sham" if it meets the following two-part test:

> First, the lawsuit must be objectively baseless in the sense that no reasonable litigant could realistically expect success on the merits. If an objective litigant could conclude that the suit is reasonably calculated to elicit favorable outcome, the suit is immunized under *Noerr*, . . . . Only if challenged litigation is objectively meritless may a court examine the litigant's subjective motivation. Under this second part of our definition of sham, the court should focus on whether the baseless lawsuit conceals an attempt to interfere directly with the business relationships of a competitor.

*Professional Real Estate Investors v. Columbia Pictures Indus., Inc.*, 508 U.S. 49, 60-61 (1993). Under this test, the Court reaches the second prong (*i.e.*, subjective intent) only if it determines the litigation is objectively baseless. *See 1-800Contacts*, 2010 WL 988524, at *2 ("If the litigation is not objectively baseless, it cannot be a 'sham' regardless of the subjective intent.").

**1)     Blendtec's Lawsuit Is Objectively Strong, Not Objectively Baseless**

"To ascertain baselessness, a court must consider whether the litigant had probable cause to initiate the legal action." *Virgin*, 2020 WL 1845232, at *5 (citing *1-800Contacts*). "Under a probable cause standard all that is required is that there be a reasonable belief that there is a <u>chance</u> that a claim may be held valid upon adjudication." *Mitek Surgical Prods. v. Arthrex, Inc.*, 21 F.

5

Supp. 2d 1309, 1318 (D. Utah 1998) (emphasis in original) (citing *Prof'l Real Estate)*. Blendtec's "efforts to protect [its] trademarks simply do not amount to antitrust violations or misuse." *Deere & Co.*, 2004 WL 1794507, at *3.

Based on the pleadings, Blendtec's trademark infringement claims are strong. In the 2021 Action, Blendjet admitted that "Blendtec has registered the Blendtec Mark and the distinctive Swirl Design Mark." 2021 Action, Dkt. 2 at ¶73, Dkt. 20 at ¶73. Blendjet further admitted "that it uses the Blendjet word mark in connection with selling portable blenders." *Id*. at Dkt. 20 at ¶24. Blendjet also admitted "that it was aware of the BLENDTEC and Swirl Design Marks during the prosecution of its application to federally registered the Blendjet word mark." *Id*. at ¶26. *See also id*. at ¶29 (same). Similarly, in its Answer, Mavorco "admits that a U.S. Trademark Registration with the Registration Number 2,431,060 exists on the principal register for the word mark 'Blendtec' in connection with blenders", and "that Blendtec is . . . the owner of the '060 Registration" (Dkt. 44 at ¶¶16, 63). Thus, as similar marks (word marks, swirl marks, and both marks together) are used on similar goods (blenders), this case is strong, not objectively baseless.

In *Dell, Inc. v. 3K Computers, LLC*, 2008 WL 6600766 (S.D. Fla. Oct. 6, 2008), for example, defendant's answer asserted the same affirmative defense under 15 U.S.C. § 1115(b)(7) that Mavorco asserts here. *Id*. at *1. The court found that "[a] brief review of the pleadings makes clear that plaintiff's claims are not objectively baseless." *Id*. at *2. "Plaintiff's marks are 'Latitude,' 'Optiplex,' and 'Poweredge' for its line of notebook computers, desktop computers, and servers, respectively." *Id*. "Defendant's answer admits that defendant sold notebook computers, desktop computers, and servers, under the names 'Longitude,' 'Optisys,' and 'Powersharp' after plaintiff had begun using its marks." *Id*. The court found that "the similarity of 3K's marks, and the fact

that it chose those similar marks for the same line of products, is strong circumstantial evidence that 3K chose its marks intentionally to exploit the goodwill associated with Dell's products through Dell's registered trademarks." *Id*. Thus, the court held that "Dell's claims are not properly labeled objectively baseless" and "the instant lawsuit does not fit within the 'sham' exception to the *Noerr-Pennington* doctrine." *Id*.

The same result applies here where it is undisputed that Blendjet knew about Blendtec's prior registered trademarks used on blenders when Blendjet began using its similar marks on blenders. As the Court in the 2021 Action recognized,

> The parties in this action manufacture and sell blending machines and they both use a swirl design logo in connection with their blenders. An example of the respective companies' marks are as follows:

*See* 2021 Action, Dkt. 167 at p. 1. Blendtec's case is objectively strong, and no reasonable person could find Blendtec's lawsuit objectively baseless. *See Virgin*, 2020 WL 1845232, at *5 (action not objectively baseless where "Virginic disputes that it is liable . . . , but it does not dispute that it is involved in the conduct that Plaintiff alleges is infringing").

Mavorco claims that "Blendtec filed these lawsuits fully aware that its claims are objectively baseless and that it has no chance of success on the merits." Opp. at 7. Nothing could be further from the truth. Blendtec is likely to succeed on the merits.[3] Mavorco claims Blendtec's suit is objectively baseless for three reasons. First, Mavorco claims "'blend' is a generic term for

---

[3] *See* Dkt. 25 (Preliminary Injunction Motion) at 7-18 (arguing that "Blendtec is highly likely to succeed on the merits" of its trademark infringement claim).

7

blender." Opp. at 7. "Registration of a mark provides the plaintiff with a presumption that the mark is not generic," however. *PODS Enters. V. ABF Freight Sys.*, 2011 WL 4948397, at *4 (M.D. Fla. Oct. 17, 2011).[4] "Even if [Mavorco's] allegations ultimately prove that the [Blendtec] mark has become generic, they do not show at this juncture that [Blendtec's] lawsuit is objectively baseless." *Id*. (striking antitrust affirmative defense under *Noerr-Pennington*).

Next, Mavorco claims that "Blendjet (the accused mark) is a federally registered mark that has always been owned by the accused infringer, Blendjet, and now Mavorco." Opp. at 7-8. Mavorco's naked argument does not explain how this renders objectively baseless Blendtec's effort to enforce its federally registered and incontestable marks that have priority.

Finally, Mavorco claims "numerous BLEND-formative brand names have existed-for blenders-for over 85 years without confusion." Opp. at 8. Even assuming this is true (which Mavorco has not shown),[5] this goes only to the commercial strength of the Blendtec mark and does not mean Blendtec has no trademark rights. *See Nordstrom, Inc. v. 7525419 Canada,* 2012 WL 12507605, at *7 (W.D. Wash. 2012) ("conclusion that the field of 'RACK' marks is crowded does not, of course, deprive such marks of protection or grant competitors carte blanche to utilize names that mimic preexisting marks"). Mavorco's run-of-the-mill defense that goes to one factor in the likelihood of confusion analyses does not render Blendtec's claim objectively baseless.

### 2)   Blendtec's Subjective Intent Does Not Show a Sham Litigation

Blendtec's lawsuit is not objectively baseless. Thus, the Court need not reach the issue of Blendtec's subjective intent. In any event, Mavorco's arguments regarding Blendtec's subjective

---

[4] *See* Dkt. 57 (PI Reply) at 2-4 (arguing Blendtec Marks are not generic).
[5] *See* Dkt. 57 (PI Reply) at 8-10 (USPTO registrations do not show Blentec's Marks are weak).

intent are demonstrably false. First, Mavorco claims an opinion in the 2021 Action shows Blendtec's bad faith litigation conduct. Opp. at 8. Mavorco argues the opinion noted "the parties' intent to engage in scorched earth litigation . . . on Blendtec's six motions to compel." *Id*. But that opinion faulted *Blendjet's* discovery conduct and compelled *Blendjet* to comply with its discovery obligations.[6] The decision certainly does not support a finding of bad faith on the part of Blendtec.[7]

Next, Mavorco claims Blendtec used the legal system "to exert financial pressure" and "financially drain[] Blendjet." Opp. at 5, 8. But the 2021 Action was stayed for nearly a year (May 2023 through March 2024), pending a motion related to Blendjet's concealment of the role played by Blendjet's counsel of record Patrick McGill. *See* 2021 Action Dkts. 151, 168, 180. During this time, Blendjet had little to no litigation expenses due to Blendtec's lawsuit. Further, as financial statements will show, Blendjet imploded after it issued a massive product recall in 2023.[8] In addition to staggering recall-related expenditures, two class action lawsuits were filed against

---

[6] *See* 2021 Action, Dkt. 100 at 6 ("the Court is not persuaded that Blendjet has substantially completed production"); *id*. at 7 ("the court is not persuaded that Blendjet may artificially impose its constraints of relevance on the case"); *id*. at 8 (granting Blendtec's motion and ordering that "Blendjet is to respond within 45 days"); *id*. at 10 ("the court overrules Blendjet's burdensome and relevancy objections"); *id*. at 11 (granting Blendtec's motion and ordering that "Blendjet is to fulfill its agreement"); *id*. at 13 (finding that the "likelihood of confusion test is more flexible and less rigid than Blendjet suggests," and granting Blendtec's motion to compel).

[7] The Court also faulted Blendjet's litigation conduct in another opinion. *See* 2021 Action, Dkt. 167 at 9 ("Candidly, the court feels Blendjet should have been more forthcoming in disclosing Mr. McGill's role . . . near the outset of this suit.") (decision on Blendtec's motion to enforce the protective order or disqualify Blendjet's former counsel of record, Patrick McGill).

[8] Blendtec anticipates that discovery from the 2021 Action will soon be available in this case. *See* 2021 Action, Dkt. 213 at 5 (denying motion to consolidate and directing "parties may simply agree (or the court may order) that [2021 Action] discovery will be available . . . in the 2025 Action").

Blendjet, one of which remains pending.[9] Blendjet's litigation expenses related to Blendtec's lawsuit have been **miniscule** relative to the expenses incurred due to the recall of defective and dangerous Blendjet blenders. Blendjet's financial demise is purely of its own doing and cannot be attributed to Blendtec's lawful efforts to enforce its trademark rights.

Finally, Mavorco claims that Blendtec "made multiple inquiries over the years into acquiring Blendtec." Opp. at 8. This too is demonstrably false. Blendtec never reached out to Blendjet regarding an acquisition, and only discussed a potential acquisition at the express behest of Blendjet. Dkt. 51 at 2. Perhaps more importantly, any discussion of a potential business deal came in the context of an attempt to settle the 2021 Action. Blendtec's refusal to offer Blendjet what Mr. Pamplin "believed the Blendjet business was worth", Dkt. 49-2 at ¶ 17, cannot be surprising, especially when Blendjet was reeling from a product recall. More importantly, Blendjet's settlement position does not show subjective intent to pursue a sham litigation.

## CONCLUSION

Mavorco has not alleged anticompetitive conduct outside this lawsuit and this case falls squarely within *Noerr-Pennington*. No exception applies here because this case does not involve a "whole series" of proceedings and the pleadings demonstrate the suit is objectively strong, not objectively baseless. None of Mavorco's attempts to portray this case as objectively baseless and filed in bad faith take this case out of *Noerr-Pennington*. As such, Mavorco's antitrust affirmative defense cannot succeed as a matter of law, and the Court should strike the defense. Because Mavorco's defense is defective as a matter of law, the Court should not grant leave to amend.

---

[9] *See Gould v. Blendjet*, Southern District of Illinois, Case No. 24-cv-1273; *Rittenhouse v. Blendjet*, Eastern District of California, Case No. 23-cv-1906.

DATED this 28th day of May, 2025.

                                                DORSEY & WHITNEY LLP

                                                /s/ *Tamara L. Kapaloski*
                                                Brett Foster (#6089)
                                                Mark Miller (#9563)
                                                Tamara L. Kapaloski (#13471)
                                                *Attorneys for Plaintiff Blendtec Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on the 28th day of May, 2025, I electronically filed the foregoing with the Clerk of Court using the Court's CM/ECF system, which will send electronic notification to counsel of record.

*/s/ Tamara L. Kapaloski*
