Brett Foster (#6089)
Mark Miller (#9563)
Tamara Kapaloski (#13471)
**DORSEY & WHITNEY LLP**
111 S. Main Street, Suite 2100
Salt Lake City, UT 84111
Telephone: (801) 933-7360
Facsimile: (801) 933-7373
foster.brett@dorsey.com
miller.mark@dorsey.com
kapaloski.tammy@dorsey.com

*Attorneys for Plaintiff Blendtec Inc.*

### UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| **BLENDTEC INC.**, a Utah corporation,<br><br>Plaintiff,<br><br>vs.<br><br>**BLENDJET INC.**, a Delaware corporation, **MAVORCO HOLDINGS, LLC**, a Delaware corporation, **MAVORCO IP, LLC**, a Delaware corporation, and **MAVORCO OPERATIONS, LLC**, a Delaware corporation,<br><br>Defendants. | **BLENDTEC'S SUPPLEMENTAL BRIEF IN SUPPORT OF ITS PRELIMINARY INJUNCTION MOTION**<br><br>Civil No. 2:25-cv-00096-RJS-DBP<br>Judge Robert J. Shelby<br>Magistrate Judge Dustin B. Pead<br><br>**[REDACTED VERSION]** |

Pursuant to the Court's June 11, 2025, Order, Blendtec hereby files its Supplemental Brief in Support of its Preliminary Injunction Motion (the "PI Motion").[1]

---

[1] References to "Exh." are to exhibits attached hereto, which are documents produced by Blendjet in the 2021 Action. Leading zeros have been omitted from Blendjet Bates numbers. Unless otherwise indicated all underlining herein has been added. The Ryan Pamplin Declaration discussed in Section II of this Supplemental Brief is the Declaration of former Blendjet CEO Ryan Pamplin that Mavorco filed as Dkt 49-2 in opposition to Blendtec's Preliminary Injunction Motion.

**TABLE OF CONTENTS**

I.   Blendjet's Documents Show a Liklihood of Confusion ........................................................1

    A.   Blendjet Intentionally Selected its Marks to Target Blendtec and its Goodwill ........................................................................................................1

    B.   Blendjet Sanctioned Widespread Consumer Confusion .........................................2

    C.   Blendjet's Admissions Regarding Trademark Infringement ..................................5

II.   Ryan Pamplin's Declaration Is Contradicted By The Evidence ..........................................8

i

I.   **BLENDJET'S DOCUMENTS SHOW A LIKLIHOOD OF CONFUSION**

   A.   **Blendjet Intentionally Selected its Marks to Target Blendtec and its Goodwill**

Blendjet carefully chose its marks and understood the implications of selecting a trademark. In an October 2020 article, Blendjet CEO Ryan Pamplin advised entrepreneurs to:

Exh. 1 at (JET597386). A September 2021 email by Mr. Pamplin is also very telling. Mr. Pamplin

Exh. 2 (JET610303). According to Mr. Pamplin,

" *Id*. (JET610304). Thus, Mr. Pamplin's selection of the Blendjet Marks was clearly not random. As one of the top blender companies, Blendtec was certainly

In fact, Mr. Pamplin conceded that he was aware of the Blendtec Marks when he filed his applications to register the Blendjet Marks with the USPTO.[2]

Further, from its beginning, Blendjet was targeting Blendtec as a potential acquirer (*see infra*, p. 10), and undoubtedly believed that selecting a similar mark would make Blendtec a logical acquirer of Blendjet. Blendjet filed its trademark application to register "BLENDJET" with the USPTO on September 20, 2018. Blendjet knew of Blendtec's Marks at that time. *See* fn. 2.[3] Just

---

[2] *See* 2021 Action, Dkt 20 (Answer) at ¶¶26, 29;

[3] *See also*

over one month later, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Exh. 5 (at JET1342441). It appears beyond question that Blendjet chose its marks believing that adopting marks very similar to Blendtec's Marks would motivate Blendtec to acquire Blendjet. In May 2019, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮.[4] Exh. 6. In response, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ *Id.*[5]

### B.   Blendjet Sanctioned Widespread Consumer Confusion

Many confused Blendjet customers reached out to Blendjet about their "Blendtec" blenders, including the following examples:[6]



---

[4] Blendtec's Blendtec GO product was on the market long before Blendjet.

[5] Blendjet sought to emulate Blendtec in other ways as well. For example, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Exh. 7 (JET106788).

[6] Blendjet had actual knowledge of consumer confusion created by its marks since the beginning of its operations. *See, e.g.*, Exh. 8 (JET3741) (▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮). Despite its knowledge of confusion, Blendjet continued to sell blenders under the Blendjet Marks.

2

3

- ██████████████████████████████████
  █████████

- ██████████████████████████████████
  ████

- ██████████████████████████████████
  ██████████████████████████████████
  ████████████████████████

- ██████████████████████████████████
  ████████████████████

██████████████████████████████████████
██████████████████████████████████████
████████████████████████████

██████████████████████████████████████
██████████████████████████████████████

██████████████████████████████████████
██████████████████████████████████████
████████████████

██████████████████████████████████████
██████████████████████████████████████
████████████████████████

██████████████████████████████████████
██████████████████████████████████████
████████████████

██████████████████████████████████████
██████████████████████████████████████

---

[7] Blendtec does not sell a "Blendtec 2." The customer was referring to Blendjet's "Blendjet 2."

3



Rather than correct the confusion, Blendjet permitted many consumers to believe Blendjet and Blendtec were affiliated or that they had purchased a Blendtec blender, evidencing Blendjet's intent to cause confusion and benefit from the goodwill Blendtec spent decades building:



4

.⁸

Blendjet not only understood customers were confused, they even joked about it. For example, a Blendjet customer service representative wrote to a colleague: "███." Exh. 48 (JET1539142 at 1539152).⁹ The confusion was not limited to consumers. For example:



**C.     Blendjet's Admissions Regarding Trademark Infringement**

---

⁸ In addition, transcriptions of audio calls with Blendjet's customer service department appear to show ███" Exh. 38 (JET50443). *See also, e.g.,* Exhs. 39-47.

⁹ ███ Exh. 49 (JET1464536) ("███").

Mr. Pamplin considers himself savvy with trademarks and Blendjet had a robust trademark enforcement program.[10] Mr. Pamplin recognized the harm caused by trademark infringement, stating that it "███████████████████████████████████████████████████████████████████████." *Id*. at (JET38085).[11] In an attempt to avoid this harm, Blendjet had "███████████████████████████████████████████████████████████████████████" (exh. 56 (JET362505)). Mr. Pamplin's understanding of trademark issues and his instructions to his team regarding trademark infringement show that his denial of infringement here in the present litigation is disingenuous at best.

Mr. Pamplin directed his team that marks do not have to be identical for infringement, stating ███████████████████████████████████████████████████████████████████████ Exh. 57 (JET405076). *See also* Exh. 58 (JET331201) (███████████████████████████████).[12] According to Mr. Pamplin, "███████████████████████████████████████████████." Exh. 59 (JET1343124).[13] Thus, Mr. Pamplin directed his trademark enforcement team that ████████

---

[10] *See* Exh. 53 (Jet38083) ("███████████████████████████████████████████████████████████████")

[11] Here, confused consumers thought they were buying a Blendtec product and ended up with Blendjet's "████████████" instead. In addition to just being a lower quality product, Blendjet's blender was also causing serious bodily harm to consumers. *See, e.g.*, Exh. 54 ████████████████████████████████. Despite this, Blendjet failed to dispel consumer confusion and permitted consumers to believe that the inferior and dangerous Blendjet blenders were Blendtec products.

[12] Mavorco claims that "blend" and "blender" are generic and thus are not capable of being trademarks. However, ███████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████ *Id*. Blendjet's enforcement strategies constitute admissions of infringement here.

[13] "Blendtec" and "Blendjet" differ by one letter and the swirls are nearly indistinguishable.

███████████████████████████████████████████████████

█████████." Exh. 55 (JET4716). Mr. Pamplin instructed ████████████████████

███████████████████████████████████████████████████

████████ Exh. 60 (JET597934). Thus, according to Mr. Pamplin's own instructions to his team, the BLENDJET mark and Blendjet's swirl mark are infringing the Blendtec Marks and Blendtec is right to take action to stop it.

Incredibly, Blendjet submitted takedown requests and otherwise reported **_Blendtec_** for infringement. █████████████████████████████████████

███████████████████████████████████████████████████

██████████████████████████ Exh. 61 (at JET1413300).[14] *See also id*. at (JET1413305) ("█████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████ *Id*. In response to Ms. Carlson's discovery and actions, Mr. Heath rightly concluded ████████████████████████████████████████████

█████████████████████████ Exh. 62 at (JET1356913).

Blendjet's own internal documents show that it (a) intentionally and strategically adopted the Blendjet Marks with full knowledge of the Blendtec Marks, (b) understood the harm caused by consumer confusion related to inferior and dangerous products, (c) understood that similar words and swirl designs with minor variations constitute trademark infringement, but nonetheless (d) sanctioned consumer confusion between Blendtec and Blendjet when it would help Blendjet

---

[14] Mr. Heath's LinkedIn Profile states that he was Blendjet's Senior Manager of E-Commerce Operations. https://www.linkedin.com/in/chris-heath-9a72b1324?

build its reputation on the back of Blendtec's established goodwill. In other words, Blendjet's

██████████████████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████. Exh. 59 (█

██████████████████████████████████████████████████████████████████████████████

## II.    RYAN PAMPLIN'S DECLARATION IS CONTRADICTED BY THE EVIDENCE

- Ryan Pamplin: "To my knowledge, no trademark office in any jurisdiction has found that Blendjet's trademarks create a likelihood of confusion with Blendtec's BLENDTEC trademark or its logo." Dkt. 49-2 (Pamplin Decl.) at ¶11.

This is a blatant misrepresentation. China refused to register the Blendjet Swirl mark based on a likelihood of confusion with Blendtec's swirl mark. Exh. 63. ████████████████████

████████████████████████████████████ Exh. 64. Further, although Mr. Pamplin was aware of the Blendtec Marks when he filed Blendjet's trademark applications, he failed to disclose the Blendtec Marks to the USPTO. *See supra* at fn. 2. While Mavorco argues that the USPTO examining attorney "considered" the "Blendtec" mark, this is false. There is no evidence that the examiner found or evaluated the Blendtec registrations. *See* Exh. 65-66.

- Citing Mr. Pamplin's Declaration, Mavorco argues the parties sell unrelated goods and their markets do not "overlap." Dkt. 49 at 7, 19 (citing Dkt 49-2 at ¶12).

Mavorco and Pamplin misrepresent the record. Blendjet "admits that it presently uses the Blendjet word and logo marks to advertise, promote, and sell blenders." 2021 Action, Dkt 20 (Blendjet's Answer) at ¶106. Blendjet publicly acknowledged that Blendjet and Blendtec are both

"█████████ Exh. 67 (JET2813) (████████████████████████████████████████████████

██████████████████████████████████████████████████████████████████████████████

██████ Mr. Pamplin recognized that "████████████████████████████████████████ (exh.

68 (JET70090)), stating that "████████████████████████████████████████████████

8



(exh. 69 (JET18366)). Blendjet conceded that Blendtec is its ▮▮▮. Exh. 70 (JET16886) (▮▮▮ Exh. 71 JET505 (▮▮▮ In advertisements Blendjet compared itself to countertop blenders. *See* Exh. 72 (JET24207) (▮▮▮ xh. 74 (JET25335). Mavorco's desperate effort to paint the parties as non-competitors is contradicted by <u>all</u> record evidence.

- Ryan Pamplin: "Blendjet has never represented its products as being associated with Blendtec in any way, nor has Blendjet ever suggested that its products originate from or are endorsed by Blendtec." Dkt. 49-2 (Pamplin Decl.) at ¶13.

Not so. Blendjet permitted confused consumers to believe that Blendjet and Blendtec were affiliated or that the customers had purchased a Blendtec blender. *See supra* at 4-5.

- Ryan Pamplin: "The financial impact of the recall, market conditions, and expenses associated with the 2021 litigation filed by Blendtec against Blendjet caused Blendjet to default on its financing obligations." Dkt. 49-2 (Pamplin Decl.) at ¶15.

This is not true. "[T]he Blendjet 2 has sold over 10 million units globally." *Id.* at ¶6. At the end of 2023, Blendjet recalled "4.8 million" of those "Blendjet 2" blenders "due to fire and laceration hazards." Exh. 75.[15] Thus, nearly 50% of Blendjet's 10 million Blendjet 2 blenders were

---

[15] Blendjet did not issue a recall until December 2023 despite being on notice of these hazards, including the mutilation of a child, years earlier. *See supra* fn. 11.

recalled.¹⁶ Blendjet's sales ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ (exh. 78 (JET1574227), including fees related to two class action lawsuits filed against Blendjet, as well as the recall. The amount of legal fees due to the 2021 Action in 2023 were a small fraction of that ▮▮ because the 2021 Action was stayed for half of 2023, and, even after the stay, the litigation never became active again due to Blendjet's rapidly deteriorating financial condition. By contrast, for 2023, Blendjet reported ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Exh. 78.¹⁷ The 2021 Action costs were <u>miniscule</u> compared to the recall expenditures, and Blendjet's demise cannot be blamed on Blendtec's efforts to enforce its trademark rights.

- Ryan Pamplin: "Over the years, Blendtec inquired several times about acquiring Blendjet." Dkt. 49-2 (Pamplin Decl.) at ¶17.

This is highly misleading. Blendjet's documents show that Mr. Pamplin formed Blendjet with the express intent to sell it and that, from the very beginning, <u>Blendjet targeted Blendtec</u> as the potential acquiror. On October 31, 2018, Mr. Pamplin created ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ (Exh. 5, Exh. 80 at JET1340167-68). Blendtec <u>never</u> reached out to acquire Blendtec.¹⁸ *See* Dkt. 51 (Motion to Strike) at 2-3.

---

¹⁶ Blendjet's blenders have a retail price of "between $50 and $70." Dkt. 49-2 at ¶12. This equates to a total recall volume of $240-$360 million in product value alone (though not actual revenue loss, this reflects the massive scale of the recall).

¹⁷ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Exh. 79.

¹⁸ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Exh. 81.

DATED this 23rd day of June, 2025.

                                                  DORSEY & WHITNEY LLP

                                                  /s/ *Tamara L. Kapaloski*
                                                  Brett Foster (#6089)
                                                  Mark Miller (#9563)
                                                  Tamara L. Kapaloski (#13471)
                                                  *Attorneys for Plaintiff Blendtec Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on the 23rd day of June, 2025, I electronically filed the foregoing with the Clerk of Court using the Court's CM/ECF system, which will send electronic notification to counsel of record.

/s/ Tamara L. Kapaloski