Brett Foster (#6089)
Mark A. Miller (#9563)
Tamara Kapaloski (#13471)
**DORSEY & WHITNEY LLP**
111 S. Main Street, Suite 2100
Salt Lake City, UT 84111
Telephone: (801) 933-7360
Facsimile: (801) 933-7373
foster.brett@dorsey.com
miller.mark@dorsey.com
kapaloski.tammy@dorsey.com

*Attorneys for Plaintiff Blendtec Inc.*

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| **BLENDTEC INC.**, a Utah corporation,<br><br>    Plaintiff,<br><br>vs.<br><br>**BLENDJET INC.**, a Delaware corporation, **MAVORCO HOLDINGS, LLC**, a Delaware limited liability company, **MAVORCO IP, LLC**, a Delaware limited liability company, and **MAVORCO OPERATIONS, LLC**, a Delaware limited liability company,<br><br>    Defendants. | **BLENDTEC'S RESPONSE TO MAVORCO'S MOTION FOR EXTENSION OF TIME TO FILE A MOTION FOR LEAVE TO MAINTAIN DOCUMENTS UNDER SEAL**<br><br>Civil No. 2:25-cv-00096-RJS-DBP<br>Judge Robert J. Shelby<br>Magistrate Judge Dustin B. Pead<br><br>**[REDACTED VERSION]** |

Blendtec hereby submits its opposition to MavorCo's untimely Motion for Extension of Time to File a Motion for Leave to Maintain Documents under Seal (the "Motion"). MavorCo failed to file its Motion within seven days as required (*see* ECF 73 at fn.1) and does not even attempt to meet its burden to show the documents should remain under seal. MavorCo's Motion is a pretext for delay and should be denied.

I.      **MavorCo Has Not Met Its Burden to Maintain the Documents Under Seal**

The "party seeking to keep records sealed bears the burden of justifying that secrecy." *United States v. Pickard*, 733 F.3d 1297, 1302 (10th Cir. 2013). This is a "heavy burden." *Eugene S. v. Horizon Blue Cross Blue Shield of N.J.*, 663 F.3d 1124, 1136 (10th Cir. 2011). The party seeking to seal a document must "come forward with evidence as to the nature of the public or private harm that would result if it were so filed." *Heartland Surgical Specialty Hosp., LLC v. Midwest Div., Inc.*, 2007 WL 101858, at fn. 10 (D. Kan. 2007). "Vague and conclusory statements" do not meet this heavy burden. *Elevate Federal Credit Union v. Elevations Credit Union*, 67 F.4th 1058, 1085 (10th Cir. 2023). The proponent of sealing "must analyze in detail, document by document, the proprietary of secrecy, providing reasons and legal citations." *Furr v. Ridgewood Surgery & Endoscopy Ctr.*, 2016 WL 3227399, at *3 (D. Kan. 2016).

MavorCo claims only that "it may have grounds to move this Court to maintain these materials under seal" and makes the conclusory and vague claim that "the Sealed Exhibits contain discussions regarding how Blendjet developed the technologies underlying the assets MavorCo now owns, along with monetary valuations pertinent to those same assets." Motion at 4. MavorCo fails to identify the specific exhibits which it claims pertain to the development and valuation of technologies it acquired or how they do so. Based on its vague claim, MavorCo seeks additional time to file a motion to maintain the sealed status of the documents apparently on the ground that it needs "to review the full set of discovery from the 2021 Action" to make this determination. *Id*. MavorCo's Motion should be denied. MavorCo has had the unredacted versions of the sealed exhibits since June 23, and its absurd claim that it must review "over 1.5 million pages" produced in the 2021 Action to evaluate whether these specific exhibits should remain under seal is a pretext

1

for delay. The determination can and should be made on the face of the exhibits.

**II.     The Sealed Documents Directly Support Blendtec's PI Motion and Rebut Statements Made in Ryan Pamplin's Declaration Submitted in Opposition to the PI Motion**

MavorCo claims that "of the seventy-seven (77) documents designated as [AEO] that Blendtec filed with its Supplemental Brief, many have at most questionable relevance to the issues in the preliminary injunction motion." Motion at 5. Even assuming this were true (it is not), MavorCo does not explain why this would justify maintaining the documents under seal. In any event, MavorCo does not identify which documents it contends have only "questionable relevance" to the issues, nor does it explain how they lack relevance. Not only is MavorCo's vacuous claim ridiculous, it's also irrelevant to the determination of whether MavorCo can meet its burden to keep the exhibits sealed. For the reasons stated below, the exhibits are central to the issues in the PI Motion and MavorCo cannot show that they should remain under seal:

**a)     Forty-Five (45) Exhibits Evidence Actual Confusion in the Marketplace**

Of the seventy-eight (78) exhibits filed under seal, forty-five are customer service inquiries from confused customers to Blendjet's customer service team. *See* Exhibits 8-48 and 50-52. This evidence is highly relevant to the actual confusion factor of the likelihood of confusion analyses. *See Hornady Mfg. Co. v. DoubleTap, Inc.*, 746 F.3d 995, 1004 (10th Cir. 2014) ("Evidence of actual confusion in the marketplace is often considered the best evidence of a likelihood of confusion."). MavorCo cannot genuinely contend (in good faith) that these exhibits are not relevant to the PI Motion. In fact, MavorCo argued in its Opposition to the PI Motion that confusion is unlikely and that Blendtec's actual confusion evidence is insufficient. *See* ECF 49 (MavorCo's Opposition to PI Motion) at 15-21. While MavorCo grossly mischaracterizes the compelling actual

2

confusion evidence Blendtec submitted with its Motion[1] (and ignores most of it), these exhibits evidence a strong likelihood of confusion shown by Blendjet's own documents. Blendtec is entitled to use Blendjet's documents produced in the 2021 Action to rebut these arguments and to show additional instances of actual confusion.

In addition, the inquiries from confused customers do not discuss how Blendjet developed technologies that MavorCo acquired, nor do they discuss monetary valuations pertinent to those assets. Thus, MavorCo's sole claimed grounds for maintaining the documents under seal do not apply to these documents.

    **b)**     **Eleven (11) Exhibits are Blendjet Admissions Regarding Trademark Infringement**

In opposition to Blendtec's PI Motion, MavorCo argued that the Blendtec Marks and Blendjet Marks are not similar and that the Blendtec Marks are not entitled to protection. *See* ECF 49 at p. 13-14, 16, 18-19. Blendjet's own documents contain many admissions, including ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇. As explained in Blendtec's Supplemental Brief, Exhibits 49, 53, 55, 56, 57, 58, 59, 60, 61, 62, and 64 contain Blendjet's admissions that are highly relevant to

---

[1] MavorCo also argued that the inventory it acquired "does not overlap with Blendtec's market" because Blendjet devices are portable, battery-powered, and priced between $50 and $70, serving everyday consumers" whereas "Blendtec markets non-portable, high-end blenders priced from $400 to over $3,000, aimed at professional kitchens and specialty users." ECF 49 at p. 7-8. The evidence of consumer confusion produced by Blendjet shows that many customers purchasing the Blendjet 2 blender (*i.e.*, the inventory that MavorCo acquired) mistakenly believed that they had purchased a Blendtec blender or that the companies were affiliated.

the PI Motion.²

With respect to MavorCo's request to keep these exhibits under seal, MavorCo does not even attempt to argue that these specific documents discuss "how Blendjet developed the technologies underlying the assets MavorCo now owns" or "monetary valuations pertinent to those same assets." *See* Motion at p. 4 (MavorCo's claimed reason for maintaining the exhibits under seal). It is clear from a facial review that these documents do not discuss Blendjet's development of technology nor do not contain monetary valuations of technology. MavorCo's disingenuous claim that these documents are not relevant to the PI Motion and that it must review full discovery from the 2021 Action to determine whether it has grounds to maintain these documents under seal are simply stalling tactics that should not be condoned by the Court.

      c)      **Nine (9) Exhibits Relate to the Intent Factor and Rebut MavorCo's Mischaracterization of Blendtec as Pursuing an Anti-Competitive Strategy to Acquire Blendjet**

The deliberate adoption of a similar mark may lead to an inference of intent to pass off goods as those of another which in turn supports a finding of likelihood of confusion. *See HealthONE of Denver, Inc. v. UnitedHealth Grp. Inc.*, 872 F. Supp. 2d 1154, 1180 (D. Colo. 2012). In addition, "one who adopts a mark similar to another already established in the marketplace does so at his peril, because the court presumes that he can accomplish his purpose: that is, the public will be deceived. All doubts must be resolved against him." *Kodiak Cakes, LLC v. Cont'l Mills, Inc.*, 358 F. Supp. 3d 1219, 1230 (D. Utah 2019). Exhibits 1–7 and 80-81 are relevant to Blendjet's

---

² Exhibit 64 also directly contradicts Ryan Pamplin's declaration statement that "[t]o my knowledge no trademark office in any jurisdiction has found that BlendJet's trademarks create a likelihood of confusion with Blendtec's BLENDTEC trademark or its logo." ECF No. 49-2 at ¶11.

intent in adopting the mark because they show that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮, when it adopted the Blendjet Marks.³

Further, in its Opposition to the PI Motion, MavorCo accuses Blendtec of "not acting to preserve trademark rights, but rather pursuing a years-long strategy of anti-competitive pressure and acquisition leverage." ECF 49 at p. 7 (claiming that "Blendtec has made multiple inquiries about acquiring Blendjet") (citing Mr. Pamplin's declaration). In his declaration, Mr. Pamplin stated that "[o]ver the years, Blendtec inquired several times about acquiring Blendjet." ECF 49-2 at ¶17. Exhibits 1-3 and 80-81 contradict this statement by showing that, from the outset, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Blendjet has not introduced a shred of credible evidence that Blendtec ever attempted to acquire Blendjet outside Blendjet's invitation to negotiate toward a settlement of this dispute.

These documents show that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ of its business. They do not disclose how Blendjet developed the technologies underlying the assets purchased by MavorCo or their monetary value. MavorCo's feigned reason to keep these documents under seal has no substance.

   d) **Eight (8) Exhibits Relate to the Similarity of Goods and are Admissions By Blendjet that Blendtec is its Direct Competitor**

The greater the similarity between the products and services, the greater the likelihood of confusion. *Sally Beauty Co. v. Beautyco, Inc.*, 304 F.3d 964, 974 (10th Cir. 2002). "The issue is not whether the goods and services can be distinguished from each other in some aspect, but

---

³ Although Blendjet designated Exhibit 4 as AEO, it is a transcript of a publicly available interview of Mr. Pamplin. *See* https://medium.com/authority-magazine/meet-the-inventors-ryan-pamplin-of-of-blendjet-on-how-to-go-from-idea-to-store-shelf-e4a465928b7a.

instead whether consumers would believe that one entity produced both." *Instructure, Inc. v. Canvas Techs., Inc.*, No. 2:21-cv-00454-DAK-CMR, 2022 WL 43829, at *12 (D. Utah Jan. 5, 2022). In analyzing the similarities, courts consider "whether the parties [are] competitors in consumer markets." *Sally Beauty Co. v. Beautyco, Inc.*, 304 F.3d 964, 974 (10th Cir. 2002).

MavorCo claims that "the products differ greatly in target customer and pricing" (ECF 49 at p. 19), and that it does not "compete directly with Blendtec" (*id*. at p. 7). Mr. Pamplin also claims that Blendjet does not compete with Blendtec and that he is not aware of any instances where any sales were diverted from Blendjet to Blendjet or vice versa. ECF No. 49-2 at ¶¶12-13, 18. Exhibits 67-74 directly contradict these claims, including through ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇. As such, they are highly relevant to the PI Motion.

Moreover, the fact that Blendjet considered ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ does not disclose the development of the technologies acquired by MavorCo or their monetary value. MavorCo cannot show these exhibits should remain under seal.

e)  **Five (5) Exhibits Rebut MavorCo's Mischaracterization that Blendtec Pursued an Anti-Competitive Strategy to Cause Blendjet's Financial Demise**

Mr. Pamplin claims that, in addition to the recall, "expenses associated with the 2021 litigation filed by Blendtec against BlendJet, caused Blendjet to default on its financing obligations." ECF 49-2 at ¶15.[4] MavorCo claims that the recall was not "the result of any

---

[4] Citing to Mr. Pamplin's declaration, MavorCo similarly claims that "Blendtec has filed . . . lawsuits, not to enforce its trademark rights in good faith, but instead to use the legal system as an

6

confirmed, widespread product hazard, as Blendtec suggests." ECF 49 at p. 6. Rather, MavorCo claims that the scope of the recall was "largely due to packaging issues." *Id*.

Exhibit 54 contradicts the claim that the recall was the result of packaging issues rather than a product hazard. Exhibits 76-77 are one-page excerpts from Blendjet's financial statements for 2021 and 2022 (years' prior to MavorCo's transaction with Blendjet) and ▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ despite the 2021 litigation. Exhibit 78 is Blendjet's financial statements for 2023 (one year prior to MavorCo's transaction with Blendjet) which show ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮. Exhibit 79 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. Taken together, these exhibits contradict MavorCo's attempt to portray Blendtec as a bad actor that strategically exerted financial pressure on Blendjet to acquire it.

MavorCo has not argued that these specific exhibits disclose the development of Blendjet technologies or their monetary value, nor has it made any attempt to explain how they do so. They do not. Exhibits 76 and 77 disclose just one-page from Blendjet's 2021 and 2022 financial statements and show only very high-level line items. They disclose nothing about specific technologies. Exhibit 78 is Blendjet's income statement and balance sheet for 2023. This document provides general line items and does not disclose how Blendjet technologies were developed or their monetary value. MavorCo has not explained how financial statements from years prior to MavorCo's transaction with Blendjet, regarding the operations of a company that has gone out of

---

anti-competitive tool to exert financial pressure on BlendJet (and now MavorCo) with the goal of preventing fair competition and extorting the acquisition of intellectual property assets at a significantly reduced price." ECF 60 at 5.  Exhibits 76-79 undercut this mischaracterization.

business and has ceased operations as an active entity, constitute MavorCo's confidential information. MavorCo has also failed to explain how the public disclosure of Blendjet's financial statements (which Blendjet has not opposed) will cause any competitive harm to MavorCo.

### III. MavorCo Cannot Maintain the Documents Under Seal by Asserting a Vague and Unsubstantiated Claim of Attorney-Client Privilege

MavorCo claims that "the Sealed Exhibits contain documents that appear to be privileged on their face." *See* ECF 76-1 at 4. MavorCo fails to identify the documents which it believes are privileged on their face nor does it attempt to explain how the documents are privileged. Just four of the sealed exhibits copy an attorney, and they are not privileged for the following reasons:

- Exhibit 53 (ECF 72-53): In an email dated February 20, 2019 (which pre-dates MavorCo's transaction with Blendjet by nearly six years), ▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊), a communication with a third party is not privileged. *See In re Grand Jury Proceedings*, 616 F.3d 1172, 1183 (10th Cir. 2010) ("A communication by an attorney to a third party or a communication by a third party to an attorney cannot be invoked as privileged."). Blendjet has not asserted the privilege with respect to this document, nor did it move to maintain this document under seal.

- Exhibit 57 (ECF 72-57): In an email dated March 13, 2019 (which pre-dates MavorCo's transaction with Blendjet by nearly six years), ▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊ no privileged information is discussed. Blendjet has not asserted the privilege with respect to this document, nor did it move to maintain this document under seal.

- Exhibit 56 (ECF 72-56): In an email dated April 22, 2020 (which pre-dates MavorCo's transaction with Blendjet by nearly five years), ▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊ is a statement of fact and is not privileged. The document also ▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊▊ As Blendjet undoubtedly recognized when it produced this document, this is not privileged information. In any event, Blendjet has not asserted the privilege with respect to this document, nor did it move to maintain this document under seal.

- <u>Exhibit 70 (ECF 72-67)</u>: In an email dated January 3, 2020 (which predates MavorCo's transaction with Blendjet by over 5 years), ███████████████████████████████████████████ a communication to a third party is not privileged, as Blendjet undoubtedly recognized when it produced this document. In fact, this document was previously submitted to the Court in the 2021 Action in connection with Blendtec's motion to enforce the protective order. *See* 2021 Action at ECF No. 138-15. Blendjet did not assert the privilege with respect to the document at that time, nor does it do so now.

MavorCo appears to be claiming that it can assert the privilege on behalf of Blendjet. MavorCo argues that it needs to review the "full set of discovery from the 2021 Action" so that it will have "information about related documents, about the different people involved in the communications, and about related conversations that might have bearing on waiver issues." Motion at p. 4. MavorCo can only assert the privilege on behalf of Blendjet, however, if it is the successor to Blendjet. *See, e.g., Orbit One Comms., Inc. v. Numerex Corp.*, 255 F.R.D. 98, 104 (S.D.N.Y. 2008) ("If the transaction is nothing more than an asset transfer, the successor company does not acquire the former company's privilege. Conversely, where efforts are made to run the pre-existing business entity and manage its affairs, successor management stands in the shoes of prior management and controls the attorney-client privilege with respect to matters concerning the company's operations."); *Miskel v. SCF Lewis & Clark Fleeting LLC*, 2016 WL 3548438, at *5 (S.D. Ill. 2016) ("If the transaction is merely an asset transfer, privilege would not transfer; however, if a successor stands in the shoes of the predecessor, then the privilege, as it relates to the ongoing business, would transfer."). But to avoid successor liability for Blendjet's trademark infringement, MavorCo denies that it is Blendjet's successor. *See* ECF No. 43 (MavorCo's motion to dismiss Blendtec's successor liability claim). MavorCo cannot have it both ways—it cannot assert Blendjet's privilege while simultaneously claiming it is not Blendjet's successor.

9

### IV.     MAVORCO'S ONGOING COORDINATION AND UNILATERAL ACCESS TO MR. PAMPLIN IS PREJUDICIAL

Ryan Pamplin, Blendjet's founder and former CEO, submitted a declaration on behalf of MavorCo in opposition to Blendtec's PI Motion. *See* ECF No. 49-2. Mr. Pamplin then refused Blendtec's request to use documents produced by Blendjet in the 2021 Action for purposes of rebutting Mr. Pamplin's declaration. *See* **Exhibit A** (Mr. Pamplin stated that "to the extent that Blendjet has any post-foreclosure rights in or to the documents produced in the 2021 Action, it does not agree to your request").[5] MavorCo also advised Blendtec that Mr. Pamplin would not appear at the hearing on the PI Motion. *See* ECF No. 65 at p. 6-7 ("MavorCo has advised Blendtec that Mr. Pamplin will not attend the hearing.").

In its Motion, MavorCo again discloses its ongoing coordination and unilateral access to Blendjet. *See* Motion at p. 4 ("MavorCo also intends to communicate with Blendjet regarding the nature of these documents and whether any MavorCo assets are implicated by public disclosure."). This is yet another pretext for delay. MavorCo knows what assets it acquired and can make an independent evaluation regarding whether the documents implicate those assets. In addition, it is highly unjust and prejudicial to Blendtec for MavorCo to have unilateral access to Mr. Pamplin when it suits MavorCo's purposes, while it simultaneously claims it cannot produce Mr. Pamplin or obtain his cooperation when it does not. Finally, the ongoing cooperation and assistance of Blendjet's officers and executives, and MavorCo's apparent unfettered access to them, undercuts MavorCo's claim that it is not a successor to Blendjet.

---

[5] Although Mr. Pamplin sent this email on April 30, 2025 (3.5 months after the MavorCo transaction), he used a Blendjet.com email address and signed the email as the Co-Founder of Blendjet. *Id*.

DATED this 8th day of July, 2025.

                                        DORSEY & WHITNEY LLP

                                        /s/ *Tamara L. Kapaloski*
                                        Brett Foster (#6089)
                                        Mark A. Miller (#9563)
                                        Tamara L. Kapaloski (#13471)
                                        *Attorneys for Plaintiff Blendtec Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on the 8th day of July, 2025, I electronically filed the foregoing with the Clerk of Court using the Court's CM/ECF system, which will send electronic notification to counsel of record.

<em>/s/ Tamara L. Kapaloski</em>