Brett Foster (#6089)
Mark A. Miller (#9563)
Tamara Kapaloski (#13471)
**DORSEY & WHITNEY LLP**
111 S. Main Street, Suite 2100
Salt Lake City, UT 84111
Telephone: (801) 933-7360
Facsimile: (801) 933-7373
foster.brett@dorsey.com
miller.mark@dorsey.com
kapaloski.tammy@dorsey.com

*Attorneys for Plaintiff Blendtec Inc.*

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| **BLENDTEC INC.**, a Utah corporation,<br><br>    Plaintiff,<br><br>vs.<br><br>**BLENDJET INC.**, a Delaware corporation, **MAVORCO HOLDINGS, LLC**, a Delaware limited liability company, **MAVORCO IP, LLC**, a Delaware limited liability company, and **MAVORCO OPERATIONS, LLC**, a Delaware limited liability company,<br><br>    Defendants. | **BLENDTEC'S FRCP 26(b)(5)(B) MOTION**<br><br>Civil No. 2:25-cv-00096-RJS-DBP<br>Judge Robert J. Shelby<br>Magistrate Judge Dustin B. Pead<br><br>**[REDACTED VERSION]** |

Defendants have improperly invoked the attorney-client privilege and claim to have clawed-back twelve documents produced by Blendjet in the 2021 Action. Under Federal Rule 26(b)(5)(B) and the Standard Protective Order governing the 2021 Action, Blendtec hereby submits this motion (the "Motion") related to the documents at issue and requests that the Court conduct an *in camera* review to determine the claim.

# TABLE OF CONTENTS

I. INTRODUCTION ..................................................................................................................1

II. BACKGROUND ....................................................................................................................1

III. ARGUMENT ..........................................................................................................................2

    A. Blendjet Has No Privilege to Assert ..........................................................................2

    B. Mr. Pamplin Cannot Assert the Privilege on Behalf of Blendjet .............................3

    C. In Any Event, Mr. Pamplin Failed to Trigger a Claw-Back ....................................4

    D. MavorCo Can Only Assert the Privilege if it is Blendjet's Successor ....................4

    E. Blendjet/MavorCo Cannot Show the Documents Are Privileged ...........................5

        1. Documents for Which Blendjet Waived any Claim of Privilege .................6

        2. Communications With Third Parties .............................................................7

        3. Communications Between Non-Attorneys ....................................................7

        4. Non-Privileged Communications with Lawyers ........................................10

IV. CONCLUSION ....................................................................................................................10

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Adams v. Gateway, Inc.*,
  No. 2:02-cv-106-TS, 2003 WL 23787856 (D. Utah Dec. 30, 2003) ............................5, 6, 8, 9

*Am. W. Bank Members v. State*,
  No. 2:16-cv-326-CW-DAO, 2022 WL 103736 (D. Utah Jan. 11, 2022) ............................5, 10

*Barr v. Harrah's Ent. Inc.*,
  2008 WL 906351 (D.N.J. 2008) .........................................................................................3

*Byrnes v. Empire Blue Cross Blue Shield*,
  1999 WL 1006312 (S.D.N.Y. 1999).................................................................................6, 8

*Citynet, LLC v. Frontier W. Va., Inc.*,
  2022 WL 1433011 (S.D.W.V. May 5, 2022).......................................................................10

*Dyson, Inc. v. Bissell Homecare*,
  2012 WL 13389973 (N.D. Ill. 2012) ...................................................................................8

*Gibbs v. Stinson*,
  2021 WL 4853575 (E.D. Va. Oct. 21, 2021).......................................................................3

*In re Grand Jury Proceedings*,
  616 F.3d 1172 (10th Cir. 2010) ..........................................................................................5

*HPD Labs., Inc. v. Clorox Co.*,
  202 F.R.D. 410 (D.N.J. 2001).............................................................................................8

*Miskel v. SCF Lewis & Clark Fleeting LLC*,
  2016 WL 3548438 (S.D. Ill. 2016)......................................................................................5

*Nat'l Waste Assocs. v. Lifeway Christian Resources*,
  2022 WL 22895724 (M.D. Tenn. 2022)..............................................................................8

*Peat, Marwick, Mitchell & Co. v. West*,
  748 F.2d 540 (10th Cir. 1984) ............................................................................................6

*In re Qwest Comms.*,
  450 F.3d 1185 (10th Cir. 2006) ..........................................................................................5

*Strand v. Usana Health Sciences, Inc.*,
   No. 2:17-cv-925-HCN-JCB, 2021 WL 3055608 (D. Utah Jul. 20, 2021) ................................. 8

*Terrell v. Cent. Wash. Asphalt, Inc.*,
   2015 U.S. Dist. LEXIS 94047 (D. Nev. Jul. 20, 2015) ............................................................. 4

*U.S. v. Cole*,
   569 F. Supp. 3d 696 (N.D. Ohio 2021) ..................................................................................... 3

*U.S. v. Cox*,
   2015 WL 13741738 (M.D. Fla. 2015) ...................................................................................... 3

*U.S. v. Walters*,
   2020 WL 1934803 (S.D. Miss. 2020) ....................................................................................... 3

**Other Authorities**

FRCP 26(b)(5)(B) ................................................................................................................................ 4

## I. INTRODUCTION

This Motion involves MavorCo's effort to eliminate from this case, based on a manufactured claim of privilege, twelve highly relevant documents produced by Blendjet years ago. For the reasons set forth below, the Court should overrule the privilege objections.

## II. BACKGROUND

Blendjet produced the twelve documents at issue between July 29, 2022, and September 11, 2023, in the 2021 Action and designated all of them as AEO under the Standard Protective Order. In December of 2023, Blendjet announced a massive product recall, that ultimately led to its demise.[1] In January of 2025, MavorCo, a newly formed entity, acquired Blendjet's assets, including its website, social media accounts, trademarks, patents and inventory. Blendtec then brought the instant case.

Blendjet's lawyers withdrew from the 2021 Action. Thereafter, Blendjet failed to comply with the Court's Order that new counsel file notices of appearance, and the 2021 Action was dismissed without prejudice so that Blendtec could pursue its claims of trademark infringement (against Blendjet and MavorCo) and successor liability (against MavorCo) in this action. *See* 2021 Action at ECF 219-1. Pursuant to the Court's Order, discovery from the 2021 Action is available in this Action. *See id*. at ECF 215. Blendjet is unrepresented in this action and has defaulted. *See* ECF 50 (Default Certificate).

On June 23, 2025, Blendtec filed under seal a supplemental brief in support of its preliminary injunction motion that attached documents Blendjet produced in the 2021 Action,

---

[1] A class action suit is pending against Blendjet, Mr. Pamplin, and MavorCo (on a theory of successor liability), related to the Blendjet product deficiencies and recall. *See* ECF No. 77 filed in *Rittenhouse v. Blendjet*, Case No. 2:23-cv-1906, Eastern District of California ("Class Action").

1

including the twelve at issue in this Motion. *See* ECF 72. On July 9, 2025, MavorCo advised Mr. Pamplin, Blendjet's former CEO, that MavorCo believed some of the documents may be privileged and prodded Blendjet to "assert privilege over these documents or otherwise claw[] these back." **Exh. 1**. On July 14, 2025, Mr. Pamplin replied to Mavorco stating that the documents "*may be* protected by the attorney-client privilege, common interest privilege, and/or the work product doctrine" and that he would "like the parties to withdraw these . . . while I take steps to confer with my attorneys about *whether they are subject to any privilege*." **Exh. 2** (emphasis added).² Blendtec responded to Mr. Pamplin that same day, requesting that he state his authority for asserting the privilege on behalf of Blendjet, identify Blendjet's lawyers, and advise as to when Blendjet's lawyers would enter a notice of appearance. *Id*. Mr. Pamplin has not responded further. MavorCo has moved to maintain the documents under seal on the ground that they are privileged. *See* ECF 76-1 at 1; ECF 83 at 3-5; ECF 87 at 2-4; and ECF 88.

### III.  ARGUMENT

#### A.  Blendjet Has No Privilege to Assert

It is unlikely that BlendJet has a privilege to assert. In a recent declaration, Mr. Pamplin represented that "[a]fter the foreclosure, BlendJet ceased operations as an active business entity." *See* ECF 49-2 at ¶16. In addition, Mr. Pamplin has stated that BlendJet may not have "any post-foreclosure rights in or to the documents produced in the 2021 Action." **Exh. 3**. The Consumer Product Safety Commission is advising consumers that "Blendjet has gone out of business," and the recall remedy is no longer available.³ Thus, it does not appear that Blendjet has

---

² Although Blendtec does not believe that Blendjet properly invoked the privilege or triggered a claw-back, out of an abundance of caution, Blendtec promptly sequestered the documents at issue.

³  *See*  https://www.cpsc.gov/Recalls/2024/BlendJet-Recalls-4-8-Million-BlendJet-2-Portable-

2

any privilege to assert. *See, e.g., U.S. v. Cole*, 569 F. Supp. 3d 696, 700-01 (N.D. Ohio 2021) ("a dissolved or defunct corporation retains no privilege"); *U.S. v. Walters*, 2020 WL 1934803, at *2 (S.D. Miss. 2020) ("there is a presumption the attorney-client privilege is no longer viable after a business entity ceases to function"). "No real purpose would be served by continuing the privilege after operations cease, as the corporation would no longer have any goodwill or reputation to maintain." *Id*. For this reason alone, the Court should overrule the purported claim of privilege.

B.  **Mr. Pamplin Cannot Assert the Privilege on Behalf of Blendjet**

Even assuming Blendjet may assert the privilege, Mr. Pamplin may not assert the privilege on its behalf. "A former officer or director . . . does not have the right to review privileged documents of the corporation solely based upon [his] prior access to such documents during his tenure as a former officer or director with the corporation." *Barr v. Harrah's Ent. Inc.*, 2008 WL 906351, at *7 (D.N.J. 2008). *See also U.S. v. Cox*, 2015 WL 13741738, at *5 (M.D. Fla. 2015) ("while officers and directors have the authority to assert . . . the privilege, former officers and directors do not"); *Gibbs v. Stinson*, 2021 WL 4853575, at *7 (E.D. Va. Oct. 21, 2021) ("Displaced management . . . retain no control over the corporation's privilege, even as to statements that they might have made to counsel concerning matters within the scope of their corporate duties.") (citing cases). Mr. Pamplin cannot assert the privilege here, because he is admittedly the "<u>former</u> CEO of Blendjet." *See* ECF 49-2 (Pamplin Decl.) at ¶1 (emphasis added).[4] In addition, in his LinkedIn profile, Mr. Pamplin represents that he was the CEO of Blendjet until February of 2025, then acted

---

Blenders-Due-to-Fire-and-Laceration-Hazards.

[4] In an admission in the Class Action, Mr. Pamplin similarly represents that he is "Blendjet's <u>former</u> Chief Executive Officer." Class Action, ECF No. 80-1 at p. 1 (emphasis added).

under contract as an "Advisor" to Blendjet until May of 2025. **Exh. 4** at p. 2.[5] Thus. Mr. Pamplin does not have standing to assert the privilege, and no person with such standing has done so. For this additional and independent reason, the Court should grant this Motion and overrule the purported privilege claim.

### C.   In Any Event, Mr. Pamplin Failed to Trigger a Claw-Back

Beyond the foregoing legal barriers, Mr. Pamplin's one-paragraph email is insufficient to invoke the privilege or trigger a claw-back. "[T]he party making the [privilege] claim may notify any party that received the information of the claim <u>and the basis for it</u>." FRCP 26(b)(5)(B) (emphasis added). Mr. Pamplin stated only that the documents "<u>may be</u> protected" and that he would "take steps to confer with my attorneys about <u>whether</u> they are subject to any privilege." Exh. 2 (emphasis added). Further, Mr. Pamplin did not state which privilege applies to which document nor did he provide the basis for the claim. *See id*. *See, e.g., Terrell v. Cent. Wash. Asphalt, Inc.*, 2015 U.S. Dist. LEXIS 94047, at *17 (D. Nev. Jul. 20, 2015) (party "did not meet their initial burden of asserting the claim of privilege and the basis for it as required by Rule 26(b)(5)(B)") (claw-back not triggered). The privilege has not been invoked here, thus providing a third, independent reason to grant this Motion and overrule the purported privilege claim.

### D.   MavorCo Can Only Assert the Privilege if it is Blendjet's Successor

MavorCo appears to believe that it can assert the privilege on behalf of Blendjet. MavorCo argues that it needs to review the "full set of discovery from the 2021 Action" so that it will have "information about related documents, about the different people involved in the communications,

---

[5] Despite Mr. Pamplin's admissions, MavorCo has taken the position that "Blendjet (<u>through its Chief Executive Officer Ryan Pamplin</u>) has asserted the privilege." ECF 83 at 3; ECF 87 at 2.

4

and about related conversations that might have bearing on waiver issues." ECF 76-1 at 4. MavorCo can only assert the privilege on behalf of Blendjet, however, if it is Blendjet's successor. *See, e.g., Miskel v. SCF Lewis & Clark Fleeting LLC*, 2016 WL 3548438, at *5 (S.D. Ill. 2016) ("If the transaction is merely an asset transfer, privilege would not transfer; however, if a successor stands in the shoes of the predecessor, then the privilege, as it relates to the ongoing business, would transfer."). But to avoid successor liability for Blendjet's trademark infringement, MavorCo denies that it is Blendjet's successor. *See* ECF No. 43. MavorCo cannot have it both ways. It cannot raise or argue privilege issues on behalf of Blendjet and also deny that it is Blendjet's successor. Even if MavorCo were to acknowledge its status as Blendjet's successor and properly invoke the privilege, as shown below, the assertion would fail, because the documents are not privileged.

### E. Blendjet/MavorCo Cannot Show the Documents Are Privileged

"A party invoking the attorney-client privilege must show (1) a communication (2) between privileged persons, (3) made in confidence, (4) for the purpose of seeking, obtaining, or providing legal assistance." *Am. W. Bank Members v. State*, No. 2:16-cv-326-CW-DAO, 2022 WL 103736, at *2 (D. Utah Jan. 11, 2022). The "attorney-client privilege is narrowly construed". *Id*. This is so because the "privileges contravene the fundamental principle that the public . . . has a right to every man's evidence." *In re Qwest Comms.*, 450 F.3d 1185, 1185 (10th Cir. 2006). *See also In re Grand Jury Proceedings*, 616 F.3d 1172, 1183 (10th Cir. 2010) (The privilege "must be strictly constructed and accepted only to the very limited extent that . . . excluding relevant evidence has a public good transcending the normally predominant principle of utilizing all rational means for ascertaining truth."); *Adams v. Gateway, Inc.*, No. 2:02-cv-106-TS, 2003 WL 23787856, at *9 (D. Utah Dec. 30, 2003) (privilege strictly construed because "[l]itigants may use

secrecy to cover up machinations, to get around the law instead of complying with it"). "[T]he party seeking to invoke the privilege has the burden of establishing all of its essential elements . . . on a document-by-document basis." *Id*. at *14. That party must make a "clear showing" that the privilege applies. *Peat, Marwick, Mitchell & Co. v. West,* 748 F.2d 540, 542 (10th Cir. 1984).[6]

### 1. Documents for Which Blendjet Waived any Claim of Privilege

<u>Exhibit 4 (ECF 72-4, JET01339072)</u>: This Excel spreadsheet, created by Blendjet around October 31, 2018, is a ███████████████████████████████████████ ███████████████. Nothing on the face of the document indicates that it is privileged. Even assuming Blendjet can somehow claim this document is privileged, it waived the privilege by disclosing it to a third-party. *See* ECF 72-76 (Exh. 80 to Supplemental Brief) at JET01340168.

<u>Exhibit 70 (ECF 72-67, JET00016886)</u>: In this email, dated January 3, 2020, ████████ ██████████████████████████████████████████████████████████████████████ ████████████████████████████ a communication to a third party is not privileged, as Blendjet undoubtedly recognized when it produced this document. In fact, Blendtec submitted this very document to the Court in the 2021 Action in connection with Blendtec's motion to enforce the protective order. *See* 2021 Action at ECF No. 138-15. Blendjet did not assert the privilege with respect to this document at that time, and it cannot do so now.

<u>Exhibit 71 (ECF 72-68, JET00000505)</u>: This is a ██████████████████████ ███████████████. Blendtec's Interrogatory No. 15 specifically asked about this document. **Exh 5**. In its December 21, 2022, response, Blendjet provided substantive information related to the

---

[6] *See also Byrnes v. Empire Blue Cross Blue Shield*, 1999 WL 1006312, at *2 (S.D.N.Y. 1999) ("To satisfy that burden, the party cannot rely on conclusory assertions, but rather must proffer competent evidence to demonstrate that its privilege claims are well founded.").

document without asserting any privilege objection or claiming the document was privileged. *Id*. Blendjet has therefore waived any claim of privilege with respect to this document.

        **2.    Communications With Third Parties**

Exhibit 64 (ECF 72-64, JET00303731-38): On May 31, 2020, . No attorney-client relationship existed between Blendjet and the third-party and the email does not contain any privileged information. The third-party forwarded the publicly available ▮, which does not contain any privileged information, to Blendjet. A non-attorney Blendjet employee forwarded the email without comment to another non-attorney (Mr. Pamplin). This document is not privileged.

Exhibit 81 (ECF 72-77, JET00003717-20): In this November 2020 email, non-attorney employees of a third-party investment bank discuss with non-attorney Blendjet employees communications the bank had with a third-party individual ▮ This communication ▮ and is not made for the purpose of seeking legal advice nor does it reflect the requests or directions of legal counsel. This document is not privileged.

        **3.    Communications Between Non-Attorneys**

Without question, Mr. Pamplin was familiar with Blendjet's intellectual property matters and frequently communicated with Blendjet employees regarding his view of trademark rights and law. This does not, however, mean his communications to non-attorneys about Blendjet's intellectual property are privileged. "[T]he privilege does not cover communications between a non-attorney and a client that involve the conveyance of legal advice <u>offered by the non-attorney</u>").

*Byrnes v. Empire Blue Cross Blue Shield*, 1999 WL 1006312, at *4 (S.D.N.Y. 1999) (emphasis added). *See, e.g., HPD Labs., Inc. v. Clorox Co.*, 202 F.R.D. 410, 415 (D.N.J. 2001) (communications related to legal matters between non-attorney employees and in-house paralegal who had "developed significant familiarity with marketing and regulatory matters" were not privileged). Thus, statements by non-attorneys "are not privileged simply because [they] express legal advice." *Id.* at 416.[7] *See also Nat'l Waste Assocs. v. Lifeway Christian Resources*, 2022 WL 22895724, at *4 (M.D. Tenn. 2022) (legal "advice provided by an adept non-attorney" is not privileged); *Dyson, Inc. v. Bissell Homecare*, 2012 WL 13389973, at *1 (N.D. Ill. 2012) (where non-attorney "regularly acted independently in communicating legal advice to" employees, privilege did not apply).

"For a communication between non-attorney employees to be held privileged, it must be apparent that the communication from one employee to another was for the purpose of the second employee transmitting the information to counsel for advice or the document itself must reflect the requests and directions of counsel." *Strand v. Usana Health Sciences, Inc.* No. 2:17-cv-925-HCN-JCB, 2021 WL 3055608, at *2 (D. Utah Jul. 20, 2021). In other words, "a document passed between non-attorneys must reflect its integration into the legal advice communication chain to be eligible for attorney-client privilege protection." *Adams*, 2003 WL 23787856, at *11.

---

[7] Even assuming lawyers advised Blendjet with respect to trademark matters generally, that does not render privileged all communications related to Blendjet's trademarks. "Lawyer oversight is advisable in a complex business challenge, fraught with legal implications." *Adams*, 2003 WL 23787856, at *11. This "does not make a communication or document attorney-client privileged." *Id*. "Lawyer input may have been sought and given on factual scenarios and technical solutions." *Id*. "That also does not make a communication or document attorney-client privileged." *Id*. *See also HPD*, 202 F.R.D. at 417 ("A non-lawyer's statements do not automatically become privileged simply because, at some point, that person interacted with or learned from an attorney.").

Exh. 55 (ECF 72-55, JET00004174-78: In this November 2019 email chain, Ryan Pamplin provides his view on trademark law to a third-party vendor. This communication is not privileged simply because Mr. Pamplin provides his view on trademark matters.

Exh. 58 (ECF 72-58, JET00331201-03): This is a December 2020 communication between two non-lawyers in which Mr. Pamplin directs his non-attorney employee to submit a takedown request to Instagram. Again, this communication is not privileged simply because Mr. Pamplin provides his opinion that a third-party "███████████████████."

Exh. 60 (ECF 72-60, JET00597934-35): In this January 2020 email, Mr. Pamplin tells non-attorney employees that Blendjet ████████████████████████████████ ██████████████████ This is not privileged.

Exh. 61 (ECF 72-61, JET01413298-09): This is an October 2022 chat message between non-attorney employees. This is not privileged simply because the employees were discussing publicly available aspects of ██████████████████ and expressing their independent views on it. Although one employee states that she has "██████████████████," she does not reveal any communications that she had with the lawyer, and there is no indication that this document was integrated "into the legal advice communication chain." *Adams*, 2003 WL 23787856, at *11. On the contrary, it appears that the employees did not want their messages to be shared. *See, e.g., id*. at JET01413301 ("██████████████████").

Exh. 62 (ECF 72-62, JET01356913-21): This is an October 2022 chat message between non-attorney employees. As before, this is not privileged simply because the employees were discussing publicly available aspects of ██████████████████ and expressing their independent views on the ████. The employees did not integrate this document into the legal

9

advice communication chain. On the contrary, the employees believed this was a private communication and did not intend for it to be shared at all, as one remarked that "█████████████████████████████████████████████████████████████████████████████████████"). *Id*. at JET01356917-18.

### 4. Non-Privileged Communications with Lawyers

"The mere fact that an attorney was involved in a communication does not automatically render the communication subject to the attorney-client privilege." *Am. W. Bank Members*, 2022 WL 103736, at *3. "The attorney must be acting in her capacity as a legal advisor . . . [and] the communication must relate to legal advice or strategy sought by the client." *Id*.

<u>Exhibit 56 (ECF 72-56)</u>: In an email dated April 22, 2020, ████████████████████████████████████████████████████ is not privileged. The document also ████████████████████████████████████████. Simply because Blendjet "█████████████████████████████████████████████████ ███████" the attorney, does not make this specific communication privileged.[8]

<u>Exhibit 57 (ECF 72-57, JET00405076-77)</u>: This March 2019 email chain discusses a third-party. This email does not disclose any confidential information and is related to Blendjet's routine takedown efforts. Although Mr. Pamplin states his lay person understanding of what he believes constitutes ████████," this does not make the document privileged.

## IV. CONCLUSION

For these reasons, the Court should grant this Motion.

---

[8] *See Citynet, LLC v. Frontier W. Va., Inc.*, 2022 WL 1433011, at *2 (S.D.W.V. May 5, 2022) (simply because "an email conveying a business decision made by non-lawyer personnel . . . .[m]ay require the input of an attorney to complete the directive does not make the email" privileged).

DATED this 21st day of July, 2025.

                DORSEY & WHITNEY LLP

                /s/ *Tamara L. Kapaloski*
                Brett Foster (#6089)
                Mark A. Miller (#9563)
                Tamara L. Kapaloski (#13471)
                *Attorneys for Plaintiff Blendtec Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on the 21st day of July, 2025, I electronically filed the foregoing with the Clerk of Court using the Court's CM/ECF system, which will send electronic notification to counsel of record.

/s/ Tamara L. Kapaloski