George Hofmann (10005)
Kathryn Tunacik (13363)
**Cohne Kinghorn, P.C.**
111 E Broadway 11th Fl
Salt Lake City, UT 84111
Tel: (801) 363-4300
Fax: (801) 363-4378
ghofmann@ck.law
ktunacik@ck.Law

Lucy Jewett Wheatley (*Pro Hac Vice*)
Claire Hagan Eller (*Pro Hac Vice*)
**McGuireWoods LLP**
800 East Canal Street
Richmond, VA 23219
Tel: (804) 775-4320
Fax: (804) 698-2130
Email: lwheatley@mcguirewoods.com
Email: celler@mcguirewoods.com

Kyle S. Smith (*Pro Hac Vice*)
**McGuireWoods LLP**
501 Fayetteville St., Ste. 500
Raleigh, NC 27601
Tel: 919-835-5966
Fax: 919-755-6607
Email: ksmith@mcguirewoods.com

Jessica S. Maupin (*Pro Hac Vice*)
**McGuireWoods LLP**
2601 Olive Street, Suite 2100
Dallas, TX 75201
Tel: (214) 932.6400
Fax: (214) 932.6499
Email: jmaupin@mcguirewoods.com

*Attorneys for Defendants*
*MavorCo Holdings, LLC; MavorCo IP, LLC; and MavorCo Operations, LLC*

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| **BLENDTEC INC.**, a Utah Corporation<br><br>   *Plaintiff*,<br><br>v.<br><br>**BLENDJET INC.**, a Delaware corporation, **MAVORCO HOLDINGS, LLC**, a Delaware limited liability company, **MAVORCO IP, LLC**, a Delaware limited liability company, and **MAVORCO OPERATIONS, LLC**, Delaware limited liability company,<br><br>   *Defendants*. | **MAVORCO'S SUPPLEMENTAL BRIEF IN OPPOSITION TO PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION**<br><br>Civil No. 2:25-cv-00096-RJS-DBP<br><br>Judge Robert J. Shelby<br><br>Magistrate Judge Dustin B. Pead |

Even with the benefit of supplemental briefing and use of the discovery from Defendant BlendJet, Plaintiff Blendtec falls far short of meeting its heavy burden to support issuance of a preliminary injunction against MavorCo. *O Centro Espirita Beneficiente Uniao Do Vegetal v. Ashcroft*, 389 F.3d 973, 975 (10th Cir. 2004) (movant seeking a disfavored mandatory preliminary injunction that alters the status quo must meet a heightened burden). Plaintiff fails to show the required element of irreparable harm, that the balance of harms or public interest weighs in its favor, or that it will likely prevail on the merits. These failures of proof each require that its motion be denied.

1. **Plaintiff Fails to Overcome its Fatal Delay and Cannot Show Irreparable Harm**

    a. <u>Blendtec's Seven-Year Delay Precludes a Preliminary Injunction</u>

Plaintiff has known about BLENDJET and the Swirl Logo for **roughly seven years** before seeking a preliminary injunction. Plaintiff conceded as much in its initial briefing, relying on documents in its possession since 2019 (*see, e.g.*, D.I. 26-6, 26-7). Further, Plaintiff has had constructive notice since BlendJet registered the BLENDJET trademark, also in 2019. *Coherent, Inc. v. Coherent Techs.*, Inc., 736 F. Supp. 1055, 1065 (D. Colo. 1990), *aff'd*, 935 F.2d 1122 (10th Cir. 1991). Documents from the previous litigation confirm Plaintiff's lengthy delay and explain why it did not seek a preliminary injunction before now: in 2021 Plaintiff **deliberately chose not to pursue any enforcement action against BlendJet** because ▮▮▮▮▮▮▮▮▮▮ Ex. 1 (BLENDTEC125015) (▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮).

Plaintiff's supplemental brief is silent on this delay, offering no explanation—let alone justification—for its sudden urgency in seeking a preliminary injunction against MavorCo, despite having known about BlendJet and making the calculated decision not to bring any trademark

1

enforcement action against BlendJet for years. *See generally* D.I. 70. This delay is fatal to Plaintiff's requested relief, however, as preliminary injunctions are appropriate where "there is an urgent need for speedy action", and delays of even a few months (let alone years) indicate such "drastic, speedy action" is unnecessary. *Kim v. CIMG Inc.*, 2025 WL 833074 (S.D.N.Y. Feb. 13) (internal quotations omitted)*; see Sebo Am., LLC v. K&M Housewares & Appliances Inc.*, No. 1:20-cv-03683, 2021 U.S. Dist. LEXIS 71414, at *4 (D. Colo. Mar. 18) ("year-plus delay" precluded irreparable harm finding); *Occhipinti v. Annucci*, No. 19-CV-6651-FPG, 2022 WL 1152842, at *2 (W.D.N.Y. Apr. 19) (denying preliminary injunction based on delay of less than three years and collecting similar cases).

    b.  <u>Plaintiff Cannot Demonstrate Future Reputational Harm</u>

While silent on delay, Plaintiff tries to show irreparable harm by focusing on the now completed 2023 recall of BlendJet blenders and years-old isolated consumer complaints. BT Opening Br. (D.I. 25) at 25-28; BT Supp. Br. (D.I. 70) at 6-7, 9-10. However, this evidence, at most, relates to harm allegedly caused at least two years ago by BlendJet, and does not implicate the blenders currently sold by MavorCo. *See* BT Ex. 75[1] at 6 (discussing BlendJet product recall covering certain sales from 2020 to 2023). Plaintiff cannot rely on BlendJet's past conduct to prove that an injunction will prevent future irreparable harm. And Plaintiff does not offer a shred of evidence as to any quality concerns with the blenders MavorCo sells **currently**, much less establish that MavorCo's **future sales** will cause harm. A preliminary injunction is not warranted to remedy alleged past reputational harm. *Schrier v. Univ. Of Co.*, 427 F.3d 1253, 1267 (10th Cir. 2005) ("The purpose of a preliminary

---

[1] References to "BT Ex. __" are to the exhibits filed by Plaintiff in support of its supplemental brief (ECF 70). After Plaintiff filed them, BlendJet clawed back some of those exhibits (BT Exs. 4,55-58, 60-62, 64, 70-71, and 81) as privileged. As required by FRCP 26(b)(5)(B), MavorCo has refrained from using or reviewing the clawed-back exhibits and so does not address them here.

injunction is not to remedy past harm but to protect plaintiffs from [future] irreparable injury . . . ."); *Dalkita, Inc. v. Distilling Craft, LLC*, 356 F. Supp. 3d 1125, 1135 & n.2 (D. Colo. 2018) (denying preliminary injunction where movant did not show "an adverse impact on its reputation or customer base *while this case is pending*" or that harm was likely to recur).

In addition, Plaintiff fails to show that it has a good reputation for quality and safety that could be damaged by association with BlendJet. *Jacki Easlick, LLC v. CJ Emerald*, No. 2:23-CV-2000, 2024 WL 310125, at *8 (W.D. Pa. Jan. 26, 2024) (denying preliminary injunction and holding that "[p]laintiffs must demonstrate that they have a reputation for quality that could be damaged before asserting [] alleged infringing conduct will cause them irreparable harm."). In fact the evidence shows otherwise, with consumers consistently complaining that Blendtec blenders are **poor quality** and **dangerous,** including statements that:

- Plaintiff's blenders ▓▓▓ (Ex. 2 (BLENDTEC331000));
- Plaintiff's blenders ▓▓▓ (Ex. 3 (BLENDTEC172715); Ex. 4 (BLENDTEC141427));
- Blendtec-brand blenders ▓▓▓ (Ex. 5 (BLENDTEC026252)); and
- ▓▓▓ Plaintiff's blenders ▓▓▓ (Ex. 6 (BLENDTEC278882-907) (collecting ▓▓▓)).

*See also* Ex. 7 (BLENDTEC181483-585) at 8-10 (▓▓▓). Plaintiff's professed concerns—"it takes 20 years to build a reputation and just minutes to ruin it" (BT Opening Br. (ECF 25) at 27)—are overblown given its poor track record on quality, and do not justify emergency injunctive relief.

3

c. Plaintiff's Inability to Show Irreparable Harm is Fatal

Because Plaintiff fails to establish irreparable harm the Court need not evaluate the other elements required for a preliminary injunction—Blendtec's motion should be denied on this ground alone. *First W. Cap. Mgmt. Co. v. Malamed*, 874 F.3d 1136, 1141 (10th Cir. 2017) (irreparable harm is most important requirement for preliminary injunction; movant must establish this element before courts should consider other requirements); *Harley's Hope Found. v. Harley's Dream*, Civil Action No. 22-cv-0136-WJM-STV, 2022 U.S. Dist. LEXIS 71750, at *7–8 (D. Colo. Apr. 19, 2022) (any presumption of irreparable harm rebutted by delay in seeking preliminary injunction).

2. **The Evidence Confirms that Plaintiff's Claimed Trademarks are Weak and Unprotectible, Meaning Plaintiff Will Not Succeed on the Merits.**

Plaintiff's motion should be denied on the independent ground that it has not shown it will likely succeed in proving enforceable trademark rights in BLENDTEC and the swirl logo.

First, "**Blendtec**" is generic for the products Plaintiff sells. Products sold under the BLENDTEC brand are exactly what they are named—**blend tec**hnology.[2] *E.g.*, Ex. 10 (ED001413) at 25 (marketing plan for Blendtec focusing on emphasizing "tech" features of Blendtec's blenders as key differentiator). Unsurprisingly, Plaintiff's documents are replete ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. *E.g.*, Ex. 7 (BLENDTEC181483-585); Ex. 11 (BLENDTEC006932) at 4; Ex. 12 (BLENDTEC042785) (▮▮▮▮▮▮▮▮

---

[2] Blendtec's use of "tec" rather than "tech" cannot save the mark. Neither ▮▮▮▮ ▮ consistently distinguish these two abbreviations for "technology", as " ▮▮▮▮▮▮▮▮▮▮ *E.g.*, Ex. 8 (BLENDTEC112559); Ex. 9 (BLENDTEC588373) (▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮). This common misspelling simply confirms that the -TEC component is an abbreviation for "technology".

4

███████████████████████████████████████████████); Ex. 13 (BLENDTEC000646) at BLENDTEC000652 (███████████████████████████████████); *id.* at BLENDTEC000655 (███████████); Ex. 14 (ED002096) at 3 (product catalog discussing with repeated mentions of its products' "blending" and "technology"). BLENDTEC is generic because it simply combines two generic terms, making it unprotectable or at a minimum conceptually weak. *Interprofession du Gruyere v. U. S. Dairy Exp. Council*, 61 F.4th 407, 423-25 (4th Cir. 2023) (evidence that mark commonly used to identify product rather than source "favors a finding that the term is generic"); *Braun Inc. v. Dynamics Corp. of Am.*, 975 F.2d 815, 827 n.25 (Fed. Cir. 1992) (blenders' functional qualities are generic and descriptive as matter of law).

Plaintiff's own marketing survey confirms that the mark is commercially weak as well. In 2022, Plaintiff commissioned Brigham Young University to conduct a survey on their branding compared to competitors (the "BYU Survey"). *See* Ex. 10 (ED001413). The BYU Survey included a short section specifically testing Blendtec's brand recognition. Even as the initial results came in, the BYU team flagged to Blendtec "███████████████████████████████████". Ex. 15 (BYU00030) at 2. And the final results confirmed this: only 10 out of 1,022 people independently identified Blendtec on unaided recall, and when presented with a list of blender brands, only 9.5% recognized Blendtec as a **brand**. Ex. 10 (ED001413) at 14. The conclusion: **Blendtec has "low recognition" among consumers.** *Id.* at 15. *See T. Marzetti Co. v. Roskam Baking Co.*, No. 2:09-CV-584, 2010 WL 2162903, at *4 (S.D. Ohio May 27), *aff'd,* 680 F.3d 629 (6th Cir. 2012) (where survey respondents did not name New York Brand The Original Texas Toast when asked to identify crouton brands, court found survey showed the claimed mark was weak, and ultimately concluded the mark was generic).

Second, Plaintiff's claimed **swirl logo** fares no better. Plaintiff's marketing professionals conceded as much as recently as November 2022, ███████████████████████████ ███████████████████. Ex. 16 (BLENDTEC005614) (███████████████ ████████████████████████████████████████████████████ ████████████████████████████████). Even more damning, Plaintiff has ████████████████████████████████████████████████████ ███████████████████████████████████████████████. Ex. 17 (BLENDTEC030263) at BLENDTEC030266. Plaintiff's claimed swirl logo is so weak that ████████ ██████████████. And the swirl logo is further weak (if not entirely unprotectable) because it simply depicts an essential function of Blendtec blenders—as put by Plaintiff's marketers, the swirl "communicates blending in an abstract, pictorial manner." Ex. 18 (ED007029) at 13.

The weakness of Plaintiff's claimed trademarks mean it is unlikely to succeed on the merits—its rights are either unenforceable or too weak to cause confusion. *Donchez v. Coors Brewing Co.*, 392 F.3d 1211, 1218 (10th Cir. 2004) ("beerman" portion of claimed "Bob the Beerman" trademark was generic); *Water Pik, Inc. v. Med-Systems, Inc.*, 746 F.3d 995, 1143 (10th Cir. 2013) ("Sinu*Cleanse*" conceptually weak because it combined common prefix ("sinu"), which was "essentially generic" for product, with descriptive word ("cleanse") that conveyed product's purpose).

3. **The Evidence Shows Other Factors Weigh Against Confusion, Confirming that Plaintiff Will Not Succeed on the Merits**

    a. The Evidence Shows BlendJet's Good Faith Intent

Plaintiff devotes much of its Supplemental Brief to arguing that BlendJet and its founder Ryan Pamplin adopted BLENDJET with a bad "intent". Supp. Br. at 1-2. They point to exhibits wherein:

- Mr. Pamplin talks about the importance of branding and advises that companies should

- select an "excellent" name, "get really creative", and strive for "memorability", and further recognizes that a mark constitutes an "investment" and an "asset" (BT Exs. 1, 2);

- Mr. Pamplin included Blendtec on a list of 37 companies that might want to acquire BlendJet (BT Ex. 5 at 3);

- BlendJet applied to register a trademark with the United States Patent and Trademark Office ("USPTO") (BT Ex. 3); and

- BlendJet personnel noted that Blendtec's ads appeared to be copying BlendJet's products and marketing (BT Ex. 6).

*Id.* Blendtec's argument—that this evidence shows BlendJet's intent to confuse—fails.

Intent for purposes of trademark infringement is an intent to cause consumer confusion. *Water Pik*, 726 F.3d at 1157 (describing relevant intent as intent to benefit from the reputation or goodwill of the plaintiff). Plaintiff's cited evidence does not show any such intent to confuse. **First**, Mr. Pamplin's branding advice (BT Exs. 1, 2) that companies should be "creative" and find a "memorable" brand are incompatible with copying a competitor, since the resulting mark would be neither creative nor memorable. **Second**, even if BlendJet thought that Plaintiff wanted to purchase the company (BT Ex. 5 at 3), that does not mean BlendJet copied its trademark—the referenced list contains 36 other companies, and Plaintiff is not arguing that BlendJet tried to simultaneously copy all of those companies' trademarks.

**Third**, BlendJet obtaining federal trademark registration (BT Ex. 3) indicates a lack of intent to confuse. By applying for a registration, BlendJet triggered an examination process that assessed whether BlendJet's proposed trademark was confusingly similar to other marks (such as Plaintiff's marks). *See, e.g.*, *B & B Hardware, Inc. v. Hargis Indus., Inc.*, 575 U.S. 138, 143-45 (2015) (describing trademark examination process, which includes evaluation as to likelihood of confusion with other registered marks). Offering its trademark up for examination and getting it registered

7

shows that BlendJet had no intent to confuse, and is a clear sign of good faith, not bad faith. By the same token, MavorCo's reliance on its ownership of a **registered BLENDJET trademark** shows its good faith intent. *See Knaack Mfg. Co. v. Rally Accessories, Inc.,* 955 F. Supp. 991, 1004 (N.D. Ill. 1997) (finding accused infringer acted with "utmost good faith" when it knew of plaintiff's trademark but reasonably relied on USPTO determination during registration process that there was no likelihood of confusion). **<u>Finally</u>**, Plaintiff's citation to an exchange between BlendJet personnel who thought Plaintiff might be copying BlendJet ads (BT Ex. 6) is baffling, as this suggests any confusion is due to Plaintiff's own misleading advertising, and not any wrongful intent by BlendJet.

    b.  <u>Plaintiff Concedes that the Parties Sell Distinct Products</u>

The BLENDTEC and BLENDJET marks are used with distinct products that are unlikely to be confused. This point has been conceded[3] by Plaintiff—▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Ex. 1 (BLENDTEC125015). Plaintiff's efforts to argue the opposite position now should be rejected.

Finally, Plaintiff's pricing cements that it targets completely different consumers. Plaintiff admits that BlendJet's products retail at a much lower price point—Plaintiff's documents show that they "▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. Ex. 12 (BLENDTECH042785). That Plaintiff's lowest-end product is quadruple the price of BlendJet's products shows confusion is unlikely. *See* Ex. 19 (ED01872) at 21 (marketing presentation noting Blendtec "doesn't have a value-priced" product line).

---

[3] Plaintiff's statement that BlendJet is not a competitor constitutes an admission, as the Blendtec executive was speaking directly about BlendJet. This admission is in sharp contrast to the so-called "admissions" on which Plaintiff tries to rely. *See infra*, § 4.

8

  c. <u>Plaintiff Misrepresents the Import of its Purported Confusion Evidence</u>

Plaintiff's purported evidence of actual confusion is unpersuasive, because despite over 10 million units sold (ECF 49-2 ¶ 6) and full discovery, Plaintiff's evidence amounts to isolated mistakes and not sustained source confusion. *See D & J Master Clean, Inc. v. Servicemaster Co.*, 181 F. Supp. 2d 821, 828 (S.D. Ohio 2002) (holding a weekly misdirected call rate of only 0.36% did not show actual confusion.) For example, Plaintiff relies heavily on apparently autotranscribed calls between Blendjet and its customers. But the defect-riddled transcripts are plainly inaccurate. *See, e.g.*, BT Ex. 28 at JET00051003 (nonsense transcription such as "I haven't been with Moscow to see"); BT Ex. 39 at JET00050838 (references "Blendtec", "Blanchet", and "blind jet"); BT Exs. 38, 40-41 (transcripts with nonsense). While Plaintiff asserts that transcribed mentions of "Blendtec" show confusion, the obvious errors make it impossible to say that transcript references to "Blendtec" prove a caller actually said "Blendtec." Further, the transcripts purport to show the same speakers referring to both "Blendtec" and "BlendJet" during a single call. As it is unlikely the same speaker would call the same company by two different names in the same call, this also strongly suggests a transcription error. BT Ex. 28 at JET00051003 (references to "blender" as company name, "Blend Tech", "blood jet", and "blend jet"); BT Ex. 38 at JET00050443 (references "Blendtec" and "blend jet.com"). These transcripts are unreliable, inadmissable, and should be disregarded. F.R.E. 901(a), 801(c) and 1002.

  Further, while Plaintiff claims that customers mistakenly reached out to Plaintiff instead of BlendJet, they omit key context: Plaintiff has ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ These self-described ▮▮▮▮▮▮▮▮▮▮▮▮ (Ex. 20 (BLENDTEC022374)) indicate that Plaintiff is intentionally trying to trick prospective BlendJet customers by serving up a link to the Plaintiff's website when customers search "BlendJet." *See* Ex. 21 (BLENDTEC302896-

9

898) ( ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ).[4] Evidence of consumer mistakes engineered by Plaintiff is not probative of actual confusion as to source. *See Therma-Scan, Inc. v. Thermoscan, Inc.*, 295 F.3d 623, 636 (6th Cir. 2002) (holding that misdirected emails attributable to clicking on the wrong search results were not probative of actionable source confusion).

4. **The Supposed "Admissions" Described in Plaintiff's Supplemental Brief Are Nothing More than Attorney Ipse Dixit.**

Finally, Plaintiff tries to paint statements by BlendJet personnel as "admissions" when they are not. First, the supposed "admissions" amount to statements from Ryan Pamplin about his understanding as to the law or his belief that other brands infringe BLENDJET. BT Supp. Br. at 5-8. But Mr. Pamplin is not an attorney, and in these cited statements he is not discussing Blendtec specifically. Second, Mr. Pamplin making the unremarkable observation that similar trademarks may infringe the BLENDJET mark is not an admission that infringement has occurred here. Third, a party cannot "admit" to the law because that is the sole province of the Court. *See Scottsdale Ins. Co. v. McGrath*, No. 19-CV-7477 (LJL), 2024 WL 4512210, at *5 (S.D.N.Y. Oct. 17, 2024) (party cannot "admit" to what the law is). In all, Plaintiff's emphasis on Mr. Pamplin's so-called "admissions" is no substitute for actual evidence.

\* \* \*

For the foregoing reasons, as well as those set forth in its prior brief, MavorCo respectfully requests that Plaintiff's Motion be denied.

---

[4] Even more alarming, Plaintiff's documents show that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Ex. 22 (BLENDTEC152306).

Respectfully submitted, this 23rd day of July, 2025.

*/s/ Lucy Jewett Wheatley*
George B. Hofmann, IV (10005)
Kathryn Tunacik (13363)
**COHNE KINGHORN, P.C.**
111 E Broadway 11th Fl
Salt Lake City, UT 84111
Tel: (801) 363-4300
Fax: (801) 363-4378
Ghofmann@cohnekinghorn.Com
Ktunacik@ck.Law

Lucy Jewett Wheatley (*Pro Hac Vice*)
Claire Hagan Eller (*Pro Hac Vice*)
**MCGUIREWOODS LLP**
800 East Canal Street
Richmond, VA 23219
Tel: (804) 775-4320
Fax: (804) 698-2130
Email: lwheatley@mcguirewoods.com
Email: celler@mcguirewoods.com

Kyle S. Smith (*Pro Hac Vice*)
**MCGUIREWOODS LLP**
501 Fayetteville St., Ste. 500
Raleigh, NC 27601
Tel: 919-835-5966
Fax: 919-755-6607
Email: ksmith@mcguirewoods.com

Jessica S. Maupin (*Pro Hac Vice*)
**MCGUIREWOODS LLP**
2601 Olive Street, Suite 2100
Dallas, TX 75201
Tel: (214) 932.6400
Fax: (214) 932.6499
Email: jmaupin@mcguirewoods.com

*Attorneys for Defendants*
*MavorCo Holdings, LLC; MavorCo IP, LLC; and MavorCo Operations, LLC*

11

## CERTIFICATE OF SERVICE

      I hereby certify that on July 23, 2025, I electronically filed the foregoing document with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to counsel of record for all parties to this action registered with the CM/ECF system.

Brett Foster (#6089)
Mark Miller (#9563)
Tamara Kapaloski (#13471)
**DORSEY & WHITNEY LLP**
111 S. Main Street, Suite 2100
Salt Lake City, UT 84111
Telephone: (801) 933-7360
Facsimile: (801) 933-7373
foster.brett@dorsey.com
miller.mark@dorsey.com
kapaloski.tammy@dorsey.com

*Attorneys for Plaintiff Blendtec Inc.*

                                                */s/ Lucy Jewett Wheatley*
                                                Lucy Jewett Wheatley