RAFAEL A. SEMINARIO [10250]
STEVEN H. BERGMAN [13641]
RICHARDS BRANDT MILLER NELSON
111 East Broadway, Suite 400
Salt Lake City, Utah, 84111
Telephone: (801) 531-2000
Fax No.: (801) 532-5506
Email: Rafael-Seminario@rbmn.com
      Steven-Bergman@rbmn.com
*Attorneys for Defendant BlendJet Inc.*

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| BLENDTEC INC., a Utah Corporation,<br><br>*Plaintiff*,<br><br>v.<br><br>BLENDJET INC., a Delaware corporation, MAVORCO HOLDINGS, LLC, a Delaware limited liability company, MAVORCO IP, LLC, a Delaware limited liability company, and MAVORCO OPERATIONS, LLC, Delaware limited liability company,<br><br>*Defendants*. | **BLENDJET INC.'S OPPOSITION TO PLAINTIFF'S FRCP 26(b)(5)(B) MOTION**<br><br>Civil No. 2:25-cv-00096-RJS-DBP<br><br>Judge Robert J. Shelby<br><br>Magistrate Judge Dustin B. Pead |

## INTRODUCTION

Plaintiff Blendtec Inc. ("Blendtec") seeks to retain and use BlendJet Inc.'s ("BlendJet") privileged attorney-client and attorney work-product communications, notwithstanding that (1) the documents were produced under a court-entered Standard Protective Order with a Rule 502(b)-compliant clawback provision; (2) Blendtec concedes the disclosure was inadvertent; and (3) BlendJet promptly invoked its privilege rights under Rule 26(b)(5)(B).

Under Utah Rule of Professional Conduct 4.4(b), Blendtec was required to alert BlendJet upon discovering attorney-client privileged documents among BlendJet's documents. Blendtec not only failed to alert BlendJet, but included privileged documents in its Supplemental Brief in Support of Its Preliminary Injunction Motion. Upon eventually learning of the disclosure, BlendJet—then unrepresented—responded within days through its corporate director, identified the specific documents, and requested withdrawal. Courts regularly uphold clawbacks where, as here, the notice unambiguously asserted privilege and identified the materials.

To argue that the documents are not privileged, Blendtec ignores settled law extending privilege to agents, to internal relays of counsel's advice, and to mixed-purpose communications whose primary aim is legal. The Court should affirm BlendJet's privilege.

## BACKGROUND

**A.      BlendJet Produces Documents**

For more than a decade, BlendJet Inc. ("BlendJet") sold blenders under the trademark BLENDJET (U.S. Reg. No. 5,750,510) and the swirl design trademark (U.S. Reg. No. 5,950,040). As defendant in *Blendtec v. BlendJet*, No. 21-668 (D. Utah), BlendJet collected, reviewed, and produced thousands of documents under the Court's Standard Protective Order, the protective order governing that case. Paragraph 10 of the Standard Protective Order provides that.

> The parties hereto also acknowledge that regardless of the producing party's diligence an inadvertent production of attorney-client privileged or attorney work product materials may occur. In accordance with Fed. R. Civ. P. 26(b)(5) and Fed. R. Evid. 502, they therefore agree that if a party through inadvertence produces or provides discovery that it believes is subject to a claim of attorney-client privilege or attorney work product, the producing party may give written notice to the

– 1 –

> receiving party that the document or thing is subject to a claim of attorney-client privilege or attorney work product and request that the document or thing be returned to the producing party. The receiving party shall return to the producing party such document or thing.

U.S. District Court for District of Utah, Forms.

### B.     Blendtec Files Privileged Documents on the Record

On June 23, 2025, Blendtec filed its Supplemental Brief in Support of its Preliminary Injunction Motion, Docket No. 70. The exhibits to the Supplemental Brief included facially privileged documents. *See id.* Blendtec did not contact BlendJet before filing these documents.

### C.     BlendJet Claws Back Privileged Exhibits

On July 9, 2025, the defendants wrote to BlendJet, notifying BlendJet under the Utah Rules of Professional Conduct that Blendtec's exhibits to its Supplemental Brief included documents that "may be protected by the attorney-client privilege, common interest privilege, and/or the work product doctrine," including at least Exhibits 4, 55, 56, 57, 58, 60, 61, 62, 64, 70, 71, and 81 (the "Exhibits") to Blendtec's Supplemental Brief. Docket No. 91-1. BlendJet did not have counsel at the time, but did not sleep on its rights: on July 14, 2025, its director responded to defendants' letter, stating that "[t]he exhibits attached to your letter do appear to be privileged, and I would like the parties to withdraw" the potentially privileged documents. Docket No. 91-2. BlendJet's request triggered the protections of FRCP 26(b)(5)(B) and paragraph 10 of the protective order in this action. The response further informed both parties that BlendJet was in the process of retaining counsel regarding its claim of privilege.

### D.     BlendJet Obtains Counsel

BlendJet diligently sought counsel and retained the undersigned on August 7, 2025. Once represented, BlendJet contacted Blendtec to obtain the unredacted Motion and to request a brief extension as a matter of professional courtesy. Blendtec provided the unredacted Motion to the undersigned today at 10:45 a.m. Using the short time available while BlendJet was represented by counsel, this Opposition responds to the redacted Motion available on the docket.

# ARGUMENT

## I. The Documents are Subject to the Attorney-Client Privilege

Plaintiff relies on sweeping category labels—"communications with third parties," "between non-attorneys," "business, not legal" (Mot. at 6, 7, 10)—without tying those labels to the actual content and context of each communication. Those broad descriptions do not rebut BlendJet's analysis of each document against the elements of privilege.

After review by counsel, BlendJet does not assert that the attorney-client privilege applies to Exhibits 4, 70, 71, or 81. The remaining contested exhibits, including Exhibits 55, 56, 57, 58, 60, 61, 62, 64, and 81, are privileged because they reflect the provision of legal advice from BlendJet's outside counsel, Patrick McGill, and communications between the internal legal team including Jordan Carlson and other non-legal employees in service of such advice or to request further advice. The substance of the advice covers a variety of matters, primarily relating to the enforcement of BlendJet's intellectual property against third party infringers. These questions are legal in nature, and warrant privilege protection.

Blendtec's suggestion that documents addressing factual subject matter cannot be privileged misstates the doctrine. The privilege attaches to communications made for the purpose of obtaining or providing legal advice, even if the underlying facts are discoverable. *See Upjohn Co. v. United States,* 449 U.S. 383, 395-96 (1981) ("A fact is one thing and a communication concerning that fact is an entirely different thing."). It is well-established in this Circuit that "business positions may be communicated to an attorney for legal action or advice." *Lifewise Master Funding v. Telebank*, 206 F.R.D. 298, 301 n.1 (D. Utah 2002) (citing *Motley v. Marathon Oil Co.*, 71 F.3d 1547 (10th Cir. 1995); *Motley v. Marathon Oil Co.*, 71 F.3d 1547 (10th Cir. 1995 ("matters for attorney preparation were not for business advice"). The Court must therefore assess each challenged document, not dismiss privilege because they include discussion of product features or public statements.

### A. Privilege Protects Communications with Outside Counsel

Communications between the officers of a company and its outside counsel are at the heart of the attorney-client privilege. *See Upjohn*, 449 U.S. 383. Blendtec's inclusion of such documents in its supplemental briefing, and continued refusal to treat these facially privileged documents as privileged, undermine Blendtec's claims about the remaining documents at issue.

**Exhibit 56** is a confidential communication between BlendJet employees, including then-CEO Ryan Pamplin, and BlendJet's outside counsel at Esplin & Associates. ██████████ ████████████████████████████████████████████ ████████████████████████████████████ *See RTC Indus., Inc. v. Fasteners for Retail, Inc.*, No. 17-3595, 2020 WL 1433828, at *4 (N.D. Ill. Mar. 24, 2020) (finding that communications between employees and outside counsel "regarding legal advice regarding potential intellectual property protection and strategy" were privileged).

**Exhibit 57** is a confidential communication between BlendJet's then-CEO Ryan Pamplin and BlendJet's outside counsel ████████████████████████ ████████████████████████████████████████████ ████████████████████████████████████████████ ████████████████████████████████. It is privileged.



### B. Communications From and Among Legal Team in Furtherance of Attorney Advice Are Privileged

Blendtec advocates a privilege so limited that it excludes exchanges with attorneys and legal staff acting on their behalf. Mot. at 9 (citing Ex. 58, 60, 61). This is an excessive limitation on the scope of privilege. *See Baldwin v. United States*, No. 11-2033, 2012 WL 1577501, at *6 (D. Colo. May 4, 2012) ("Furthermore, communications between the client and representatives of the attorney, such as paralegals or secretaries, are also privileged"); *United States v. Gumbaytay*, 276 F.R.D. 671, 679 (M.D. Ala. 2011) (holding that the attorney-client privilege extends to communications involving a paralegal acting under the direction of an attorney).

– 4 –

**Exhibits 58 and 60** are both confidential communications between BlendJet's Director Ryan Pamplin and Jordan Carlson, BlendJet's IP Specialist who assisted Patrick McGill, BlendJet's counsel for intellectual property matters. The fact that McGill did not author or receive this communication does not change its privileged status. *See Williams v. Sprint/United Mgmt. Co.*, No. 03-2200, 2006 WL 266599, at *2 (D. Kan. Feb. 1, 2006) (finding attorney-client privilege does not require an attorney to have either authored or received the document in order to maintain the privilege, "what is vital to the privilege is that the communication be made in confidence for the purpose of obtaining legal advice"). ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

**Exhibit 61** includes privileged communications between two BlendJet employees (Chris Heath and Jordan Carlson), and should be redacted accordingly. First, Carlson expressly states that her knowledge emanated from conversations with BlendJet's counsel, Patrick McGill, about legal ramifications of an event. *See* Ex. 61 at JET01413299 (▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓. ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓. *Id*. at JET01413305. Likewise, ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓. *Id*. at JET01413300. ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓. *Id*. at JET01413307. These communications from McGill were for the purpose of providing legal advice to BlendJet relating to its contracts and litigation with Blendtec. They are privileged. *See Serenity Invs. LLC v. Sun Hung Kai Strategic Cap. Ltd.*, No. 22-1623, 2024 WL 517870, at *4 (N.D. Cal. Feb. 9, 2024) (advice learned by employees during communications with counsel were protected by the attorney-client privilege).

      **C.**    **Internal Communications Among Non-Lawyers Remain Privileged When They Convey or Implement Legal Advice**

Privilege is not confined to emails authored by lawyers and legal staff. "Defendants' contention that the messages cannot be privileged unless they specifically convey advice of counsel is incorrect. The standard is whether the communications were made for the purposes of

obtaining legal advice." *Hicks v. Milton*, No. 24-176, 2024 WL 2832542, at *4 (D. Utah June 4, 2024) ("Peter and Lucas, as the sole members of the LLC, must be able to discuss topics about which they need to seek legal advice, without waiving privilege."). Internal exchanges among non-lawyer employees are protected when they transmit or discuss counsel's advice as part of the counsel-client chain because those communications would reveal the substance of legal advice. *See United States v. ChevronTexaco Corp.*, 241 F. Supp. 2d 1065, 1077 (N.D. Cal. 2002). The question is whether the communication is part of obtaining, relaying, or implementing legal advice, not the sender's job title. *Id*.

**Exhibit 55 (ECF 72-55):** This is a confidential communication between Pamplin and a contractor at a marketing agency acting as a "functional equivalent" to a BlendJet employee by handling BlendJet's marketing responsibilities. *See Horton v. United States*, 204 F.R.D. 670, 672 (D. Colo. 2002) ("the attorney-client privilege may extend to protect communications between the lawyers for a company and the company's independent contractor who is the 'functional equivalent of an employee'") (quoting *In re Bieter Co.*, 16 F.3d 929 (8th Cir. 1994)). ▮

▮

▮. *See* Ex. 55 at JET00004176

(▮); *In re Brand Name Prescription Drugs Antitrust Litigation*, No. 94 C 897, 1995 WL 557412 at *1 (N.D. Ill. Sept. 19, 1995) (ruling that document was privileged because it was "prepared at the request of AHP's attorneys for the purpose of enabling counsel to give legal advice").

**Exhibit 62** comprises privileged communications between three BlendJet employees (Chris Heath, Samantha Carolei, and Heather Sims), and should be redacted accordingly. The communications in Exhibits 61 and 62 took place on the same date (October 7, 2022) at roughly the same time and refer to the same privileged subject matter. ▮

▮

▮

███████████████████████████████. *See* Exhibit 61. Thus, the communications in Exhibit 62 are privileged for the same reason as those in Exhibit 61.

**Exhibit 64** is an internal, confidential communication between Pamplin and Katheryn O'Malley, BlendJet's VP of Customer Experience, that ████████████████████ ██████████████████████. This communication was forwarded by O'Malley, at Pamplin's instruction, for the purpose of seeking legal advice from BlendJet's counsel, Patrick McGill, ██████████████████████. Thus, this communication is privileged.

## II.     BlendJet Retains the Attorney-Client Privilege as it is Not Dissolved or Defunct

Plaintiff's "out of business" theory ignores the distinction recognized by this District between dissolved or defunct corporations and companies that remain legally in existence. In *Utah Physicians for a Healthy Environment, Inc. v. Diesel Power Gear, LLC*, 2025 WL 2144788, at *2 (D. Utah July 29, 2025), this Court held that "the weight of authority" holds "that a dissolved or defunct corporation retains no privilege," explaining that "[o]nce a corporation becomes defunct, the policy interests supporting shielded communications fall away." The manager of Diesel Power Gear not only ceased all operations, but filed articles of dissolution with the State of Utah and initiated bankruptcy proceedings. *Id.* In those circumstances, the company no longer had its own manager to serve the entity's interests, and this Court thus found that the privilege no longer applied. *Id.* The Court cited two cases in support, both of which confirm at length that "[i]f a corporation lost its privilege as soon as it ceased normal business operations, it would likely be deterred from communicating frankly with its attorneys during the windup process, because any disclosures made would no longer be protected." *Off. Comm. of Admin. Claimants ex rel. LTV Steel Co. v. Moran*, 802 F. Supp. 2d 947, 949 (N.D. Ill. 2011).

BlendJet is neither defunct nor dissolved under Delaware law. *See* Ex. A. BlendJet "retains management capable of asserting the privilege, in contrast to cases where corporations without current management lost their privilege." *Id.* at 949. *See also S.E.C. v. Carrillo Huettel LLP*, No. 13-1735, 2015 WL 1610282, at *3 (S.D.N.Y. Apr. 8, 2015) (even "[w]hile a corporate entity is still in the process of dissolution, there may be a trustee or someone serving a similar

– 7 –

function who represents the corporation" and can assert the privilege); *Off. Comm. of Admin. Claimants*, 802 F. Supp. 2d at 949 ("[i]f the trustee controls the privilege, then the privilege must still exist").

BlendJet is neither in bankruptcy nor receivership, and thus there has been no transfer of control over the privilege to a bankruptcy trustee, receiver, or other manager. *See Commodity Futures Trading Comm'n v. Weintraub*, 471 U.S. 343, 348-49 (1985) (when a corporation remains in existence, control of the attorney-client privilege resides with current management). This is precisely the scenario in which the privilege continues to serve its policy purpose—allowing the corporate client to communicate freely with counsel to address legal matters that remain live, including ongoing litigation such as this one. Under both this Court's reasoning in *Diesel Power Gear* and the broader Circuit authority, BlendJet retains, and is entitled to assert, the attorney-client privilege over the disputed documents. Finally, Blendtec's argument that Mr. Pamplin is no longer a "CEO" is irrelevant—under Blendtec's own authority, a director can assert the privilege on BlendJet's behalf. Mot. at 3.

### III. BlendJet Has Not Waived its Privilege Through Inadvertent Disclosure

Plaintiff's waiver arguments fare no better. There is no privilege waiver if (1) disclosure was inadvertent; (2) the holder took reasonable steps to prevent disclosure; and (3) the holder promptly took reasonable steps to address the disclosure, including following Fed. R. Civ. P. 26(b)(5)(B). *See* Fed. R. Evid. 502(b). The Standard Protective Order governing clawbacks on the documents in question requires even less. *See* Standard Protective Order ¶10. BlendJet meets each element, which weighs decisively in favor of protection.

#### A. BlendJet Took Reasonable Steps to Prevent Disclosure

The record contains no evidence—nor does Blendtec contend—that BlendJet intentionally waived the privilege. BlendJet's document review process was reasonable under the circumstances. BlendJet produced thousands of documents across multiple productions, and the present dispute concerns just twelve documents, which underscores that the review process was reasonably effective in screening out privileged materials. *See, e.g., United States v. SDI Future*

– 8 –

*Health, Inc.*, 464 F. Supp. 2d 1027, 1045 (D. Nev. 2006) (finding reasonable steps taken where small number of privileged documents produced out of large production). The minimal incidence of inadvertent disclosure here thus weighs strongly against any finding of waiver.

        **B.**        **BlendJet Properly and Timely Clawed Back its Documents**

Rule 26(b)(5)(B) exists to halt use of potentially privileged material the moment a claim is raised; the receiving party "must promptly return, sequester, or destroy the specified information" until the claim is resolved. Blendtec seizes on the form of the clawback notice, arguing that BlendJet's communication lacked precise statutory language and was therefore ineffective. *See* Mot. at 4. But Rule 26(b)(5)(B) requires no "magic words"; it requires only that the producing party "notify" the receiving party of the claim of privilege.

Courts enforce clawbacks where the notice, taken as a whole, clearly communicated the privilege claim and identified the documents at issue, even if it did not track the Rule verbatim. *See, e.g., Lloyds of London Syndicate 2003 v. Fireman's Fund Ins. Co.*, 320 F.R.D. 557, 561 (D. Kan. 2017). Here, the notice came days after discovery of the inadvertent disclosure and directly from BlendJet's director, unequivocally identifying the specific exhibits it clawed back as privileged. Blendtec, sequestered the same materials, confirming adequacy of the notice.

        **C.**        **Blendtec's Gamesmanship Should Not Be Rewarded**

The manner in which Plaintiff has chosen to raise these documents only reinforces why the fairness factor weighs decisively in favor of preserving the privilege. *See Heriot v. Byrne*, 257 F.R.D. 645, 655 (N.D. Ill. 2009) (finding that application of fairness considerations in a 502(b) analysis is flexible and "var[ies] from case to case").

First, Blendtec repeatedly ties its willingness to return or destroy BlendJet's privileged information to an entirely separate concession of liability by Defendant MavorCo., which is unrelated to BlendJet, and which does not affect BlendJet's assertion of the privilege.

Second, Plaintiff has purportedly had these materials since their production in the earlier action; yet it made no effort to notify BlendJet at any time before relying upon them here. Instead, Blendtec waited until supplemental briefing, weeks before the August 21 preliminary

– 9 –

injunction hearing, to attach the documents under seal and frame them as critical to its arguments. Blendtec's approach turned what should have been a straightforward Rule 26(b)(5)(B) process into an unnecessary, last-minute dispute. Allowing privilege to be forfeited under these circumstances would not only reward gamesmanship, it would incentivize parties to hold back and deploy contested materials strategically, undermining the integrity of the privilege and the efficient use of judicial resources.

## CONCLUSION

For the foregoing reasons, the Court should deny Blendtec's Motion, affirm BlendJet's privilege, and strike the privileged documents from the record.

Date: August 8, 2025

Respectfully submitted,

RICHARDS BRANDT MILLER NELSON

   */s/ Steven H. Bergman*
Rafael A. Seminario
Steven H. Bergman
*Attorneys for Defendant BlendJet Inc.*

## CERTIFICATE OF SERVICE

I certify that on August 8, 2025, I filed the foregoing **BLENDJET INC.'S OPPOSITION TO PLAINTIFF'S FRCP 26(b)(5)(B) MOTION** and served it on counsel of record through the Court's electronic filing system.

   */s/ Lindsay Núñez*