Brett Foster (#6089)
Mark A. Miller (#9563)
Tamara Kapaloski (#13471)
**DORSEY & WHITNEY LLP**
111 S. Main Street, Suite 2100
Salt Lake City, UT 84111
Telephone: (801) 933-7360
Facsimile: (801) 933-7373
foster.brett@dorsey.com
miller.mark@dorsey.com
kapaloski.tammy@dorsey.com

*Attorneys for Plaintiff Blendtec Inc.*

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| **BLENDTEC INC.**, a Utah corporation,<br><br>Plaintiff,<br><br>vs.<br><br>**BLENDJET INC.**, a Delaware corporation, **MAVORCO HOLDINGS, LLC**, a Delaware limited liability company, **MAVORCO IP, LLC**, a Delaware limited liability company, and **MAVORCO OPERATIONS, LLC**, a Delaware limited liability company,<br><br>Defendants. | **BLENDTEC'S RESPONSE TO BLENDJET'S OPPOSITION TO FRCP 26(b)(5)(B) MOTION**<br><br>Civil No. 2:25-cv-00096-RJS-DBP<br>Judge Robert J. Shelby<br>Magistrate Judge Dustin B. Pead<br><br>**[REDACTED VERSION]** |

Blendtec respectfully submits this reply to Blendjet's Opposition to Blendtec's Rule 26(b)(5)(B) Motion.[1]

---

[1] In Blendjet's Motion to Seal filed with its Opposition, Blendjet claims that "Blendtec has filed a Motion pursuant to FRCP 26(b)(5)(B) to unseal certain of Blendjet's AEO designated documents." ECF 111 at ¶4. Blendtec's Rule 26 Motion asks the Court to determine BlendJet's privilege claim, however, it does not seek to unseal the documents at issue. Blendtec agrees that the documents may remain under seal on the ground that they contain confidential information. *See* ECF 99 at 3.

## I. INTRODUCTION

Blendjet's opposition to Blendtec's Rule 26(b)(5)(B) Motion (the "Opp.") consists entirely of lawyer argument and lacks any supporting evidence. Because Blendjet failed to submit any declarations or other evidence (such as documents) to substantiate its privilege claims, it did not meet its burden to show the privilege applies. Blendjet also mischaracterizes the documents at issue and makes unsupported factual statements that are contradicted by the evidence in the case. For example, Blendjet represents that "Blendtec concedes the disclosure was inadvertent." Opp. at 1. This is not correct and Blendjet provides no citation or any support for this assertion. To be clear, Blendtec has never conceded that Blendjet inadvertently produced privileged documents. Blendjet also claims that "Blendtec was required to alert Blendjet upon discovering attorney-client privileged documents among Blendjet's documents." *Id*. But Blendtec had no such duty as the documents do not appear to be privileged on their face. Blendjet further asserts that it "unambiguously asserted privilege" through its "corporate director." *Id*. On the contrary, apart from his lack of legal capacity, Mr. Pamplin did not unambiguously assert the privilege or trigger a claw-back. Blendjet fails to substantiate its privilege claims and overreaches to manufacture a claim of privilege, and Blendtec's Rule 26(b)(5)(B) Motion should be granted.[2]

## II. ARGUMENT

---

[2] As Blendjet concedes that four of the original twelve documents at issue are not privileged (Opp. at 3), only eight documents remain at issue. These eight documents are ECF 72-55 (Exhibit 55), ECF 72-56 (Exhibit 56), ECF 72-57 (Exhibit 57), ECF 72-58 (Exhibit 58), ECF 72-60 (Exhibit 60), ECF 72-61 (Exhibit 61), ECF 72-62 (Exhibit 62), and ECF 72-64 (Exhibit 64). Although Blendjet has not properly invoked the privilege or met its burden to show that the privilege applies with respect to any of these documents, to resolve the issue as to two of them, Blendtec agrees to treat Exhibits 56 and 57 as privileged. These documents appear to be non-privileged communications with lawyers, but Blendtec nevertheless agrees to treat them as privileged as lawyers are involved in the communications.

### A. Blendjet Has Not Shown Mr. Pamplin is Authorized to Assert the Privilege

Blendjet claims that Blendjet's "corporate director" (*i.e.*, Ryan Pamplin) asserted the privilege on behalf of Blendjet. Opp. at 1. This is the first time that Blendjet has provided any purported basis for Mr. Pamplin's authority to assert the privilege. Mr. Pamplin ignored Blendtec's July 14, 2025, request to provide his title and authority to assert the privilege on behalf of Blendjet. *See* ECF 91-2.[3] Moreover, Blendjet provides nothing to substantiate its claim that Mr. Pamplin is Blendjet's "corporate director." Neither Blendjet nor Mr. Pamplin submitted a declaration (or any evidence) establishing that Mr. Pamplin is Blendjet's corporate director with authority to assert the privilege on behalf of Blendjet.

### B. Blendjet Failed to Show the Privilege was Properly Invoked

"Fed. R. Civ. P. 26(b)(5) requires that, <u>at the time the privilege is asserted</u>, the party must provide a description of the nature of the document that is sufficient to enable the other parties to assess the applicability of the privilege or protection." *Keystone Consol. Indus. v. Emplrs Ins. Co.*, 2005 U.S. Dist. LEXIS 58233, at *4 (C.D. Ill. May 25, 2005) (emphasis added). "Until that information has been provided, the assertion of privilege cannot be said to be legally complete. . . ." *Id*. *See also United States v. BDO Seidman*, 337 F.3d 802, 811 (7th Cir. 2003) ("The mere assertion of a privilege is not enough; instead, a party that seeks to invoke the attorney-client privilege has the burden of establishing all of its essential elements.").

---

[3] Mr. Pamplin has previously represented to the Court only that he is Blendjet's "former CEO." *See* ECF 49-2 (Pamplin Decl.) at ¶1. In his LinkedIn profile, Mr. Pamplin's represents that he was the CEO of Blendjet until February of 2025, then acted under contract as an "Advisor" to Blendjet until May of 2025. *See* ECF 91-4 at p. 2. Despite Mr. Pamplin's admissions, MavorCo took the position that "Blendjet (<u>through its Chief Executive Officer Ryan Pamplin</u>) has asserted the privilege." ECF 83 at 3; ECF 87 at 2.

In his July 14 email, Mr. Pamplin did not actually assert the privilege. Mr. Pamplin stated only that the documents MavorCo identified "*may be* protected by the attorney-client privilege, common interest privilege, and/or the work product doctrine" and that he would "take steps to confer with my attorneys about *whether they are subject to any privilege*." ECF 91-2 at 1 (emphasis added).[4] Mr. Pamplin did not state which privilege he claims applies to which document nor did he provide the basis for the claim. An ambiguous claim that some privilege may apply to unspecified documents does not properly invoke the privilege.

### C. Blendjet Failed to Meet its Burden to Show the Documents Are Privileged

Blendjet must make a "clear showing" that the privilege applies. *Peat, Marwick*, *Mitchell & Co. v. West,* 748 F.2d 540, 542 (10th Cir. 1984). "This burden can be met only by an evidentiary showing based on competent evidence and cannot be discharged by mere conclusory or ipse dixit assertions." *Case v. Unified Sch. Dist. #233*, 1995 WL 358198, at *3 (D. Kan. Jun. 2, 1995). Privilege claims "can be sustained only if they are *both* properly asserted and the facts supporting any privileges are established by *evidence,* not merely declared by lawyer argument." *BG Real Estate Servs. v. Am. Equity Ins. Co.*, 2005 WL 1309048, at *4 (E.D. La. May 18, 2005) (emphasis in original). "The mere assertion of a lawyer in . . . memoranda that responsive materials or information were attorney-client communications . . . is not evidence sufficient to bear the burden. *Id*. *See also Shih v. Petal Card, Inc.*, 565 F. Supp. 3d 557, 566 (S.D.N.Y. 2021) ("party asserting

---

[4] Although the documents at issue were filed under seal on June 23, 2025 (*see* ECF 72), and Mr. Pamplin claimed on July 14, 2025, that Blendjet's lawyers were evaluating whether any privilege applied, Blendjet now states that it did not retain counsel until August 7, 2025 (Opp. at 2), which is one day before the Court ordered Blendjet to respond to the Rule 26(b)(5)(B) Motion (*see* ECF 105). Blendjet's suggested prejudice from the "short time available" to respond to Blendtec's Motion is entirely of its own doing. Blendjet clearly did nothing until the last minute.

the privilege bears the burden of establishing each element through competent evidence"); *United States v. Evanson*, No. 2:05-cv-805-TC, 2007 WL 4299191, at *17 (D. Utah Dec. 4, 2007) (finding proponent of privilege "fail[ed] to provide enough evidence for the court to determine whether or not the privilege actually applies").

Blendjet claims in its Opposition that the exhibits "are privileged because they reflect the provision of legal advice from Blendjet's outside counsel, Patrick McGill, and communications between the internal legal team including Jordan Carlson and other non-legal employees in service of such advice or to request further advice." Opp. at 3.[5] Even assuming this were an accurate description of the documents (it is not), this conclusory and unsupported assertion in lawyer memoranda is far from sufficient for Blendjet to meet its burden. Purported "facts supporting the privilege [must be] established by the evidence, not merely declared by lawyer argument." *Estate of Manship v. United States*, 232 F.R.D. 552, 561 (M.D. La. 2005). "In other words, the mere assertion of a lawyer that responsive materials or information are attorney-client privileged . . . is not evidence establishing that the information is privileged." *Id*. *See also Shih v. Petal Chard, Inc*., 565 F. Supp. 3d 557, 567 (S.D.N.Y. Oct. 6, 2021) ("the existence of the required attorney-client relationship generally must be proved by something more than the attorney's claim that such a

---

[5] There is no evidence to support the bald claims that Jordan Carlson was part of Blendjet's "internal legal team" (Opp. at 3) that acted as a representative of attorney Patrick McGill (Opp. at 4-5 (citing cases stating that representatives of the attorney, such as paralegals and secretaries, are privileged and claiming that Ms. Carlson "assisted Patrick McGill")). Ms. Carlson is not a paralegal or legal secretary, nor was she a representative of Patrick McGill. Ms. Carlson started at Blendjet as a customer service representative and later transitioned to a role where she submitted takedown requests, including Digital Millenium Copyright Act ("DMCA") takedown notices, on behalf of Blendjet. *See* **Exhibit 1** (Ms. Carlson's LinkedIn profile). Takedown notices can be submitted by anyone authorized by the intellectual property holder, and do not need to be submitted by lawyers or a legal team. *See* 17 U.S.C. § 512.

relationship existed."). Because Blendjet presented only attorney argument and failed to submit any competent evidence establishing that the privilege was properly invoked or applies, Blendtec's Motion should be granted. In any event, as set forth below, Blendjet's attorney arguments regarding why the documents are privileged fail.

### D. The Documents Are Not Privileged

<u>Exh. 55 (ECF 72-55, JET00004174-78</u>: Blendjet's conclusory assertion that this document "is a confidential communication between Pamplin and a ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮" (Opp. at 6) is unsubstantiated. Blendjet further claims without any evidence that the "communication was for the purpose of securing legal advice relating to the enforcement of Blendjet's trademarks and patents against third-party infringers." *Id*. Simply because ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ does not show that the communication was for the purpose of securing legal advice nor does it render a communication with a third party privileged.

<u>Exh. 58 (ECF 72-58, JET00331201-03) and Exh. 60 (ECF 72-60, JET00597934-35)</u>: Blendjet claims that "these documents are "confidential communications between Blendjet's Director Ryan Pamplin and Jordan Carlson, Blendjet's IP Specialist who assisted Patrick McGill, Blendjet's counsel for intellectual property matters." Opp. at 5. There is not a shred of evidence in the record that Jordan Carlson's role was to "assist[] Patrick McGill," and Blendjet has provided nothing to support this claim. Blendjet also claims that the "communications were for the purpose of directing Blendjet's counsel to execute a legal strategy relating to the enforcement of Blendjet's trademarks against third party infringers." *Id*. Nothing supports this naked contention either.

In Exhibit 58, Mr. Pamplin ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

5

▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆. *See* JET00331201. Ms. Carlson responded that she has "▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆." *Id*. Thus, the purpose of the communication from Mr. Pamplin to Ms. Carlson was ▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆. Similarly, in Exhibit 60, Mr. Pamplin ▆▆▆▆ ▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆. This is not privileged information. His instruction to ▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆ ▆▆▆▆▆▆▆▆ is also not "made for the purpose of directing Blendjet's counsel to execute a legal strategy," as Blendjet claims. Exhibit 58 and 60 are not privileged on their face and Blendjet has failed to meet its burden of submitting competent evidence establishing the privilege.

Exh. 61 (ECF 72-61, JET01413298-09): Blendjet also mischaracterizes this document and badly overreaches. First, Blendjet claims that Ms. Carlson "expressly states that her knowledge emanated from conversations with Blendjet's counsel, Patrick McGill, about legal ramifications of an event." Opp. at 5. Ms. Carlson does not disclose anything about ▆▆▆▆▆▆▆▆▆▆▆▆ ▆▆▆▆, however. *See* JET01413299. Nothing of the substance of the conversation is revealed and the mere fact that Ms. Carlson talked to Mr. McGill is not privileged. *See, e.g., Lureen v. Doctor's Assocs.*, 2017 WL 4179995, at *6 (D.S.D. Sept. 20, 2017) ("the *fact* of a conversation occurring between S.L. and her attorney is not privileged"). Blendjet has not shown that Ms. Carlson discussed any "legal ramifications of an event" with Mr. McGill.

Second, according to Blendjet, Ms. Carlson "refers to actions she took to enforce Blendjet's intellectual property in her role assisting McGill." Opp. at 5 (citing JET01413305) (emphasis added). This is not an accurate characterization. Ms. Carlson stated only that ▆▆▆▆▆▆▆▆▆ ▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆. *See* JET01413305. She does not state that she took this action "in her role assisting McGill," as Blendjet claims, and Blendjet has submitted nothing to



6

support this bald assertion.[6]

Third, Blendjet states that Mr. ███████████████████ ███████████████████████████████████████████." Opp. at 5. Mr. Heath does not disclose any "information he learned from McGill" or any "advice rendered" by Mr. McGill, however. Mr. Heath simply ██████████████████████ ████████████████████████████████████████████████████████████ ███████████████████████████. Draft contracts exchanged between third parties are not privileged and Blendjet submitted nothing to show that ████████████████████ ███████ as it claims.

Finally, Blendjet contends that "these communications from McGill were for the purpose of providing legal advice to Blendjet relating to its ███████████████████████████." Opp. at 5. But there are no "communications" from McGill in Exhibit 61, and the exhibit was clearly not made for the purpose of providing legal advice. The purpose of the communication was for non-lawyer Blendjet employees to discuss their independent views and ████████████ ██████████████████████████████████. Blendjet has not met its burden of proving that this communication is privileged.

Exh. 62 (ECF 72-62, JET01356913-21): Blendjet claims that Exhibit 62 is privileged for the same reason as Exhibit 61. Opp. at 6-7. As shown above, however, Blendjet has not shown that Exhibit 61 is privileged. In any event, in Exhibit 62, non-lawyer Chris Heath discusses ██████

---

[6] Due to the pending trademark infringement lawsuit with Blendtec, where Blendjet took the position that the marks are not similar for purposes of the likelihood of confusion analyses, it is likely safe to assume that Mr. McGill would not have advised Ms. Carlson to issue a trademark infringement takedown notice to Blendtec.

7

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

Blendjet makes the strained, unsubstantiated, and (frankly) absurd claim that Exhibit 62 is privileged because Mr. "█████████████████████████████████████

█████████████████████████████████████████████████

█████████████████████████████████████████████." Although this convoluted argument shows Blendjet's desperation to claw the document back, it does not show that the document is privileged. Blendjet undoubtedly overreaches because the document contains incredibly damning admissions by Blendjet employees. *See, e.g., id*. at JET01356917 (Mr. Heath concludes that ███████████████████████

████████████████████████).

Exhibit 64 (ECF 72-64, JET00303731-38): Blendjet mischaracterizes this document. First, Blendjet claims it is a █████████████████████████████████

█████████████████████████████████████████████████

███████████████." Opp. at 7. The document does not contain any confidential communications, however. Ms. O'Malley, who is not a lawyer, █████████████

█████████████████████████████████████████████████

█████████████████████████████████████████████████

█████. Blendjet further claims that the "communication was forwarded by O'Malley at Pamplin's instruction, for the purpose of seeking legal advice from Blendjet's counsel, Patrick

8

McGill, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮." Opp. at 7. Nothing on the face of the document supports this, and Blendjet failed to submit any declarations or other documentation to substantiate this claim. *See Main St. Am. Assur. Co. v. Savalle*, 2019 WL 5704403, at *6 (D. Conn. Nov. 5, 2019) ("There is no competent evidence before the Court establishing that each of the emails withheld on the basis of privilege was sent or received for the purpose of providing or obtaining legal advice."). Even if Ms. O'Malley forwarded the third-party communication to Mr. Pamplin for the purpose of seeking legal advice from Blendjet's counsel (which is not apparent from the face of the document and is wholly unsubstantiated), the act of forwarding a third-party communication that is not privileged to a lawyer does not render a document privileged. *See Am. W. Bank Members, L.C. v. State,* No. 2:16-cv-326-CW-DAO, 2022 WL 103736, at *9 (D. Utah Jan. 11, 2022) ("Forwarding otherwise non-privileged documents to a lawyer does not automatically make them privileged."); *Trush v. City of Phila*, 2023 WL 7646527, at *2 (E.D. Pa. Nov. 14, 2023) (courts "routinely hold that communications that forward a non-privileged document to counsel and do not call for action or . . . provide or request legal advice are not protected by the attorney-client privilege") (citing cases).

### III. CONCLUSION

Blendjet has failed to meet its burden to show that the privilege was properly invoked or that it applies, and the Court should grant Blendtec Rule 26(b)(5)(B) Motion.

DATED this 13th day of August, 2025.

                                                 DORSEY & WHITNEY LLP

                                                 /s/ *Tamara L. Kapaloski*
                                                 Brett Foster (#6089)
                                                 Mark A. Miller (#9563)

Tamara L. Kapaloski (#13471)
*Attorneys for Plaintiff Blendtec Inc.*

10

## **CERTIFICATE OF SERVICE**

I hereby certify that on the 13th day of August, 2025, I electronically filed the foregoing with the Clerk of Court using the Court's CM/ECF system, which will send electronic notification to counsel of record.

*/s/ Tamara L. Kapaloski*
