IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH

| | |
|---|---|
| BLENDTEC INC., a Utah corporation,<br><br>        Plaintiff,<br><br>v.<br><br>BLENDJET INC., a Delaware corporation; MAVORCO HOLDINGS, LLC, a Delaware limited liability company; MAVORCO IP, LLC, a Delaware limited liability company; and MAVORCO OPERATIONS, LLC, a Delaware limited liability company,<br><br>        Defendants. | **MEMORANDUM DECISION AND ORDER**<br><br>Case No. 2:25-cv-00096-RJS-DPB<br><br>Chief District Judge Robert J. Shelby<br><br>Chief Magistrate Judge Dusting B. Pead |

Before the court are the MavorCo Defendants' Motion to Dismiss,[1] Plaintiff's Motion to Strike,[2] and Plaintiff's Motion for Preliminary Injunction.[3]  Having reviewed the Motions and associated briefing, and having considered the parties arguments at a hearing held on August 21, 2025, the court DENIES the Motion to Dismiss, GRANTS the Motion to Strike, and DENIES the Motion for Preliminary Injunction.

## BACKGROUND

The following factual summary is taken from various exhibits and affidavits submitted in support of the parties' positions on Plaintiff's Motion for Preliminary Injunction.  As the court is

---

[1] Dkt. 43, *MavorCo's Motion to Dismiss Plaintiff's Claims for Successor Liability* (*MTD*).  The court refers to Defendants MavorCo Holdings, LLC, MavorCo IP, LLC, and MavorCo Operations, LLC as "MavorCo."

[2] Dkt. 51, *Blendtec's Motion to Strike MavorCo's Thirteenth Affirmative Defense* (*MTS*).

[3] Dkt. 25, *Plaintiff's Motion for Preliminary Injunction and Memorandum in Support* (*PI Motion*).

also resolving a Motion to Dismiss and a Motion to Strike in this Order, it independently relies on the well-pleaded factual allegations in the parties' pleadings to resolve those Motions.

Plaintiff Blendtec, Inc. has manufactured and sold a variety of consumer and professional grade blenders since its founding in 1975.[4]  Plaintiff has sold these blenders on its website and through retail stores such as Walmart, Target, Home Depot, and others.[5]  And since 1999, Plaintiff has sold blenders and related accessories under its "blendtec" trademark (Registration No. 2,431,060) and its swirl design mark (Registration No. 4,050,765) (collectively, the Blendtec Marks).[6]  The United States Patent and Trademark Office (USPTO) issued Plaintiff a registration for its "blendtec" mark in February of 2001 and a registration for its swirl design mark in November 2011.[7]

For decades, Plaintiff has used the Blendtec Marks to advertise and market its blenders on its website and elsewhere on the internet.[8]  For example, Plaintiff has used its marks to promote its products on social media, including through Facebook (with approximately 171,000 followers), Instagram (with approximately 95,000 followers), Pinterest (with approximately 46,000 followers), and through its 180+ videos published on YouTube.[9]  Plaintiff's "Will-it-Blend" YouTube series has been recognized as one of the most successful internet marketing campaigns in history.[10]  Plaintiff has invested millions of dollars into building its business, and

---

[4] Dkt. 26, *Declaration of Brian Buchanan in Support of Plaintiff's Motion for Preliminary Injunction* (*Buchanan Decl.*) ¶ 5.

[5] *Id.* ¶ 13.

[6] *PI Motion* at 3; *Buchanan Decl.* ¶¶ 2–5; Dkt. 26-1, *Exhibit 1*; Dkt. 26-2, *Exhibit 2*.

[7] *Exhibit 1*; *Exhibit 2*.

[8] *PI Motion* at 3–4; *Buchanan Decl.* ¶¶ 5–6.

[9] *PI Motion* at 3–4; *Buchanan Decl.* ¶¶ 7–8.

[10] *Buchanan Decl.* ¶ 9.

as a result, it has enjoyed hundreds of millions of dollars in sales.[11]  Plaintiff's products consist of non-portable, household and commercial countertop blenders ranging in price from $300 to $2,000 or more.[12]  The Blendtec Marks and products employing the marks are reproduced below.[13]



In 2017, Defendant BlendJet began using its "blendjet" mark and swirl design mark (the BlendJet Marks) in connection with selling portable blenders.[14]  The USPTO issued BlendJet a registration for its BlendJet Marks in 2019 (Registration Nos. 5,750,510 and 5,950,040).[15] BlendJet's products consist of battery-powered, compact blenders priced between $50 and $70.[16] BlendJet's flagship product, the BlendJet 2, has sold over 10 million units globally and has been

---

[11] *Id.* ¶ 11.

[12] *Id.* ¶ 5; *PI Motion* at 18; Dkt. 49, *MavorCo's Brief in Opposition to Plaintiff's Motion for a Preliminary Injunction* (*PI Opposition*) at 8 (citing https://www.blendtec.com/); Dkt. 49-2, *Declaration of Ryan Pamplin* (*Pamplin Decl.*) ¶ 12.

[13] Dkt. 58, *Second Declaration of Brian Buchanan in Support of Plaintiff's Motion for Preliminary Injunction* (*Second Buchanan Decl.*) ¶ 2; *see also* Dkt. 28-1, *Expert Report of David Franklyn Regarding Level of Confusion between Blendtec and BlendJet Brands* (*Franklyn Expert Report*) at 10.

[14] *Buchanan Decl.* ¶ 12; Dkt. 49-2, *Declaration of Ryan Pamplin* (*Pamplin Decl.*) ¶ 5.

[15] Dkt. 49-1, *Transmittal Declaration of Jessica S. Maupin in Support of MavorCo's Opposition to Plaintiff's Motion for a Preliminary Injunction* at Ex. 1, Ex. 2.

[16] *Pamplin Decl.* ¶ 12.

offered in more than 40,000 retail locations since its introduction into the blender market in late 2020.[17]  The BlendJet Marks and products employing the marks, as they appear on BlendJet's website as of May 3, 2025, are shown below.[18]





Since BlendJet entered the blender market, Plaintiff has received hundreds, if not thousands, of inquiries from BlendJet customers regarding their BlendJet blenders.[19]  Often, these customers mistakenly believe Plaintiff produced BlendJet's portable blenders, or they believe BlendJet is somehow affiliated with or sponsored by Plaintiff.[20]  In November 2021, Plaintiff sued BlendJet in this district for trademark infringement (the 2021 Action).[21]

In 2023, BlendJet voluntarily recalled a specific subset of BlendJet 2 units due to a defect, though the recall ultimately impacted a larger number of units than were included in the

---

[17] *Id.* ¶ 6; *Buchanan Decl.* ¶ 14.

[18] *See* Dkt. 57-2, *Exhibit 2*; *Franklyn Expert Report* at 7.

[19] *Buchanan Decl.* ¶ 18.

[20] *Id.*

[21] Dkt. 2, (case no. 2:21-cv-00668-TC-DBP), *Complaint for Trademark Infringement and Related Claims*.

subset as retailers were unable to determine from exterior packaging whether the units inside were defective.[22]  News outlets and the Consumer Product Safety Commission warned consumers that the recalled blenders could overheat or catch fire, and the blender blades could break off, posing fire and laceration hazards to consumers.[23]  Immediately thereafter, Plaintiff began receiving almost daily calls and inquiries from confused BlendJet customers regarding their recalled BlendJet blenders.[24]  Over time, the calls about the defective BlendJet blenders from consumers who mistakenly attributed the faulty blenders to Plaintiff became so frequent that Plaintiff's customer service team implemented a specific process to handle them.[25]

The financial impact of the recall, market conditions, and expenses associated with litigation caused BlendJet to default on its financing obligations, and on January 13, 2025, Sandton Capital Partners (Sandton) foreclosed on BlendJet's assets and sold them to MavorCo.[26] Pursuant to a foreclosure agreement, MavorCo did not assume BlendJet's liabilities, debts, or obligations.[27]  Moreover, BlendJet did not transfer ownership or merge with MavorCo, and the entities remain separate.[28]  The assets MavorCo purchased from BlendJet included, among others, BlendJet's intellectual property (including the BlendJet Marks), product inventory, and customer lists.[29]  At present, MavorCo has paused manufacturing and any import of new BlendJet-branded blenders, but it continues to sell and advertise for sale remaining BlendJet

---

[22] *Pamplin Decl.* ¶ 14; *Buchanan Decl.* ¶¶ 22–23.

[23] *Buchanan Decl.* ¶¶ 22–23.

[24] *Id.* ¶ 24.

[25] *See* Dkt. 57, *Blendtec's Reply in Support of Its Motion for Preliminary Injunction* (*PI Reply*) at 5; *Second Buchanan Decl.* ¶ 8; Dkts. 26-13–26-72.

[26] *Pamplin Decl.* ¶ 15; Dkt. 49-3, *Declaration of David Meckler* (*Meckler Decl.*) ¶ 4.

[27] *Meckler Decl.* ¶ 7.

[28] *Id.* ¶ 6.

[29] *Id.* ¶ 5.

inventory.[30]  Ultimately, and shortly after MavorCo's purchase, BlendJet ceased operations as an active business entity.[31]

After years of litigation, and after MavorCo acquired the BlendJet Marks from BlendJet, Plaintiff agreed to dismiss the 2021 Action so it could jointly pursue its claims against BlendJet and MavorCo in the present lawsuit.[32]  Plaintiff brought this lawsuit in February 2025, asserting claims against BlendJet and MavorCo for Trademark Infringement and Unfair Competition, violations of the Utah Deceptive Trade Practices Act, and Successor Liability.[33]  After BlendJet failed to timely respond to the Complaint, Plaintiff moved for and obtained an entry of default against BlendJet.[34]  The parties filed the present Motions in March and April 2025,[35] and with the benefit of oral argument, the Motions are ripe for review.[36]

---

[30] *Id.* ¶ 13; *Buchanan Decl.* ¶¶ 32–33.

[31] *Pamplin Decl.* ¶¶ 15–16.

[32] Dkt. 217, (case no. 2:21-cv-00668-TC-DBP), *Order Granting Motion to Dismiss* ("Blendtec may pursue its claims against Blendjet Inc. in the 2025 Action.").

[33] Dkt. 2, *Complaint for Trademark Infringement and Successor Liability* (*Complaint*) ¶¶ 62–127.

[34] Dkt. 48, *Motion for Entry of Default against Defendant BlendJet Inc.*; Dkt. 50, *Certificate of Default Against BlendJet, Inc.*

[35] *PI Motion*; *MTD*; *MTS*.

[36] Dkt. 55, *Blendtec's Opposition to MavorCo's Motion to Dismiss Claims for Successor Liability* (*MTD Opposition*); Dkt. 61, *MavorCo's Reply in Support of Its Motion to Dismiss Plaintiff's Claims for Successor Liability* (*MTD Reply*); Dkt. 60, *MavorCo's Opposition to Blendtec's Motion to Strike MavorCo's Thirteenth Affirmative Defense* (*MTS Opposition*); Dkt. 63, *Blendtec's Reply in Support of Its Motion to Strike MavorCo's Thirteenth Affirmative Defense* (*MTS Reply*); *PI Opposition*; *PI Reply*.

## ANALYSIS

The court first resolves MavorCo's Motion to Dismiss.  Finding dismissal is unwarranted, the court then turns to Plaintiff's Motions to Strike and for a Preliminary Injunction.

### I.    MavorCo's Motion to Dismiss

MavorCo seeks dismissal of Plaintiff's successor liability claims[37] under Federal Rule of Civil Procedure 12(b)(6).[38]  MavorCo argues Plaintiff has not alleged a viable basis to impose successor liability on MavorCo for the alleged misconduct of BlendJet and urges the court to dismiss Counts V and VI in the Complaint for failure to state a claim.[39]

### A.  Legal Standard

Generally, "[t]o survive a [Rule 12(b)(6)] motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"[40]  A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[41] In determining whether a complaint satisfies these criteria, courts accept all well-pleaded allegations as true, construe the allegations in the light most favorable to the plaintiff, and consider the complaint as a whole, along with the documents incorporated by reference into the complaint.[42]  And "[w]hile legal conclusions can provide the complaint's framework, they must be supported by factual allegations."[43]  "Threadbare recitals of the elements of a cause of action,

---

[37] *See Complaint* ¶¶ 105–27.

[38] *MTD* at 1.

[39] *Id.* at 2–4.

[40] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

[41] *Id.* (citing *Twombly*, 550 U.S. at 556).

[42] *See Nakkhumpun v. Taylor*, 782 F.3d 1142, 1146 (10th Cir. 2015) (citations omitted).

[43] *Iqbal*, 556 U.S. at 679.

supported by mere conclusory statements, do not suffice."[44]  The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted.[45]

MavorCo urges this court to hold Plaintiff to a higher pleading standard, submitting Plaintiff has already enjoyed the benefit of full discovery in the related 2021 case.[46]  MavorCo cites to *Billard v. Rockwell International Corporation* in support.[47]  But the quote from *Billard*, which is misleadingly modified in MavorCo's briefing, refers to the heightened pleading standard required under Federal Rule of Civil Procedure 9(b), not Rule 12(b)(6).[48]  And here, Plaintiff has not asserted a claim for fraud or mistake.  Contrary to MavorCo's assertion, the court is aware of no authority subjecting "plaintiffs to a higher pleading standard where, as here, parties have had the benefit of full discovery in a related case."[49]  The court declines to chart such a path in this case.[50]

---

[44] *Id.* at 678.

[45] *Miller v. Glanz*, 948 F.2d 1562, 1565 (10th Cir. 1991).

[46] *MTD* at 4.

[47] 683 F.2d 51 (2d Cir. 1982).

[48] *Id.* at 57.  The court cautions MavorCo against misrepresenting legal authority in the future.  The *Billard* case unmistakably relates to the policies underlying the Rule 9(b) heightened pleading requirement applicable to pleading claims of fraud or mistake.  It does not support a theory that the availability of prior discovery subjects plaintiffs to a higher pleading standard for all claims.  The court also cautions Plaintiff against similar misrepresentations.  As discussed in greater detail below, Plaintiff cites the case of *Hanover 3201 Realty, LLC v. Vill. Supermarkets, Inc.*, 806 F.3d 162 (3d Cir. 2015) for the proposition that the filing of four lawsuits is insufficient to fall within the pattern litigation exception to *Noerr-Pennington* immunity.  *See MTS Reply* at 4.  However, *Hanover* does not stand for Plaintiff's stated proposition.  The *Hanover* court expressly rejected the argument that the filing of four lawsuits cannot constitute a pattern.  *See Hanover 3201 Realty, LLC*, 806 F.3d at 181 ("Defendants argue as a threshold matter that the four actions they filed against Hanover Realty are too few to even qualify as a pattern or series.  We are not convinced.").  Further misrepresentations of legal authority by either party may result in Rule 11 sanctions.

[49] *MTD* at 4.

[50] Moreover, Blendtec has had no discovery on the MavorCo/BlendJet transaction or the successor liability issues, rendering MavorCo's argument that Plaintiff has already enjoyed the benefit of full discovery at best unpersuasive.

B.  Analysis

Finding Plaintiff is not subject to a higher pleading standard for its successor liability claims, the court turns to MavorCo's other arguments.  MavorCo argues Plaintiff failed to plausibly allege in its Complaint an exception to the general rule against successor liability.[51] Plaintiff contends it adequately alleged successor liability claims under both federal common law and under the two generally recognized state law exceptions.[52]  To challenge Plaintiffs' pleading of the state law exceptions, MavorCo frames its arguments under Utah law.[53]  Plaintiff likewise frames part of its argument under Utah law while recognizing that it does not have sufficient information to conduct a meaningful choice-of-law analysis on this subject.[54]  For purposes of this 12(b)(6) Motion to Dismiss, and finding little differences between the relevant states' general approaches to successor liability, the court will rely primarily on the parties' references to Utah case law to resolve the Motion.[55]  And notably, because MavorCo does not challenge the

---

[51] *MTD* at 5–8.

[52] *MTD Opposition* at 6–7.

[53] *MTD* at 5 ("To evaluate whether the 'de facto merger' exception applies, Utah courts consider the following factors . . . .").

[54] *MTD Opposition* at 4 n.4.

[55] Here, the parties appear to agree that Utah or Delaware law, among others, could apply to resolve the issue of adequately pleading state law exceptions to the general rule against successor liability.  *See MTD* at 5 (framing Defendants' argument under Utah law); *MTD Opposition* at 7 n.4 (recognizing Utah law or Delaware law may apply); *MTD Reply* at 1 n.2 ("Both New York and Delaware have a strong interest in the successor liability issue here, and there is no conflict between the law in those states.").  There does not appear to be a conflict between the law in these states.  *See Macris & Assocs., Inc. v. Neways, Inc.*, 986 P.2d 748, 752 (Utah Ct. App. 1999) (quoting *Florom v. Elliott*, 867 F.2d 570, 575 n.2 (10th Cir. 1989) (quotation marks omitted)), *aff'd*, 16 P.3d 1214 (Utah 2000); *Tabor v. Metal Ware Corp.*, 168 P.3d 814, 816 (Utah 2007) ("We conclude that Utah adheres to the traditional rule of successor nonliability, subject to four exceptions, as set forth in section 12 of the Restatement (Third) of Torts."); *Semenetz v. Sherling & Walden, Inc.*, 7 N.Y.3d 194, 197–98 (N.Y. 2006) (setting forth similar exceptions); *Fuit v. Extreme Prods. Grp. LLC*, No. 1:16-CV-0035, 2018 WL 1801914, at *3 (D. Utah Apr. 13, 2018) (recognizing how Utah, Arizona, and Delaware have adopted the Restatement (Third) of Torts, which recognizes exceptions to the general rule against successor liability).  The court will not consider Plaintiff's arguments under California law as California appears to have no relation to the underlying dispute.  *See MTD Opposition* at 7.

plausibility of Plaintiff's claim for successor liability under federal common law, that claim

survives.[56]

Generally, the law "does not impose liability on a successor corporation that purchases

the assets of a predecessor in an arm's length transaction."[57]  However, states that have adopted

the Restatement (Third) of Torts recognize exceptions to this rule where (1) there is an express or

implied agreement of assumption of debts; (2) the transaction amounts to a consolidation or

merger of the seller and purchaser; (3) the purchasing corporation is merely a continuation of the

selling corporation; or (4) the transaction is entered into fraudulently in order to escape liability

for such debts.[58]  MavorCo argues Plaintiff failed to plausibly allege either the "de facto merger"

exception, or the "mere continuation" exception to the general rule against successor liability.[59]

The court disagrees.

First, when determining whether a de facto merger occurred, courts "look beyond the

form of an asset sale to determine whether there has been, in substance, a merger or

consolidation."[60]  The inquiry generally depends on the following factors: (1) whether there is a

continuation of the enterprise of the seller in terms of continuity of management, personnel,

---

[56] *See MTD* at 5 ("Here, Blendtec only asserts that MavorCo is liable as a successor for BlendJet's alleged trademark infringement under the (A) 'de facto merger' and (B) 'mere continuation' exceptions.  For the reasons that follow, Blendtec has failed to adequately plead facts supporting either exception.").  At oral argument, MavorCo argued it did not have notice of Plaintiff's claim for successor liability under the federal common law, which is why it did not challenge the claim in its Motion to Dismiss.  The court is not persuaded.  Plaintiff's fifth cause of action in the Complaint is bolded and titled "Federal Common Law Successor Liability Against Mavorco."  *Complaint* at 25. Moreover, the elements of the federal common law cause of action are pleaded directly beneath this heading.  *See id.* ¶¶ 107–08.  The Complaint provided MavorCo with sufficient notice to challenge this cause of action in its Motion.

[57] *Fuit*, 2018 WL 1801914, at *3 (quoting *Nelson v. Tiffany Indus., Inc.*, 778 F.2d 533, 535 (9th Cir. 1985)).

[58] *Id.*; *Macris & Assocs., Inc. v. Neways, Inc.*, 986 P.2d 748, 752 (Utah Ct. App. 1999) *aff'd*, 16 P.3d 1214 (Utah 2000) (quoting *Florom v. Elliott*, 867 F.2d 570, 575 n.2 (10th Cir. 1989) (quotation marks omitted)).

[59] *MTD* at 5.

[60] *Vivint, Inc. v. NorthStar Alarm Servs., LLC*, No. 2:16-CV-00106-JNP-EFJ, 2017 WL 3484905, at *2 (D. Utah Aug. 14, 2017) (citing *MBIA Ins. Corp. v. Countrywide Home Loans, Inc.*, 965 N.Y.S.2d 284, 297 (N.Y. Sup. Ct. 2013)).

physical location, assets, and operations; (2) whether there is a continuity of shareholders; (3) whether the seller ceases operations, liquidates, and dissolves as soon as legally and practically possible; and (4) whether the purchasing corporation assumes the obligations of the seller necessary for uninterrupted continuation of business operations.[61]  Understandably, allegations surrounding de facto merger likely require pleading upon information and belief as the specific facts related to an asset purchase agreement, a purchasing entity's subsequent operations, and a seller's timeline for dissolution are often uniquely within the knowledge of the defendant.  And, "[t]he mere fact that a plaintiff uses the language 'information and belief' does not make an allegation conclusory but, instead, the Court must consider the content of the allegation itself."[62]  Indeed, "[t]he *Twombly* plausibility standard . . . does not prevent a plaintiff from pleading facts alleged upon information and belief where the facts are peculiarly within the possession and control of the defendant, or where the belief is based on factual information that makes the inference of culpability plausible."[63]

Here, taken as a whole, Plaintiff's allegations in its Complaint are sufficient to allege a de facto merger.  Plaintiff alleges specific facts related to the timing of the MavorCo entities' creation—on or around December 10, 2024—and MavorCo's swift and subsequent purchase of all of BlendJet's assets in January 2025.[64]  Plaintiff maintains, from that point on, MavorCo has continued to sell infringing BlendJet blenders.[65]  And in its Complaint, Plaintiff includes

---

[61] *Id.* (citing *Ekotek Site PRP Comm. v. Self*, 948 F. Supp. 994, 1002 (D. Utah 1996)).

[62] *McCartney v. United States*, 31 F. Supp. 3d 1340, 1345 (D. Utah 2014) (citation modified).

[63] *Arista Records, LLC v. Doe 3*, 604 F.3d 110, 120 (2d Cir. 2010) (citation modified); *see also George v. Urban Settlement Servs.*, 833 F.3d 1242, 1255 (10th Cir. 2016) (citing cases for the proposition that when a court is determining whether a plaintiff has satisfied the pleading standard of Rule 9(b), the court "may consider whether any pleading deficiencies resulted from the plaintiff's inability to obtain information in the defendant's exclusive control").

[64] *Complaint* ¶¶ 3–6.

[65] *Id.* ¶¶ 2, 109.

screenshots of BlendJet's blenders being promoted and offered for sale on MavorCo's newly obtained website.[66]  These facts provide a reasonable foundation for Plaintiff to allege, on information and belief, the elements of a de facto merger.  Specifically, Plaintiff alleges (1) the MavorCo entities were incorporated for the sole purpose of acquiring all of BlendJet's assets and continuing the business operations of BlendJet;[67] (2) MavorCo continued to operate BlendJet without interruption, including using the same name, trademarks, domain, website, social media accounts, inventory, and with an identity of owners and employees;[68] (3) BlendJet would cease operation, liquidate, and dissolve as soon as legally and practically possible;[69] and (4) MavorCo assumed all obligations of BlendJet necessary for uninterrupted continuation of business operations.[70]  Accepting these allegations as true, the court is able to draw the reasonable inference that MavorCo is liable as BlendJet's successor under the de facto merger doctrine.

Based on the factual foundation described above, Plaintiff also plausibly alleges a mere continuation theory of successor liability in its Complaint.  Under this theory, "[a] purchasing corporation is liable for the debts of the selling corporation when the purchasing corporation is merely a continuation of the selling corporation."[71]  Under Utah law, this occurs when the predecessor company and the successor company are essentially the same entity, and it is established through "continuation of ownership and control."[72]  Indeed, Utah courts typically look for "a common identity of stock, directors, and stockholders, and the existence of only one

---

[66] *Id.* ¶ 51.

[67] *Id.* ¶¶ 6, 42, 122.

[68] *Id.* ¶¶ 43, 46, 51, 124.

[69] *Id.* ¶¶ 48, 126.

[70] *Id.* ¶ 125.

[71] *ACI Constr., LLC v. United States*, 727 F. Supp. 3d 1236, 1260 (D. Utah 2024).

[72] *Id.* (citing *Decius v. Action Collection Serv.*, 105 P.3d 956, 959 (Utah Ct. App. 2004)).

corporation at the completion of the transfer."[73]  However, "the substance of what occurred matters more than what has been formalized on paper."[74]  The question essentially becomes whether the new company is merely the predecessor company in disguise.[75]  Here, Plaintiff plausibly alleges as much.  Plaintiff maintains (1) the MavorCo entities were incorporated for the sole purpose of acquiring BlendJet's assets and continuing the business operations of BlendJet;[76] (2) MavorCo purchased all of BlendJet's assets for inadequate consideration and continues to operate BlendJet without interruption, with an identity of owners and employees, by using the BlendJet name and selling portable blenders;[77] (3) BlendJet has no assets and is currently operating solely on behalf of MavorCo under a lease, with BlendJet to make a full accounting to MavorCo;[78] and (4) BlendJet would dissolve and cease to exist as an ongoing entity within the next 90 days of filing the Complaint.[79]  These facts plausibly establish MavorCo is merely BlendJet in disguise, and that BlendJet has effectively ceased to exist as a going concern and will soon dissolve.  These allegations are sufficient to survive a Rule 12(b)(6) Motion to Dismiss.

At bottom, as Plaintiff has plausibly alleged exceptions to the general rule against successor liability, MavorCo's Motion is denied, and Counts V and VI of Plaintiff's Complaint survive.

---

[73] *Robison v. 7PN, LLC*, 569 F. Supp. 3d 1175, 1180 (D. Utah 2021) (quoting *Decius*, 105 P.3d at 959).

[74] *ACI Construction, LLC*, 727 F. Supp. 3d at 1260 (citations omitted).

[75] *Id.* at 1261 (citations omitted).

[76] *Complaint* ¶¶ 6, 42, 122.

[77] *Id.* ¶¶ 43, 45, 46, 118.

[78] *Id.* ¶ 113.

[79] *Id.* ¶¶ 48, 126.

## II.    Plaintiff's Motion to Strike

Next, Plaintiff moves pursuant to Federal Rule of Civil Procedure 12(f) to strike MavorCo's thirteenth affirmative defense for antitrust violations.[80]  Plaintiff argues the defense is improper and insufficient as a matter of law, and Plaintiff insists MavorCo failed to allege any facts showing Plaintiff used its trademarks for the purpose of violating antitrust laws.[81]  Plaintiff argues MavorCo included the defense only to harass and prejudice Plaintiff by expanding the scope of discovery.[82]  The court agrees this defense cannot succeed as a matter of law.  As such, it must be dismissed.

### A.    Legal Standard

Rule 12(f) allows a court to "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter."  Under this Rule, a court may strike an affirmative defense if it cannot succeed as a matter of law under any circumstances.[83]  A court may also strike a defense that fails to comply with the notice pleading standard required to plead an affirmative defense,[84] which requires only a short and plain statement of each affirmative defense intended to be brought at trial.[85]  Motions to strike are disfavored, and striking a defense is considered a drastic remedy.[86]  Indeed, the Tenth Circuit cautions courts to "proceed with

---

[80] *MTS* at 1.

[81] *Id.*; *MTS Reply* at 2.

[82] *MTS* at 1.

[83] *Tiscareno v. Frasier*, No. 2:07-CV-336, 2012 WL 1377886, at *16 (D. Utah Apr. 19, 2012) (quoting *Wilhelm v. TLC Lawn Care, Inc.*, No. 07–2465–KHV, 2008 WL 474265 (D. Kan. Feb. 19, 2008)).

[84] *See Creative Consumer Concepts, Inc. v. Kreisler*, 563 F.3d 1070, 1076 (10th Cir. 2009) (citing *Hassan v. U.S. Postal Serv.*, 842 F.2d 260, 263 (11th Cir.1988)).

[85] *Tiscareno*, 2012 WL 1377886, at *15–16 (citation omitted).

[86] *Id.* at *13 (citations omitted).

extreme caution in striking a pleading."[87]  However, a district court retains discretion to grant or

deny a motion to strike under Rule 12(f).[88]

> B.  Analysis

In its Answer, MavorCo asserts as its thirteenth affirmative defense that "Blendtec is

using its marks to violate the antitrust laws of the United States."[89]  MavorCo cites the relevant

statute, 15 U.S.C. § 115(b)(7), and provides the following support for this defense:

> In 2021, Blendtec brought an almost identical lawsuit against BlendJet, *Blendtec Inc. v.
> BlendJet Inc.*, C[ase] No. 2:21-cv-00668, in the United States District Court for the
> District of Utah, in an attempt to extort an acquisition of BlendJet at a significantly
> undervalued price.  This current case is a second attempt by Blendtec to use bad faith
> pressure tactics by filing what is fundamentally an anticompetitive lawsuit to force the
> acquisition of MavorCo's assets at a reduced rate, in violation of the antitrust laws of the
> United States.[90]

While this allegation satisfies the Rule 12(f) notice pleading standard in the Tenth Circuit, the

court nonetheless strikes this defense as MavorCo cannot succeed on it as a matter of law.

Indeed, under the *Noerr-Pennington* Doctrine, which takes its name from a pair of Supreme

Court cases that placed a First Amendment limitation on the reach of the Sherman Act,[91]

"defendants are immune from antitrust liability for engaging in conduct (including litigation)

aimed at influencing decisionmaking by the government."[92]  In other words, Plaintiff's "resort to

legal protections is immune from antitrust liability unless it is a sham, *i.e.*, 'objectively

---

[87] *Colo. Milling & Elevator Co. v. Howbert,* 57 F.2d 769, 771 (10th Cir. 1932).

[88] *See Scherer v. U.S. Dep't of Educ.*, 78 F. App'x 687, 689 (10th Cir. 2003) (unpublished) (reviewing a district court's ruling on a motion to strike for abuse of discretion).

[89] Dkt. 44, *MavorCo's Answer to Plaintiff's Complaint for Trademark Infringement and Successor Liability* (*Answer*) at 15.

[90] *Id.*

[91] The *Noerr-Pennington* Doctrine was established by *E. R.R. Presidents Conference v. Noerr Motor Freight, Inc.,* 365 U.S. 127 (1961) and *United Mine Workers v. Pennington,* 381 U.S. 657 (1965).

[92] *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 572 U.S. 545, 555–56 (2014).

baseless.'"[93]  And if Plaintiff is protected by this Doctrine, "the [c]ourt may dismiss all counterclaims and defenses related to antitrust."[94]

However, while the *Noerr-Pennington* Doctrine "is a powerful shield, it is not absolute."[95]  Indeed, the Supreme Court has recognized "[t]here may be situations" where a legal petition "is a mere sham to cover what is actually nothing more than an attempt to interfere directly with the business relationships of a competitor and the application of the Sherman Act would be justified."[96]  This has come to be known as the "sham" exception, which "encompasses situations in which persons use the governmental *process*—as opposed to the *outcome* of that process—as an anticompetitive weapon."[97]  MavorCo makes two arguments to paint Plaintiff's legal petitions as shams to overcome Plaintiff's *Noerr-Pennington* immunity.

First, MavorCo points to Plaintiff's act of filing two similar lawsuits against BlendJet and MavorCo as evidence supporting the invocation of the "pattern" sham exception set forth in *California Motor Transport Co. v. Trucking Unlimited*.[98]  There, the Supreme Court found the Respondent's allegations that Petitioners used a series of legal filings "to bar their competitors from meaningful access to adjudicatory tribunals and . . . to usurp that decisionmaking process" fell within the sham exception in the *Noerr* case.[99]  The Tenth Circuit has observed that under *California Motor*, "sham litigation occurs where 'a pattern of baseless, repetitive claims . . .

---

[93] *Virgin Enters. Ltd. v. Virginic LLC*, No. 19-CV-0220-F, 2020 WL 1845232, at *4 (D. Wyo. Apr. 10, 2020) (first citing *Cardtoons, L.C. v. Major League Baseball Players Ass'n*, 208 F.3d 885, 889–90 (10th Cir. 2000); then citing *Noerr Motor Freight, Inc.*, 365 U.S. 127; and then citing *Pennington*, 381 U.S. 657).

[94] *1-800Contacts, Inc. v. Mem'l Eye, P.A.*, No. 2:08-CV-983 TS, 2010 WL 988524, at *1 (D. Utah Mar. 15, 2010).

[95] *Hanover 3201 Realty, LLC v. Village Supermarkets, Inc.*, 806 F.3d 162, 178 (3d Cir. 2015).

[96] *Noerr*, 365 U.S. at 144.

[97] *City of Columbia v. Omni Outdoor Advertising, Inc.*, 499 U.S. 365, 380 (1991).

[98] *MTS Opposition* at 6 (citing 404 U.S. 508, 513 (1972)).

[99] *Cal. Motor Transport Co.*, 404 U.S. at 512, 516.

emerge[s] which leads the factfinder to conclude that the administrative and judicial processes have been abused.'"[100]

Second, MavorCo argues Plaintiff's lawsuit is objectively baseless and was filed in bad faith, falling under the "single" sham exception described in *Professional Real Estate Investors v. Columbia Pictures Industries, Inc.* case.[101] There, the Court determined a party's single copyright lawsuit was not a sham as "[a]ny reasonable copyright owner in [their] position could have believed that it had some chance of winning an infringement suit . . . ."[102] The Court also outlined the following two-part definition of sham litigation:[103] "[f]irst, the lawsuit must be objectively baseless in the sense that no reasonable litigant could realistically expect success on the merits."[104] That is, "[i]f an objective litigant could conclude that the suit is reasonably calculated to elicit a favorable outcome, the suit is immunized under *Noerr*, and an antitrust claim premised on the sham exception must fail."[105] If the litigation is objectively meritless, courts should then examine the litigant's subjective motivation regarding whether the suit was brought with "an attempt to interfere *directly* with the business relationships of a competitor."[106]

---

[100] *CSMN Invs., LLC v. Cordillera Metro. Dist.*, 956 F.3d 1276, 1288 (10th Cir. 2020) (citing *Waugh Chapel S., LLC v. United Food & Com. Workers Union Loc. 27*, 728 F.3d 354, 363 (4th Cir. 2013)).

[101] *MTS Opposition* at 7–8 (citing 508 U.S. 49, 60–61 (1993)). Federal courts "have reconciled *California Motor* and *Professional Real Estate* by concluding they apply to different situations: *California Motor* to a series of sham petitions and *Professional Real Estate* to a single sham petition." *Hanover 3201 Realty, LLC*, 806 F.3d at 179–80 (gathering citations); *see also CSMN Invs., LLC*, 956 F.3d at 1286–88 (applying separately the *Professional Real Estate*'s "single" sham test and the *California Motor* "pattern" sham test).

[102] *Pro. Real Est. Invs., Inc.*, 508 U.S. at 65.

[103] *Id.* at 60.

[104] *Id.*

[105] *Id.*

[106] *Id.* at 60–61.

Only by demonstrating the objective and subjective components of a sham will the opposing party be deprived of immunity.[107]

Neither situation is present in this case.  First, the case law indicates the filing of two similar lawsuits is insufficient to constitute a pattern of sham petitions necessary to invoke *California Motor*.[108]  Although it is admittedly "a difficult line to discern and draw" to determine when a "pattern" of baseless claims emerges, the court is confident the filing of two, well-supported lawsuits does not cross that line.[109]  The court detects no intent by Plaintiff to abuse the judicial process when Plaintiff's claims are reasonable and factually supported at the pleading stage, and when they were refiled against MavorCo to protect the same Blendtec Marks only after MavorCo purchased "many of BlendJet's assets."[110]  In light of these circumstances, MavorCo's attempt to overcome Plaintiff's *Noerr- Pennington* immunity by relying on *California Motor* cannot succeed as a matter of law.

Second, a brief review of the pleadings makes clear that Plaintiff's claims are not objectively baseless.  Plaintiff's claims are certainly plausible in light of the two Blendtec Marks being federally registered since 1999 and 2010,[111] the BlendJet Marks being used beginning in 2017 in connection with selling portable blenders,[112] the similarity between the Blendtec Marks

---

[107] *Id.* at 61.

[108] *See, e.g.*, *Shenzhen Smoore Tech. Co. v. Next Level Ventures, LLC*, No. 2:22-CV-07646-AB-AGR, 2024 WL 5317246, at *9 (C.D. Cal. Dec. 4, 2024) (explaining how two lawsuits do not constitute a series or pattern); *In re Flonase Antitrust Litig.*, 795 F. Supp. 2d 300, 309 n. 10 (E.D. Pa. 2011) ("No court has applied the *USS–POSCO* test to a 'series' of five petitions . . . ."); *see also ERBE Elektromedizin GmbH v. Canady Tech., LLC*, 629 F.3d 1278, 1291–92 (Fed. Cir. 2010) (even assuming alternative test applied, no "series" based on defendant filing three lawsuits); *Amarel v. Connell*, 102 F.3d 1494, 1519 (9th Cir.1996) (no "series" where defendants initiated two lawsuits and administrative proceedings); *but see Hanover 3201 Realty, LLC*, 806 F.3d at 181 (finding four alleged sham petitions were sufficient to survive a motion to dismiss).

[109] *Cal. Motor Transport Co.*, 404 U.S. at 513.

[110] *Answer* ¶ 6.

[111] *Complaint* ¶¶ 14–19.

[112] *Id.* ¶ 29.

and BlendJet Marks,[113] significant evidence of customer confusion between the Marks,[114] and

the timing and circumstances surrounding MavorCo's creation and subsequent purchase of

"many of BlendJet's assets."[115]  MavorCo's attempt to overcome Plaintiff's *Noerr- Pennington*

immunity by relying on *Professional Real Estate* cannot succeed as a matter of law.

Accordingly, the court strikes MavorCo's antitrust defense.[116]

### III.    Plaintiff's Motion for a Preliminary Injunction

Plaintiff seeks a preliminary injunction enjoining Defendants' use and infringement of

the BlendJet Marks during the pendency of this litigation.[117]  The court determines Plaintiff has

failed to establish an irreparable injury absent injunctive relief.  Accordingly, Plaintiff's request

for a preliminary injunction cannot succeed.

### A.  Legal Standard

Rule 65 of the Federal Rules of Civil Procedure grants the court authority to issue a

preliminary injunction.  The Tenth Circuit has interpreted the Rule 65 standard as a four-element

test, and the court may issue a preliminary injunction only when the movant establishes: "(1) a

substantial likelihood of prevailing on the merits; (2) irreparable harm unless the injunction is

issued; (3) that the threatened injury outweighs the harm that the preliminary injunction may

cause the opposing party; and (4) that the injunction, if issued, will not adversely affect the

---

[113] *Id.* ¶ 52.

[114] *Id.* ¶ 59.

[115] *Id.* ¶¶ 121–27; *Answer* ¶ 6.

[116] *See 1-800Contacts, Inc.*, 2010 WL 988524, at *1 ("If Plaintiff is protected by the *Noerr-Pennington* Doctrine, the Court may dismiss all counterclaims and defenses related to antitrust.").

[117] *See generally PI Motion*.

public interest."[118]  A preliminary injunction is an extraordinary remedy that may be awarded only if the right to relief is "clear and unequivocal."[119]

Moreover, the Tenth Circuit considers some injunctions disfavored, and "require[s] more of the parties who request them."[120]  An injunction is disfavored if it (1) mandates action, (2) changes the status quo, or (3) grants all the relief that the moving party could expect from a trial win.[121]  When any of these three characteristics are present, courts are required to scrutinize the requested injunction "more closely" in order "to assure that the exigencies of the case support the granting of a remedy that is extraordinary even in the normal course."[122]

B.  Analysis

To begin, the court determines Plaintiff's requested injunction is a disfavored mandatory injunction.  The Tenth Circuit is clear courts should characterize an injunction as mandatory if the requested relief "affirmatively require[s] the nonmovant to act in a particular way, and as a result . . . place[s] the issuing court in a position where it may have to provide ongoing supervision to assure the nonmovant is abiding by the injunction."[123]  Here, Plaintiff seeks an order enjoining Defendants from infringing the Blendtec Marks.[124]  This would necessarily require that Defendants change their packaging, website, and advertisements, and it would require Defendants recall goods that are currently for sale.  Thus, Plaintiff's requested injunction requires Defendants to affirmatively act, and Defendants' compliance with the injunction would

---

[118] *Diné Citizens Against Ruining Our Env't v. Jewell*, 839 F.3d 1276, 1281 (10th Cir. 2016) (citation omitted).

[119] *Id.* (citation omitted).

[120] *Free the Nipple-Fort Collins v. City of Fort Collins, Colo.*, 916 F.3d 792, 797 (10th Cir. 2019).

[121] *Id.*

[122] *O Centro Espirita Beneficente Uniao Do Vegetal v. Ashcroft*, 389 F.3d 973, 975 (10th Cir. 2004), *aff'd and remanded sub nom. Gonzales v. O Centro Espirita Beneficente Uniao do Vegetal*, 546 U.S. 418 (2006).

[123] *Schrier v. Univ. Of Co.*, 427 F.3d 1253, 1261 (10th Cir. 2005) (citation omitted).

[124] *PI Motion* at 25.

be subject to ongoing supervision by this court.  Accordingly, the heightened preliminary injunction standard applies in this case, and the court closely scrutinizes Plaintiff's request for a preliminary injunction under this standard.

With this framework in mind, the court turns to whether Plaintiff has established irreparable harm as "showing of probable irreparable harm is the single most important prerequisite for the issuance of a preliminary injunction."[125]  Indeed, "the moving party must first demonstrate that such injury is likely before the other requirements for the issuance of an injunction will be considered."[126]

In all cases, establishing irreparable harm is "not an easy burden to fulfill,"[127] and it may be established by showing "a significant risk of harm that couldn't 'be compensated after the fact.'"[128]  In trademark infringement cases, grounds for finding irreparable harm include loss of control of reputation, loss of trade, and loss of goodwill.[129]  Furthermore, the Trademark Modernization Act provides that a plaintiff seeking an injunction under the Act "shall be entitled to a rebuttable presumption of irreparable harm . . . upon a finding of likelihood of success on the merits[.]"[130]  However, the Tenth Circuit instructs that "[d]elay in seeking a preliminary injunction 'tends to neutralize any presumption that infringement alone will cause irreparable

---

[125] *Schrier*, 427 F.3d at 1268 (citation omitted).

[126] *Dominion Video Satellite, Inc. v. Echostar Satellite Corp.*, 356 F.3d 1256, 1260 (10th Cir. 2004) (citation omitted).

[127] *Fish v. Kobach*, 840 F.3d 710, 751–52 (10th Cir. 2016) (citations omitted).

[128] *Trial Laws. Coll. v. Gerry Spence Trial Laws. Coll. at Thunderhead Ranch*, 23 F.4th 1262, 1270–71 (10th Cir. 2022) (citation omitted).

[129] *Tsunami Softgoods, Inc. v. Tsunami Int'l, Inc.*, No. 2:00CV738K, 2001 WL 670926, at *5 (D. Utah Jan. 19, 2001) (citation omitted).

[130] 15 U.S.C. § 1116(a).

harm pending trial.'"[131]  Delay in seeking preliminary relief also cuts against finding irreparable injury generally.[132]  But a delay in filing for injunctive relief will not defeat a claim of irreparable injury when the delay is reasonable, such as when "the record clearly establishes that" a party's delay "arose from its attempts to resolve the dispute, rather than a decision merely to sit on its rights."[133]  When weighing the effect of a delay in the irreparable harm framework, the question essentially becomes "whether the delay was reasonable, was not a decision by the party to sit on its rights, and did not prejudice the opposing party."[134]

Here, even assuming Plaintiff is likely to succeed on the merits of its Trademark Infringement claim to invoke the statutory presumption of irreparable harm, the court finds the presumption is neutralized by Plaintiff's delays in bringing its Motion for preliminary relief. And without a presumption of irreparable harm, Plaintiff has not met its burden to demonstrate its claimed injury rises to the "irreparable" level.

Plaintiff primarily relies on damage to its reputation as its basis to establish irreparable harm.[135]  More specifically, Plaintiff claims it has worked for decades to establish a reputation of "having the best blender on the market," but that, due to Defendants' ongoing trademark infringement, customers have wrongfully associated Blendtec blenders with defective BlendJet blenders.[136]  Plaintiff argues ongoing infringement exposed Plaintiff to enormous reputational

---

[131] 4 McCarthy on Trademarks and Unfair Competition § 30:48.50 (5th ed.); *see also GTE Corp. v. Williams*, 731 F.2d 676, 678 (10th Cir. 1984) ("Delay in seeking relief, however, undercuts any presumption that infringement alone has caused irreparable harm *pendente lite*; therefore, such delay may justify denial of a preliminary injunction for trademark infringement.").

[132] *Fish*, 840 F.3d at 753 (citation omitted).

[133] *RoDa Drilling Co. v. Siegal*, 552 F.3d 1203, 1212 (10th Cir. 2009) (citation modified).

[134] *Id.* (citation modified).

[135] *See Motion* at 21–22.

[136] *See id.*

damage—even before the 2023 recall.[137]  Plaintiff claims this harm began at least as early as March 2020.[138]  Yet, Plaintiff did not bring the 2021 Action against BlendJet until November 2021, and it never sought a preliminary injunction throughout the life of that case.  Even after the December 2023 recall of BlendJet 2 blenders—which is claimed to have resulted in the most serious and systematic reputational harm to Plaintiff—Plaintiff never sought emergency injunctive relief in the 2021 Action against BlendJet.  Plaintiff sought a preliminary injunction in the present case only after MavorCo purchased the BlendJet Marks in early 2025.

At oral argument, Plaintiff argued two grounds should excuse this years-long delay in seeking a preliminary injunction.  First, it argued circumstances surrounding the 2021 litigation—including ongoing settlement negotiations, mediations, and learning of BlendJet's post-recall insolvency—(1) demonstrate Plaintiff's efforts to resolve the dispute without court intervention, as tolerated by the Tenth Circuit;[139] and (2) justify Plaintiff's decision to not seek injunctive relief against BlendJet as it fully expected BlendJet to go out of business and the trademark infringement to end.[140]  The court is not convinced.  A judge in the 2021 Action observed Plaintiff engaged in "scorched earth" litigation tactics in the years leading up to the 2023 recall while BlendJet was presumably solvent.[141]  Moreover, a review of the docket from the 2021 Action reveals the parties were engaged in active litigation in the months immediately following the 2023 recall.[142]  This evidence combined with Plaintiff's awareness of what it

---

[137] *See id.*

[138] *PI Motion* at 21 (citing *Buchanan Decl.* ¶ 20(2)).

[139] *RoDa Drilling Co.*, 552 F.3d at 1212 (citation modified).

[140] *See Buchanan Decl.* ¶ 27.

[141] Dkt. 100, (case no. 2:21-cv-00668-TC-DBP), *Memorandum Decision and Order*.

[142] Dkts. 175–181, (case no. 2:21-cv-00668-TC-DBP).

claims to be irreparable harm by March 2020[143] suggest Plaintiff's delay was unreasonable as it elected to "sit on its rights" for several years rather than seek emergency relief.

Second, Plaintiff argued MavorCo's purchase of BlendJet constituted a significant change in the circumstances, as MavorCo is a new, well-funded entity intent on selling infringing BlendJet inventory.[144]  However, there is no evidence before the court suggesting the injury resulting from MavorCo's sales of existing BlendJet inventory is any different than the unchallenged injury caused by BlendJet's sales during the 2021 Action.  For example, there is no meaningful evidence indicating MavorCo is "well-funded" and is looking to expand the scope of the harmful infringement, as argued by Plaintiff.[145]  Instead, the evidence before the court suggests MavorCo intends to sell existing BlendJet inventory while pausing manufacturing and importing of new BlendJet-branded blenders.[146]  MavorCo also intends to scale back advertising and promotional activities until the present case is resolved.[147]  Without more specific evidence related to how MavorCo's involvement in the sale of BlendJet blenders changes the nature of the harm suffered previously by Plaintiff, the court cannot conclude Plaintiff's alleged injury suddenly rises to the level of "irreparable" when it was left unchallenged for years.

At bottom, Plaintiff's unreasonable years-long delay in seeking emergency relief undermines both the statutory presumption and Plaintiff's independent showing of irreparable harm.  This is especially true in light of the extraordinarily high burden Plaintiff faces to demonstrate each preliminary injunction factor weighs heavily and compellingly in its favor, and

---

[143] *PI Motion* at 21 (citing *Buchanan Decl.* ¶ 20(2)).

[144] *Buchanan Decl.* ¶ 36.

[145] *PI Motion* at 23.

[146] *Meckler Decl.* ¶¶ 13–14.

[147] *Id.*

24

its even higher burden to warrant a disfavored preliminary injunction.  Without evidence sufficient to excuse Plaintiff's delay, Plaintiff has failed to demonstrate irreparable harm, and Plaintiff's request for a preliminary injunction must be denied.  Accordingly, the court does not consider the other Tenth Circuit factors for issuing an injunction.[148]

## CONCLUSION

For the foregoing reasons, the court DENIES MavorCo's Motion to Dismiss,[149] GRANTS Plaintiff's Motion to Strike,[150] and DENIES Plaintiff's Motion for Preliminary Injunction.[151]

SO ORDERED this 17th day of September 2025.

BY THE COURT:

ROBERT J. SHELBY
United States Chief District Judge

---

[148] *Dominion Video Satellite, Inc.*, 356 F.3d at 1260 (citation omitted).

[149] Dkt. 43.

[150] Dkt. 51.

[151] Dkt. 25.