THE UNITED STATES DISTRICT COURT
DISTRICT OF UTAH

| | |
|---|---|
| BLENDTEC INC., a Utah Corporation,<br><br>Plaintiff,<br>v.<br><br>BLENDJET INC., a Delaware Coproation, MAVORCO HOLDINGS, LLC, a Delaware Limited Libality Company, et al.,<br><br>Defendants. | MEMORANDUM DECISION AND ORDER<br><br>Case No. 2:25-cv-96 RJS DBP<br><br>District Judge Robert J. Shelby<br><br>Chief Magistrate Judge Dustin B. Pead |

Before the court is Plaintiff's Motion under Fed. R. Civ. P. 26(b)(5)(B) regarding documents produced by Defendant BlendJet Inc. in the 2021 Action.[1] Blendtec Inc., asks the court to determine BlendJet's claim of privilege for the documents at issue.[2] Having considered the Motion and briefing, the court orders as follows.[3]

## BACKGROUND

This is a trademark dispute involving blenders. Plaintiff Blendtec, Inc. originally filed suit in 2021 alleging consumer confusion between the marks used by Blendtec and BlendJet. An example of both companies' marks from their respective websites is as follows:



---

[1] ECF No. 91. Blendtec's FRCP 26(b)(5)(B) Motion (Motion). This matter is referred to the undersigned from Chief District Judge Robert J. Shelby pursuant to 28 U.S.C. 636 (b)(1)(A) for disposition of non-dispositive matters. ECF No. 30.

[2] Blendtec notes it "does not seek to unseal the documents at issue." Blendtec's Response to Blendjet's Opposition to FRCP 36(b)(5)(B) Motion, at 1 (Response), ECF No. 119.

[3] Pursuant to DUCivR 7-1(g), the court determines oral argument is unnecessary and resolves the Motion based on the parties' written memoranda.

Blendtec asserted trademark infringement under §32 of the Lanham Act, false designation under §43 of the Lanham Act, unfair competition, trademark dilution, violations of certain Utah laws regarding trademarks and business practices.

BlendJet produced certain documents in the 2021 litigation designating them as Attorney's Eyes Only under the court's Standard Protective Order. In January 2025, MavorCo IP, LLC, acquired BlendJet's assets, patents, and inventory. The 2021 Action was then dismissed without prejudice on June 30, 2025, for Blendtec to pursue its claims against the current Defendants.[4] The court ordered that "all discovery from the 2021 Action be made available to the parties" in the instant matter.[5]

The current dispute centers on documents produced in the 2021 Action that Blendtec attached to its Supplemental Brief in Support of its Preliminary Injunction Motion.[6] BlendJet, who was not represented by counsel at the time of the filing, learned of the filing of these documents and then responded "through its corporate director"[7] that the documents "may be protected by the attorney-client privilege, common interest privilege, and/or the work product doctrine. Mr. Ryan Pamplin, BlendJet's former CEO and its "corporate director", stated that he "would like the parties to withdraw these and any similar documents … while I take steps to confer with my attorneys about whether they are subject to any privilege."[8]

BlendJet claims the documents are privileged and seeks a "claw back" as to those documents. This dispute initially concerned claims of privilege for twelve documents. After

---

[4] *See Blendtec v. Blendjet*, Case No. 2:21-cv-668 TC D. Utah 2021, Judgment in a Civil Case, ECF No. 218.

[5] Order Granting Unopposed Motion Regarding Discovery at 1, *Blendtec v. Blendjet*, Case No. 2:21-cv-668 TC D. Utah 2021, ECF No. 215

[6] Supplemental Brief, ECF No. 70.

[7] BlendJet's Opposition to Plaintiff's FRCP 26(b)(5)(B) Motion, ECF No. 112.

[8] ECF 91-2 at 1.

some concessions by the parties in their briefing, six documents remain at issue. In opposition to Blendtec's Motion, Blendjet states: "After review by counsel, BlendJet does not assert that the attorney-client privilege applies to Exhibits 4, 70, 71, or 81. The remaining contested exhibits, including Exhibits 55, 56, 57, 58, 60, 61, 62, 64, and 81, are privileged because they reflect provisions of legal advice from BlendJet's outside counsel, ...."[9] Exhibit 81 is listed by BlendJet in both categories. However, the court construes this as a scrivener's error, and follows BlendJet's initial stated intent of not applying the attorney-client privilege to Exhibit 81. In reply, Blendtec "agrees to treat Exhibits 56 and 57 as privileged."[10] This leaves Exhibits 55, 58, 60, 61, 62, and 64, as contested by the parties.

BlendJet argues these documents are subject to the attorney-client privilege, that it retains the ability to assert that privilege, and that it has not waived the privilege. In response, Plaintiff contends BlendJet has no privilege to assert, and others, such as BlendJet's former CEO, cannot assert the privilege. Further BlendJet or its successor MavorCo, cannot show the documents are privileged.

## LEGAL STANDARDS

The attorney-client privilege "is the oldest of the privileges for confidential communications known to the common law."[11] It "protects 'confidential communications by a client to an attorney made in order to obtain legal assistance' from the attorney in his capacity as a legal advisor."[12] However, the "mere fact that an attorney was the involved in a

---

[9] BlendJet Inc.'s Opposition to Plaintiff's FRCP 26(b)(5)(B) Motion at 3, (Opposition), ECF No. 112.

[10] Response at 1.

[11] *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981) (citation omitted).

[12] *In re Grand Jury Proc.*, 616 F.3d 1172, 1182 (10th Cir. 2010) (quoting *In re Grand Jury Subpoena Duces Tecum Issued on June 9, 1982*, 697 F.2d 277, 278 (10th Cir. 1983)).

communication does not automatically render the communication subject to the attorney-client privilege."[13]

In certain circumstances, the privilege may extend beyond communications between attorneys and their clients. For example, communications between corporate employees for the purpose of obtaining legal advice may also be privileged.[14] The attorney-client privilege also applies to corporate entities and the authority to assert the privilege resides with a corporation's management.[15] A party claiming the attorney-client privilege must prove its applicability, which is narrowly construed.[16] The party must bear this burden as to specific questions or documents, and not by making a blanket claim to privilege.[17]

## DISCUSSION

Under Federal Rule of Civil Procedure 26(b)(5)(B) if "information produced in discovery is subject to a claim of privilege …., the party making the claim may notify any party that received the information of the claim and the basis for it."[18] After being notified, the party "must not use or disclose the information until the claim is resolved …."[19] BlendJet argues the

---

[13] *Id.* (quoting *Motley v. Marathon Oil Co.*, 71 F.3d 1547, 1550–51 (10th Cir. 1995)).

[14] *See, e.g., Compass Prods. Int'l LLC v. Charter Commc'ns, Inc.*, No. 18-CV-12296, 2020 WL 3448012, at *3 (S.D.N.Y. June 24, 2020) (noting that "although dissemination of privileged information to third parties generally waives attorney-client privilege, the distribution within a corporation of legal advice received from its counsel does not, by itself, vitiate the privilege"); *Brigham Young Univ. v. Pfizer, Inc.*, No. 2:06-cv-890, 2011 WL 2795892, at *3, 2011 U.S. Dist. LEXIS 76317, at *10–13 (D. Utah July 14, 2011) (noting that a "party may successfully demonstrate applicability of the privilege to written communication between corporate management employees by establishing that the communication was made in confidence for the primary purpose of obtaining legal advice."); *Williams v. Sprint/United Mgmt. Co.*, 238 F.R.D. 633, 638–39 (D. Kan. 2006) (collecting cases in support of the rule that "the attorney-client privilege extends to communications made within a corporation if those communications are made for the purpose of securing legal advice").

[15] *Commodity Futures Trading Comm'n v. Weintraub*, 471 U.S. 343, 348–49, 105 S.Ct. 1986, 85 L.Ed.2d 372 (1985).

[16] *Intervenor v. United States (In re Grand Jury Subpoenas)*, 144 F.3d 653, 658 (10th Cir.1998).

[17] *See FDIC v. United Pac. Ins. Co.*, 152 F.3d 1266, 1276 n. 6 (10th Cir.1998)

[18] Fed. R. Civ. P. 26(b)(5)(B).

[19] *Id.*

documents at issue[20] are subject to the attorney-client privilege, that it retains the ability to assert that privilege, and that it has not waived the privilege. The court first resolves the issue of whether BlendJet can assert the attorney-client privilege.

"In a federal-question case such as this, attorney-client privilege is 'governed by the principles of the common law as they may be interpreted by the courts of the United States.'"[21] In filings before the court, BlendJet has represented that "[a]fter the foreclosure, BlendJet ceased operations as an active business entity."[22] Therefore, Blendtec argues that BlendJet as a defunct entity, has no privilege to assert. The court admits there is a certain allure to this argument. Yet, ultimately it is not dispositive in the current circumstances.

In federal courts, the "'weight of authority ... holds that a dissolved or defunct corporation retains no privilege.'"[23] The attorney-client privilege only goes as far as the policy interests supporting it require. And "[o]nce a corporation becomes defunct, the policy interests supporting shielded communications fall away."[24] However, unlike the corporate entity in *Utah Physicians*,[25] it is not clear from the record that BlendJet has filed articles of dissolution. So, although BlendJet is not an active business entity, it is "neither defunct nor dissolved under Delaware law."[26] Thus, there is still the potential that BlendJet could assert a privilege claim.

---

[20] The documents at issue are found in Exhibits 55, 58, 60, 61, 62 and 64.

[21] *Utah First Fed. Credit Union v. Univ. First Fed. Credit Union*, No. 2:22-CV-00146-RJS-DBP, 2024 WL 3510989, at *8 (D. Utah July 22, 2024) (quoting *In re Qwest Commc'ns Int'l Inc.*, 450 F.3d 1179, 1184, 70 Fed. R. Evid. Serv. 492, 2006 WL 1668246 (10th Cir. 2006) (quoting Fed. R. Evd. 501)).

[22] Motion at 2 (quoting ECF 49-2 at ¶16 Declaration of Ryan Pamplin).

[23] *Utah Physicians for a Healthy Env't, Inc. v. Diesel Power Gear, LLC*, No. 2:17-CV-32-RJS-DBP, 2025 WL 2144788, at *2 (D. Utah July 29, 2025) (quoting *S.E.C. v. Carrillo Huettel LLP*, No. 13 CIV. 1735, 2015 WL 1610282, at *2 (S.D.N.Y. Apr. 8, 2015) (collecting cases)).

[24] *United States v. Cole*, 569 F. Supp. 3d 696, 701, 2021 WL 5027215 (N.D. Ohio 2021).

[25] *See Utah Physicians*, No. 2:17-CV-32-RJS-DBP 2025 WL 2144788, at *2 (D. Utah July 29, 2025).

[26] BlendJet's Opposition at 7.

The Supreme Court has noted that for "solvent corporations, the power to waive the corporate attorney-client privilege rests with the corporation's management and is normally exercised by its officers and directors."[27] Former officers and directors, however, do not have the authority to assert and waive a corporation's attorney-client privilege.[28] The court is persuaded that Mr. Pamplin as BlendJet's former CEO, lacks the authority to invoke a privilege assertion on behalf of BlendJet. BlendJet conveniently lists Mr. Paplin as its "corporate director" in opposition to Blendtec's Motion, but this title goes against the vast number of filings before the court, including those made by Mr. Pamplin, that attest he is a former executive and not a current "director." Thus, Mr. Pamplin lacks the authority to invoke the privilege. This currently leaves no one at BlendJet to invoke the attorney-client privilege.[29]

Having determined BlendJet cannot assert the privilege the court turns to MavorCo's claim of privilege. MavorCo argues it can assert the privilege on behalf of BlendJet. The record belies MavorCo's argument. In support of its Motion to Dismiss Plaintiff's Claims for Successor Liability, MavorCo argues "Dismissal is warranted because it is well-settled, under both federal and state law, that a purchaser of assets does not assume the seller's liabilities."[30] MavorCo continues, alleging the evidence shows its acquisition of BlendJet was nothing "other than a

---

[27] *Commodity Futures Trading Comm'n*, 471 U.S. at 343.

[28] *See id.* at 349 ("Displaced managers may not assert the privilege over the wishes of current managers, even as to statements that the former might have made to counsel concerning matters within the scope of their corporate duties."); *Gibbs v. Stinson*, No. 3:18CV676, 2021 WL 4853575, at *7 (E.D. Va. Oct. 17, 2021) ("Displaced management, disempowered to act on behalf of the corporation, retain no control over the corporation's privilege") (citation modified).

[29] Often a company or corporation will appoint someone to conduct its affairs as it wraps up business. There is no evidence before the court that BlendJet has officially designated someone in that capacity.

[30] Mavorco's Motion to Dismiss Plaintiff's Claims for Successor Liability at 2, ECF No. 43.

secured asset sale—exactly the type of arrangement that falls squarely outside the reach of successor liability doctrines."[31]

Another court noted the "acquisition of one corporation by another raises questions concerning the extent to which the attorney-client privilege persists after the sale."[32] That court reasoned "[i]f the transaction is nothing more than an asset transfer, the successor company does not acquire the former company's privilege."[33] This is in contrast to where "efforts are made to run the pre-existing business entity and manage its affairs, successor management stands in the shoes of prior management and controls the attorney-client privilege with respect to matters concerning the company's operations."[34]

Blendtec argues MavorCo "cannot have it both ways. It cannot raise or argue privilege issues on behalf of BlendJet and also deny it is BlendJet's successor."[35] The court finds this argument persuasive and agrees with the reasoning set forth in the case law set forth above. The opportunity to assert the attorney-client privilege should come at a greater cost where a successor stands in the shoes of prior management.

The court therefore agrees with Blendtec's arguments that neither BlendJet nor MavorCo have shown that they can assert the attorney-client privilege in the documents at issue.

Finally, even if the court were to find that BlendJet asserted a claim of privilege, the court has conducted a cursory review of the documents at issue and finds the assertions of attorney-

---

[31] *Id.* at 3.

[32] *Orbit One Commc'ns, Inc. v. Numerex Corp.*, 255 F.R.D. 98, 104, 2008 WL 4778133 (S.D.N.Y. 2008).

[33] *Id.* (citing *Tekni–Plex, Inc. v. Meyner & Landis*, 89 N.Y.2d 123, 133, 651 N.Y.S.2d 954, 959, 674 N.E.2d 663 (1996)

[34] *Tekni–Plex*, 89 N.Y.2d at 133, 651 N.Y.S.2d at 959, 674 N.E.2d 66.;

[35] Motion at 5.

client privilege are at best questionable, given that, the attorney-client privilege is narrowly construed.[36]

## CONCLUSION

Accordingly for the reasons set forth above,

Blendtec's FRCP 26(b)(5)(B) Motion is GRANTED. The court finds the documents at issue are not protected by the attorney-client privilege.

IT IS SO ORDERED.

DATED this 26 September 2025.

_____
Dustin B. Pead
United States Magistrate Judge

---

[36] *Intervenor v. United States (In re Grand Jury Subpoenas)*, 144 F.3d at 658.