IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH

| | |
|---|---|
| BLENDTEC INC.,<br><br>Plaintiff,<br><br>v.<br><br>BLENDJET INC., et al.,<br><br>Defendants. | **MEMORANDUM DECISION AND ORDER**<br><br>Case No. 2:25-cv-00096-RJS-DBP<br><br>District Judge Robert J. Shelby<br><br>Magistrate Judge Dusting B. Pead |

Before the court is Plaintiff Blendtec Inc.'s Motion to Strike,[1] Motion to Dismiss MavorCo's False Advertising Counterclaim,[2] and Motion for Default Judgment Against Defendant BlendJet Inc.[3]  For the reasons explained below, the court GRANTS IN PART the Motion to Strike, GRANTS IN PART the Motion to Dismiss, and DENIES the Motion for Default.

BACKGROUND[4]

Blendtec manufactures and sells commercial and consumer blending machines.[5]  Since 1999, Plaintiff has sold blenders and related accessories under its "blendtec" trademark (Registration No. 2,431,060) and its swirl design mark (Registration No. 4,050,765)

---

[1] Dkt. 148, *Blendtec's Motion to Strike MavorCo's Previously Dismissed Thirteenth Affirmative Defense* (*Motion to Strike*). The court refers to Defendants MavorCo Holdings, LLC; MavorCo IP, LLC; and MavorCo Operations, LLC collectively as "MavorCo."

[2] Dkt. 149, *Blendtec's Motion to Strike and/or Dismiss MavorCo's False Advertising Counterclaim* (*Motion to Dismiss*).

[3] Dkt. 156, *Blendtec's Motion for Default Judgment Against Defendant BlendJet Inc.* (*Motion for Default*).

[4] The court provides a brief factual and procedural background here based on allegations in the Complaint.  For a more robust background, see Dkt. 131, *Memorandum Decision and Order* (*September Order*).

[5] Dkt. 2, *Complaint for Trademark Infringement and Successor Liability* (*Complaint*) ¶ 11.

1

(collectively, the Blendtec Marks).[6]  The United States Patent and Trademark Office (USPTO) issued Plaintiff a registration for its "blendtec" mark in February 2001 and a registration for its swirl design mark in November 2011.[7]  For decades, Blendtec has used the Blendtec Marks to advertise and market its blenders.[8]  Blendtec is highly regarded in its field, in large part because of the Blendtec Marks.[9]

In 2017, BlendJet began using its "blendjet" mark and swirl design mark (collectively, the BlendJet Marks) in connection with selling portable blenders.[10]  The USPTO issued BlendJet registrations for the BlendJet Marks in 2019 (Registration Nos. 5,750,510 and 5,950,040).[11]  BlendJet has sold millions of BlendJet blenders.[12]

Since BlendJet entered the market, Blendtec has received hundreds of inquiries from BlendJet customers regarding their BlendJet blenders.[13]  Most of the calls are related to warranty inquiries for defective BlendJet blenders.[14]  In November 2021, Plaintiff sued BlendJet in this district for trademark infringement (the 2021 Action).[15]

In 2023, BlendJet recalled nearly 5,000,000 BlendJet blenders due to a defect.[16]  News outlets and the Consumer Product Safety Commission warned consumers that the recalled blenders could overheat or catch fire, and the blender blades could break off, posing fire and

---

[6] *Id.* ¶¶ 14– 20.

[7] *Id.* ¶¶ 16, 19.

[8] *Id.* ¶¶ 21–25.

[9] *See id.* ¶ 26.

[10] *Id.* ¶ 29.

[11] *Id.* ¶¶ 31, 33.

[12] *Id.* ¶ 35.

[13] *Id.* ¶ 36.

[14] *Id.* ¶ 37.

[15] Dkt. 2, (case no. 2:21-cv-00668-TC-DBP), *Complaint for Trademark Infringement and Related Claims*.

[16] *Complaint* ¶ 38.

laceration hazards.[17]  Blendtec began receiving calls from consumers who mistakenly believed the recalled blenders were Blendtec blenders.[18]

The financial impact of the recall, market conditions, and expenses associated with litigation caused BlendJet to default on its financing obligations, and on January 13, 2025, Sandton Capital Partners foreclosed on BlendJet's assets and sold them to MavorCo.[19]  The assets MavorCo purchased included the BlendJet Marks.[20]

After years of litigation, Blendtec dismissed the 2021 Action so it could jointly pursue its claims against BlendJet and MavorCo in the present lawsuit.[21]  Blendtec brought this lawsuit in February 2025, asserting claims against BlendJet and MavorCo for Trademark Infringement and Unfair Competition, violations of the Utah Deceptive Trade Practices Act, and Successor Liability.[22]  After BlendJet failed to timely respond to the Complaint, Plaintiff sought and obtained an entry of default against BlendJet.[23]

On April 9, 2025, MavorCo moved to dismiss the successor liability claims and filed its Answer.[24]  On April 30, 2025, Blendtec moved to strike MavorCo's Thirteenth Affirmative Defense and filed its Answer to MavorCo's Counterclaims.[25]  The court denied MavorCo's

---

[17] *Id.*

[18] *Id.* ¶ 39.

[19] *Id.* ¶¶ 40–44.

[20] *Id.* ¶¶ 45–46.

[21] Dkt. 217, (case no. 2:21-cv-00668-TC-DBP), *Order Granting Motion to Dismiss* ("Blendtec may pursue its claims against Blendjet Inc. in the 2025 Action.").

[22] *Complaint* ¶¶ 62–127.

[23] Dkt. 48, *Motion for Entry of Default against Defendant BlendJet Inc.*; Dkt. 50, *Certificate of Default Against BlendJet, Inc.*

[24] Dkt. 43, *MavorCo's Motion to Dismiss Plaintiff's Claims for Successor Liability*; Dkt. 44, *MavorCo's Answer to Plaintiff's Complaint for Trademark Infringement and Successor Liability* (answering "the claims not addressed in [the] concurrently filed Motion to Dismiss").

[25] Dkt. 51, *Blendtec Motion to Strike MavorCo's Thirteenth Affirmative Defense*; Dkt. 52, *Blendtec's Answer to Counterclaims.*

motion to dismiss and granted Blendtec's motion to strike the affirmative defense.[26]  On October 15, 2025, MavorCo filed its Amended Answer, which included the previously dismissed affirmative defense and added a false advertising counterclaim.[27]  Thereafter, Blendtec filed the pending Motion to Strike, Motion to Dismiss, and Motion for Default Judgment, which are fully briefed and ripe for review.[28]

## ANALYSIS

### I.    Blendtec's Motion to Strike MavorCo's Thirteenth Affirmative Defense Is Granted in Part.

Blendtec moves pursuant to Federal Rule of Civil Procedure 12(f) to strike MavorCo's thirteenth affirmative defense for antitrust violations.[29]  The court previously dismissed this affirmative defense,[30] and Blendtec argues MavorCo "improperly repleaded" the defense in the Amended Answer.[31]  The court agrees and dismisses this affirmative defense.  But, because there is no evidence of bad faith, Blendtec is not entitled to its requested attorney's fees.

#### A.  Legal Standard

Rule 12(f) allows a court to "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter."[32]  A court may strike an affirmative

---

[26] *September Order.*

[27] Dkt. 140, *MavorCo's Amended Answer to Plaintiff's Complaint and Counterclaims for Trademark Cancellation and False Advertising.*

[28] Dkt. 162, *MavorCo's Opposition to Blendtec's Motion to Strike MavorCo's Previously Dismissed Thirteenth Affirmative Defense* (*MTS Opposition*); Dkt. 164, *Blendtec Reply in Support of its Motion to Strike MavorCo's Previously Dismissed Thirteenth Affirmative Defense* (*MTS Reply*); Dkt. 165, *MavorCo's Opposition to Blendtec's Motion to Strike and/or Dismiss MavorCo's False Advertising Counterclaim* (*MTD Opposition*); Dkt. 167, *Blendtec's Reply in Support of its Motion to Strike and/or Dismiss MavorCo's False Advertising Counterclaim* (*MTD Reply*); Dkt. 163, *MavorCo's Opposition to Blendtec's Motion for Default Judgment Against Defendant BlendJet Inc.* (*MDJ Opposition*); Dkt. 166, *Blendtec's Reply in Support of its Motion for Default Judgment Against Defendant BlendJet Inc.* (*MDJ Reply*).

[29] *Motion to Strike* at 1.

[30] *September Order* at 15–19.

[31] *Motion to Strike* at 1.

[32] Fed. R. Civ. P. 12(f).

defense if "it cannot succeed, as a matter of law, under any circumstances."[33]  "Motions to strike are disfavored, and striking a defense is considered a drastic remedy."[34]  Indeed, the Tenth Circuit cautions courts to "proceed with extreme caution in striking a pleading."[35]  However, a district court retains discretion in deciding a Rule 12(f) motion.[36]

### B. The Thirteenth Affirmative Defense Should Be Stricken.

The Amended Answer includes an affirmative defense that this court previously dismissed as a matter of law.[37]  The Amended Answer acknowledges this procedural history and explains "MavorCo repleads the defense here solely to avoid any confusion that it has been waived for purposes of appeal or further review.  MavorCo does not intend, by its inclusion to contravene or reargue the Court's ruling at this stage of the proceedings."[38]  For the same reasons explained in the September Order, the court strikes MavorCo's thirteenth affirmative defense.[39]

### C.  Blendtec's Request for Attorney's Fees Is Denied.

Blendtec asks the court to award its attorney's fees incurred in connection with the Motion to Strike.[40]  The court has inherent authority "to impose attorney-fee sanctions upon a party for bad-faith misconduct."[41]  The court does not find MavorCo engaged in any bad faith

---

[33] *Tiscareno v. Frasier*, No. 2:07-cv-336, 2012 WL 1377886, at *16 (D. Utah Apr. 19, 2012) (quoting *Wilhelm v. TLC Lawn Care, Inc.*, No. 07–2465–KHV, 2008 WL 474265, at *2 (D. Kan. Feb. 19, 2008)).

[34] *Id.* at *13 (citations omitted).

[35] *Colo. Milling & Elevator Co. v. Howbert,* 57 F.2d 769, 771 (10th Cir. 1932).

[36] *See Scherer v. U.S. Dep't of Educ.*, 78 F. App'x 687, 689 (10th Cir. 2003) (unpublished) (reviewing a district court's ruling on a motion to strike for abuse of discretion).

[37] *September Order* at 15–19; *see also Amended Answer* at 16.

[38] *Amended Answer* at 16 n.2.

[39] *See September Order* at 15–19.

[40] *Motion to Strike* at 10.  Blendtec seeks this relief under the court's inherent authority.  *MTS Reply* at 14.

[41] *Farmer v. Banco Popular of N. Am.*, 791 F.3d 1246, 1255–56 (10th Cir. 2015).

misconduct here.  MavorCo prudently included the affirmative defense to ensure it was preserved for appeal.  The inclusion of the footnote explaining the inclusion and representing MavorCo would not reargue the ruling at this stage demonstrates it was not engaging in bad faith.  Accordingly, the request for fees is denied.

### II.    The Motion to Dismiss MavorCo's False Advertising Counterclaim Is Granted in Part.

Next, Blendtec moves under Federal Rule of Civil Procedure 12(b)(6) to dismiss MavorCo's false advertising counterclaim.[42]  The court finds dismissal is warranted, but because there is no evidence of bad faith, Blendtec is not entitled to its attorney's fees.  Accordingly, the Motion to Dismiss is granted in part and denied in part.

### A.  Legal Standard

The motion to dismiss is directed at MavorCo's counterclaim.  The same standard applies to motions to dismiss a complaint and motions to dismiss a counterclaim.[43]  "To survive a [Rule 12(b)(6)] motion to dismiss, a [counterclaim] must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"[44]  A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[45]  The court must first identify "the allegations in the [counterclaim] that are not entitled to the assumption of truth," including legal

---

[42] *Motion to Dismiss*.  Blendtec also moves under Rule 15 to strike the counterclaim as procedurally improper since MavorCo failed to seek Blendtec's consent or the court's leave.  *Id.* at 3–5.  The court finds MavorCo did violate Rule 15.  However, judicial efficiency is best served by dismissing the counterclaim for failure to state a claim.  Resolving the motion under Rule 15 would invite a Motion for Leave to Amend.  Such motion practice would be a waste of judicial economy and resources, since the Motion to Dismiss if fully briefed and the counterclaim fails to state a claim upon which relief can be granted.

[43] *See, e.g.*, *Jones v. Addictive Behav. Change Health Grp., LLC*, 364 F. Supp. 3d 1257, 1265 (D. Kan. 2019); *Gardner v. Delta Plan of N.M., Inc.*, No. 20-cv-01271-DHU-LF, 2023 WL 5237427, at *2 (D.N.M. Aug. 15, 2023).

[44] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

[45] *Id.* (citing *Twombly*, 550 U.S. at 556).

6

conclusions, bare assertions, or mere conclusory statements.[46]  Then, the court must accept the remaining factual allegations as true "to determine if they plausibly suggest an entitlement to relief."[47]  Plausibility does not require "detailed factual allegations," but "a formulaic recitation of the elements of a cause of action will not do."[48]

### B.  MavorCo's False Advertising Counterclaim Fails to State a Claim for Relief.

Blendtec argues MavorCo has failed to allege facts that show proximate causation.[49]  A Lanham Act false-advertising claim requires the plaintiff suffer an injury that was "proximately caused by violations of the statute."[50]  This requirement ensures the plaintiff's injuries are not "too remote" from the Defendant's statutory violation.[51]  Under this test, a plaintiff must "show economic or reputational injury *flowing directly* from the deception wrought by the defendant's advertising; and that occurs when deception of consumers causes them to withholding trade from the plaintiff."[52]  Proximate causation is an element of the cause of action that "must be adequately alleged at the pleading stage in order for the case to proceed."[53]

The "classic Lanham Act false-advertising claim" satisfies the proximate cause element by alleging "one competitor directly injures another by making false statements about his own goods or the competitors' goods and thus inducing customers to switch."[54]  Indirect competitors

---

[46] *Id.* at 680.

[47] *Id.* at 681.

[48] *Twombly*, 550 U.S. at 555 (citation omitted).

[49] *Motion to Dismiss* at 10–14.

[50] *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 132 (2014); *see also Am. Soc'y of Home Inspectors, Inc. v. Int'l Ass'n of Certified Home Inspectors*, 36 F.4th 1238, 1242 (10th Cir. 2022) (stating plaintiff must plead "an injury to a commercial interest in sales or business reputation proximately caused by the defendant's misrepresentation" (citing *Lexmark*, 572 U.S. at 140)).

[51] *Lexmark*, 572 U.S. at 133.

[52] *Id.* (emphasis added).

[53] *Id.* at 134 n.6.

[54] *Id.* at 137–38 (citation modified).

will not satisfy the proximate cause prong absent of showing of "relatively unique circumstances."[55]  The party bringing the claim must "connect[] the dots" between the alleged false advertising and the specific injury suffered.[56]

Here, the Amended Answer does not include allegations connecting Blendtec's allegedly false advertising to MavorCo's injury.  The Amended Answer alleges MavorCo and Blendtec both sell consumer blenders and accessories,[57] Blendtec "made false or misleading statements of fact about the nature, characteristics, and qualities of its products,"[58] and MavorCo "has been and will continue to be injured by Blendtec's false and misleading advertising through lost business opportunities, harm to reputation and goodwill, and other damages."[59]  But no factual allegations show that MavorCo's asserted injury flows directly from Blendtec's alleged Lanham Act violation.  Simply stating MavorCo has been injured by the false advertising is conclusory, vague, and speculative, which fails to satisfy MavorCo's burden under Rule 12(b).

---

[55] *Id.* at 140.  There, the Supreme Court found the facts amounted to these unique circumstances because the harm to the indirect competitor "would follow more or less automatically" from the harm to the direct competitor.  *Id.*

[56] *ThermoLife Int'l LLC v. Sparta Nutrition LLC*, No. CV-19-01715-PHX-SMB, 2020 WL 248164, at *7, 9 (D. Ariz. Jan. 16, 2020) (dismissing false advertising claim because "blankly alleging, without supporting allegations, that Defendant's purported false advertising *must have* caused Plaintiff's injuries because the two compete" is a "vague and speculative" allegation that fails to show proximate cause); *see also ThermoLife Int'l LLC v. Am. Fitness Wholesalers LLC*, No. CV-18-04189-PHX-JAT, 2019 WL 3840988, at *1 (D. Ariz. Aug. 15, 2019) ("Plaintiff has only made conclusory allegations that its sales dropped as a result of Defendant's sale of allegedly illegal dietary supplements. Plaintiff has made no attempt to connect the drop in sales it alleges with Defendant's sale of allegedly illegal products that are advertised as dietary supplements. . . . Plaintiff has not alleged any facts to support its claim that the source of its lost sales are from Defendant's alleged false advertising."); *Botanic Tonics, LLC v. Shot of Joy, LLC*, No. 2:23-cv-10437-WLH-PD, 2024 U.S. Dist. LEXIS 149137, at *17 (C.D. Cal. Aug. 19, 2024) (finding allegation that deceptive advertisements "caused Plaintiff to lose sales because customers would not have purchased Defendant's product but for the infringing conduct" conclusory as "they do not demonstrate a causal link between Defendant's false advertising and the injury suffered").  *But see Toddy Gear v. Navarre Corp.*, No. 13-cv-8703, 2014 U.S. Dist. LEXIS 121236, at *1, 7 (N.D. Ill. 2014) (denying motion to dismiss when alleged competitor "distributes an exact replica of" their product, falsely states product is made in USA, this falsity influences consumer's purchasing decisions, and has been injured).

[57] *Amended Answer* ¶ 23.

[58] *Id.* ¶ 51.

[59] *Id.* ¶ 41; *see also id.* ¶ 55 ("MavorCo has been and is likely to be injured as a result, including by lost sales and harm to its business, reputation, and goodwill.").

MavorCo relies on *Crocs, Inc. v. Effervescent, Inc.*[60] to argue proximate causation is met. But there, the false-advertising counterclaim included allegations establishing a causal connection that does not exist here.  The *Crocs* counterclaim alleged (1) Crocs and the counter-claimant were direct competitors, (2) "Crocs has been misleading the public and consumers by claiming that their footwear is made of an exclusive and proprietary closed-cell resin that they call 'Crocslite,'" (3) "as a result, . . . consumers are deceived into concluding that the products sold by [counter-claimant] are made of inferior material compared to Crocs' molded footwear," and (4) Croc's "promotional activities will cause it to suffer a loss of consumer confidence, sales, profits, and goodwill."[61]  The counterclaim survived dismissal because these allegations adequately show the injury flows directly from Croc's deceptive advertising.[62]  Specifically, the third allegation above connects the injury (allegation four above) to the false advertising (allegation two above).  The counterclaim here does not include a similar allegation showing MavorCo's injury flows from Blendtec's alleged false advertising.[63]

Because proximate causation is not plausibly plead, the counterclaim fails to state a claim for relief.  Accordingly, the counterclaim is DISMISSED without prejudice.

---

[60] 248 F. Supp. 3d 1040 (D. Colo. 2017).

[61] *Id.* at 1060 (citation modified) (quoting pleading).

[62] *Id.* at 1061 (citing *Lexmark*, 572 U.S. at 133).

[63] MavorCo also relies on *Frompovicz v. Niagra Bottling, LLC*, 337 F. Supp. 3d 498, 509–10 (E.D. Pa. 2018).  But, unlike MavorCo, the *Frompovicz* plaintiff specifically alleged a connection between the false advertising and the injury to the indirect competitor: "The existence and subsequent cancellation of [the] contract with Plaintiff suggests [the customer] would have *necessarily purchased* [the product] *from* [Plaintiff] in lieu of another [competitor], absent the scheme to deceive customers." *Id.*  This allegation shows the injury flows from the scheme to deceive. MavorCo fails to allege any facts that do so here.

### C. *Blendtec's Request for Attorney's Fees Is Denied.*

Blendtec also asks the court to award its attorney's fees in connection with the Motion to Dismiss because "MavorCo did not bring its false advertising counterclaim in good faith."[64] Blendtec argues MavorCo's admissions in other filings with the court contradict this counterclaim such that it cannot be maintained in good faith.[65] The court disagrees. There is insufficient evidence to conclude MavorCo brought this counterclaim in good faith. Accordingly, the request for fees is denied.

### III. The Motion for Default Judgment Against Defendant BlendJet Inc. Is Denied.

Plaintiff seeks default judgment against BlendJet under Federal Rule of Civil Procedure 55(b).[66] MavorCo opposes the Motion.[67]

### A. *Legal Standard*

"Strong policies favor resolution of disputes on the merits."[68] However, the district court may enter a default judgment "when the adversary process has been halted because of an essentially unresponsive party."[69] Default judgments exist to protect a plaintiff against "interminable delay and continued uncertainty as to his rights."[70] But, under the Supreme Court's decision in *Frow v. De La Vega*,[71] "in a case with multiple defendants, judgment should

---

[64] *Motion to Dismiss* at 14.

[65] *Id.* at 14–17.

[66] *Motion for Default* at 6; *see also* Fed. R. Civ. P. 5(b).

[67] *MDJ Opposition*.

[68] *In re Rains*, 946 F.2d 731, 732 (10th Cir. 1991) (quoting *H.F. Livermore Corp. v. Aktiengesellschaft Gebruder Loepfe*, 432 F.2d 689, 691 (D.C. Cir. 1970)); *see also* 10A *Wright & Miller's Federal Practice and Procedure* § 2693 (4th ed. 2025) ("Despite the strength of the policies supporting the use of the default penalty, federal judges view default judgments with disfavor. This is because they favor trials on the merits with full participation by all the parties.").

[69] *In re Rains*, 946 F.2d at 732; *see also* Fed. R. Civ. P. 55(b).

[70] *In re Rains*, 946 F.2d at 733 (quoting *H.F. Livermore Corp.*, 432 F.2d at 691).

[71] 82 U.S. 552 (1872).

not be entered against a defaulting defendant before the case has been decided on the merits as to the remaining defendants."[72]  The court should refrain from entering default to avoid inconsistent judgments between the different defendants.[73]  Accordingly, the court should generally wait to enter default until after the merits has been adjudicated if the defendants are jointly and severally liable, have closely related defenses, or are otherwise similarly situated.[74]  A district court is "vested with broad discretion" in deciding whether to enter default judgment.[75]

B.  *The Court Declines to Enter Default Judgment Against BlendJet Since a Co-Defendant Faces Successor Liability.*

The Complaint seeks to impose successor liability on MavorCo, such that MavorCo will be held "liable for all amounts owed to Plaintiff by BlendJet."[76]  Since Blendtec seeks identical relief from BlendJet and MavorCo, the claims necessarily overlap.  Entering default judgment now would be premature and imprudent.

Blendtec argues a default judgment against BlendJet is appropriate because the parties are not jointly and severally liable, and other district courts outside of the Tenth Circuit have

---

[72] *Wilcox v. Raintree Inns of Am., Inc.*, 76 F.3d 394, at *2 (10th Cir. 1996) (table) (unpublished) (summarizing *Frow*, 82 U.S. at 554); *see also Hunt v. Inter-Globe Energy, Inc.*, 770 F.2d 145, 147 (10th Cir. 1985) (applying *Frow*).

[73] *Hunt*, 770 F.2d at 147 (instructing district courts to "avoid inconsistent liability determinations among joint tortfeasors").

[74] *See Wilcox*, 76 F.3d at *3 (applying *Frow* when defendants have identical defenses); *see also Lytle v. Hall*, No. 2:19-cv-619-TC-DAO, 2022 WL 195112, at *3 (D. Utah Jan. 21, 2022) (denying default judgment when claims "arise out of the same transactions and are based on concerted actions of the defaulting and non-defaulting Defendants" such that "entering default judgment now on overlapping claims would unnecessarily risk inconsistent judgments and damages awards"); *Home Design Servs., Inc. v. Alan V. Gren Enters., Inc.*, No. 2:12-CV-398-TS, 2013 WL 2256123, at *1 (D. Utah May 22, 2013) (denying motion for default judgment without prejudice when defendants "share many of the same defenses" (collecting cases)); 10A *Wright & Miller's Federal Practice and Procedure* § 2690 (4th ed. 2025) ("Although the rule developed in the *Frow* case applies when the liability is joint and several, it probably can be extended to situations in which joint liability is not at issue but several defendants have closely related defenses.").

[75] *Grandbouche v. Clancy*, 825 F.2d 1463,1468 (10th Cir. 1987); *see also Olcott v. Del. Flood Co.*, 327 F.3d 1115, 1124 (10th Cir. 2003) ("Decisions to enter judgment by default are committed to the district court's sound discretion.").

[76] *Complaint* 28–26; *see also id.* ¶¶ 105–27.

exercised their discretion to enter default when a remaining defendant faces successor liability.[77] The joint and several liability argument fails. The Tenth Circuit has clearly stated, "We do not, however, believe that the applicability of the *Frow* rule hinges on whether the defendants are jointly and severally liable. The *Frow* rule is also applicable in situations where multiple defendants have closely related defenses."[78] This is the case here. The dispute should be resolved on the merits as to MavorCo before granting default against BlendJet. Because the claims against MavorCo and the claims against BlendJet arise out of many of the same factual allegations and will involve closely related defenses, the court declines to enter default against BlendJet at this time.[79]

Accordingly, the Motion for Default Judgment is denied without prejudice.

## CONCLUSION

For the foregoing reasons, the Motion to Strike[80] is GRANTED IN PART: MavorCo's thirteenth affirmative defense is stricken and Blendtec's request for fees is denied. The Motion to Dismiss MavorCo's False Advertising Counterclaim[81] is GRANTED IN PART: the counterclaim is dismissed without prejudice and Blendtec's request for fees is denied. The Motion for Default Judgment Against Defendant BlendJet Inc.[82] is DENIED without prejudice.

---

[77] *MDJ Reply* at 3–4 (discussing *Arku-Nyadia v. Legal Sea Foods, LLC*, No. 18-cv-1089-SDW-LDW, 2022 WL 906468, at *1 (D.N.J. Mar. 28, 2022), and *Flagstar Bank, FSB v. Southern Star Capital*, No. 13-10290, 2013 WL 5719176 (E.D. Mich. Oct. 21, 2013)).

[78] *Wilcox*, 76 F.3d at *3.

[79] *See Green Oak Hedge Fund, Ltd. v. Hopkinson*, No. 2:06-cv-636-TS, 2008 WL 153772, at *3 (D. Utah Jan. 14, 2008) ("[W]here the same transaction and factual allegations underlay many of the other claims, the answering Defendants may have closely related defenses sufficient to trigger the application of *Frow*.); *see also* 10A *Wright & Miller's Federal Practice & Procedure* § 2690 (4th ed. 2025) ("When [defendants have closely related defendants], entry of judgment also should await an adjudication of the liability of the nondefaulting defendants.").

[80] Dkt. 148.

[81] Dkt. 149.

[82] Dt. 156.

SO ORDERED this 16th day of March 2026.

BY THE COURT:

ROBERT J. SHELBY
United States District Judge